**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SEAN COMBS,

                            Plaintiff,

        -against-

COURTNEY BURGESS, ARIEL MITCHELL, and
NEXTSTAR MEDIA INC.,

                        Defendants.

Civil Action No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

       Plaintiff Sean Combs, by and through his undersigned counsel, Sher Tremonte LLP, for

his Complaint against Courtney Burgess ("Burgess"), Ariel Mitchell ("Mitchell"), Nextstar

Media Inc. ("NewsNation") (collectively "Defendants"), alleges as follows:

<u>**NATURE OF THE ACTION**</u>

       1.      This case is about Defendants' willful scheme to fabricate and broadcast

outrageous lies concerning Mr. Combs and then to leverage those falsehoods to gain social

media fame, enrich themselves, and strip Mr. Combs of his reputation, livelihood, and right to a

fair trial.

       2.      Social media protagonists, including but not limited to Defendants Burgess and

Mitchell, have for months been fueling a media frenzy, fabricating outlandish claims and stirring

up baseless speculation about Mr. Combs, vying to outdo each other in a shameless competition

to draw attention to themselves, with no regard for the truth.  In this pitiful spectacle, all pretense

of objectivity has been abandoned, as a global audience feasts at the all-you-can-eat buffet of

wild lies and conspiracy theories.  Defendants are among the worst perpetrators in this offensive

scenario.  They eagerly court every opportunity to broadcast blatant falsehoods, pretending they

have proof that Mr. Combs engaged in heinous acts, knowing that no such proof exists.  As a

result, millions of people have come to believe in the made-up "evidence" that Defendants have falsely described and vouched for. The torrent of lies, and the immeasurable harm and prejudice it is causing to Mr. Combs, must stop.

3.     Defendant Burgess falsely claimed that he possessed videos of Mr. Combs involved in the sexual assault of celebrities and minors. Burgess repeated this false claim many times to anyone who would listen, including reporters for major news outlets (including NewsNation, which recklessly repeated and amplified his lies as if they were true). Thus, Burgess's baseless lies were rebroadcast on social and traditional media platforms that reach millions of viewers in the United States and abroad.

4.     His attorney, Mitchell, repeated those lies. Like Burgess, Mitchell knew that her client's claims were false, or at a minimum was utterly reckless in disregarding their falsity. Because no such tapes exist, and because Mitchell never saw any video depicting Mr. Combs sexually abusing anyone, adult or minor, Mitchell's many false assertions that Burgess possessed such videos were either knowingly blatant falsehoods or recklessly false statements made as the direct result of Mitchell's inexcusable failure to investigate her client's outrageous lies.

5.     Burgess peddled his false and defamatory statements about Mr. Combs to promote himself on social media. Mitchell did the same. Both seek to capitalize on the resulting publicity for financial gain.

6.     Together, Burgess, Mitchell, and NewsNation have caused profound reputational and economic injury and severe prejudice to Mr. Combs. In this action, Mr. Combs seeks money damages, including punitive damages, for the harm the Defendants' false and defamatory statements have caused.

## THE PARTIES

7.      Plaintiff Sean Combs is an individual who presently resides in Brooklyn, New York.

8.      Defendant Courtney Burgess is an individual who, upon information and belief, is a resident of South Carolina.

9.      Defendant Ariel Mitchell is an individual who, upon information and belief, is a resident of Miami, Florida and conducts business in New York.

10.     Defendant Nexstar Media Inc. is, upon information and belief, a Delaware corporation with its principal place of business located at 545 East John Carpenter Freeway, Suite 700, Irving, TX 75062.

## JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because complete diversity is present and because the amount in dispute exceeds $75,000.

12.     The Court has personal jurisdiction over Defendants because they were present in New York when they made false and defamatory statements that injured Mr. Combs, because they directed their false and defamatory statements about Mr. Combs to individuals in New York, among other places, because they caused harm to Mr. Combs in New York, among other places, because Defendant Mitchell does business in New York, and because Defendant Nexstar Media Inc. conducts business in New York, including through the filming and distribution of its program NewsNation in New York.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Mr. Combs's claim occurred in the Southern District of New

York, including the publication of the defamatory statements here.  Mr. Combs has been damaged in his business and enjoyment of fundamental rights in this District.

## **FACTUAL BACKGROUND**

14.    Sean Combs became famous for his extraordinary and historic achievements as a musician and music producer, hip hop impresario, record label owner, fashion innovator and icon, pathbreaking spirits entrepreneur and committed philanthropist.  Mr. Combs is among the most accomplished businessmen of his generation.

15.    In September 2024, Mr. Combs was indicted in the Southern District of New York on federal racketeering and sex trafficking charges.  Mr. Combs entered a plea of not guilty to those charges on September 17, 2025, emphatically and unequivocally denies the charges against him, and is preparing to contest the government's evidence, such as it is, at trial beginning on May 5, 2025.  Mr. Combs has faith in the integrity of the judicial system and is confident the jury will acquit him.

16.    Defendant Burgess has been described as "a one-time industry bit player" and "a fringe character."  In recent months, seeking to capitalize on the media's insatiable appetite for celebrity scandal, Burgess has gone to great lengths to invent and publicize outrageous falsehoods about Mr. Combs.  In media interviews, Burgess claims he has worked in the music industry for decades, yet there exists no public record of any professional achievements and he left no detectable footprint on the industry prior to his recent campaign to malign Mr. Combs.  His malicious conduct, which according to the New York Times "has only amped up the circuslike frenzy surrounding [Mr. Combs's] case," is intended to garner publicity and profit from the attention surrounding Mr. Combs's legal proceedings.

17.     Burgess has never met Mr. Combs and has never had any relationship with anyone in Mr. Combs's family.  Nevertheless, Burgess has claimed on multiple occasions that Kim Porter, the mother of four children with Mr. Combs who died in 2018, provided him with a copy of her memoir and videos depicting Mr. Combs sexually assaulting inebriated celebrities and minors.  Those close to Ms. Porter, including her children and her roommate for over twenty years, had never heard of Mr. Burgess before he made this utterly implausible and completely false claim.

18.     Yet Burgess has made this false claim numerous times to the press and in social media appearances.  In one such interview, broadcast October 31, 2024 on the "Attwood Unleashed" YouTube channel, Burgess elaborated on his false claim that he received these materials directly from Kim Porter.  Host Shaun Attwood, whose YouTube channel boasts 946,000 subscribers (including, upon information and belief, numerous subscribers in New York, as Burgess, upon information and belief, must have known), introduced Burgess in one interview by noting that he "has certainly been making waves on the Internet."  Attwood also noted that "we've had so much interest in this one" and promised to "get down with some crazy things that Courtney has personally experienced."

19.     On the broadcast, Burgess falsely claimed that Ms. Porter enlisted the help of a music industry mutual acquaintance to put her files in Burgess's hands.  Specifically, Burgess claimed that this individual called Burgess and told him, "I got something for you, Kim told me to give you something. . . She's got something she wants you to work with."  Burgess went on to claim, again falsely, that the same individual later met Burgess in New York and delivered to him the first of several flash drives containing the memoir and videos that Ms. Porter supposedly

intended for him to have, even though (even according to Burgess) Ms. Porter had no more than a passing acquaintance with Burgess.

20.    During the interview, Attwood posted still images that he, his co-host Tommy Scoville, and Burgess insinuated had come from the videos that Burgess falsely claimed Kim Porter had provided to him.  They described one as depicting Justin Bieber, a famous recording artist, kissing an unidentified male.  Attwood asked, "is this picture legit?"  Burgess responded, "yes, yes, definitely."  Scoville ventured a "guess" as to the identity of the unidentified male, speculating that "it's one of those music execs because, you know, allegedly, a lot of those guys, I mean, that's why they're in there, they're weirdos like the rest of 'em."  Having labeled all music industry executives as "weirdos," Scoville then asked Burgess, "how freaked out were you the first time you got a look at some of the images?  Shocker or what?"  Burgess responded that he was "freaked out because my daughter was a listener of Justin Bieber, you understand?"  Burgess stated that Bieber "was a child" at the time.  Burgess characterized Bieber as a "victim" who "loved it, loved being treated like that.  And that's what happens sometimes when you're a kid."  Burgess went on to compare Mr. Combs to "Lucifer," claiming that Mr. Combs, like Lucifer, "destroyed bodies, he destroyed careers.  He could get you where you want to be at, but you're going to give up the back end."

21.    Burgess, Attwood and Scoville also commented on an image that appeared to depict Mr. Combs with his arm around an adult woman's shoulder.  Despite the absence of any indication in the image of any untoward conduct, Burgess suggested that the woman was underage:  "I think she's about eighteen, right there.  She looks about eighteen."  Following up on Burgess's comment, Scofield falsely suggested that the photograph evidenced sexual misconduct with minors:  "Yeah, it's just, uh, it's disturbing how, uh, the number of people who

appear to be underage in all of these things.  You know they, I think that's probably what we're going to see on these superseding indictments.  It's gotta be, man.  It just keeps coming back to the underage thing again and again and again.  It's terrifying."  Burgess and Scofield's statements about these images on the "Atwood Unleashed" broadcast were specifically and maliciously intended to convince viewers, falsely, that Burgess possessed and Attwood and Scofield had seen evidence that Mr. Combs had engaged in sexual abuse of celebrities and minors, even though they knew those claims were false when they made them.

22.     On the same broadcast, Burgess insinuated, falsely, that talking about Mr. Combs and the fake memoir and videos put him in danger for his life.  Burgess also described his efforts to market the fake Porter memoir on Amazon.com, which he initially gave the ghoulish title "Kim's Lost Words."  After the book was denounced by Ms. Porter's family and others as a fake, Amazon pulled the volume from its website.  Subsequently, Burgess marketed another, equally false and defamatory version of the book, titled "Kim Porter – Tell It All," on a different website, www.jamal-millwood.com.  Burgess described the second version as "R rated," in contrast to the earlier "PG version" of the fake memoir.

23.     Upon information and belief, sometime in or around September 2024, Burgess contacted Mitchell seeking to team up with a lawyer in an attempt to legitimize and/or profit from his outrageous lies.

24.     Mitchell is a civil litigator at her eponymously named law firm.  On her firm's website, she boasts that her "practice . . focus[es] on high profile cases" including claims of "sexual assault perpetrated by a celebrity."

25.     In or around 2021, Mitchell brought a lawsuit against Plaintiff and the celebrity musician Trey Songz on behalf of a woman claiming sexual assault by Trey Songz.  In 2022, a

witness in that lawsuit testified that Mitchell tried to bribe her to lie about witnessing the purported assault and being assaulted herself.

26.     In or around 2022, Mitchell brought a $20 million lawsuit against the rapper Chris Brown on behalf of a woman claiming Brown raped her.  After Brown posted a series of text messages and voicemails reflecting a consensual relationship with the plaintiff, Mitchell withdrew.

27.     In the summer of 2024, Mitchell filed lawsuits against Plaintiff on behalf of an adult entertainer who alleged she had been sex-trafficked by Mr. Combs.

28.     After filing the lawsuit, Mitchell launched a media tour in which she repeatedly promoted herself as an authority on the federal grand jury investigation into Mr. Combs, including in an interview with TMZ Live, during which Mitchell sat in front of a propped up copy of an issue of VIBE Magazine with Mr. Combs on the cover, and represented that she would "very shortly" be in a position to comment on the investigation.

29.     Mitchell has brought least two other lawsuits against Mr. Combs.  To date, even though Mitchell has not served either of those lawsuits, she has spoken about them extensively to the media.

30.     In exchange for press appearances to discuss the allegations against Mr. Combs, Mitchell has demanded luxury accommodations, including "first class flights" to New York City, a minimum two-night stay at "4 star minimum hotel," onsite hair and makeup services, meals and snacks, and an unspecified "materials fee."  She has insisted, moreover, that such interviews "must occur in New York City."

31.     After Burgess engaged her, Mitchell continued peddling false claims to various media outlets.  For example, in a television interview with NewsNation (upon information and

belief at its studio in New York City) that was broadcast on or about September 27, 2024, Mitchell falsely stated that "there already have been tapes leaking around Hollywood, being shopped around to individuals in Hollywood."

32.    Presumably referencing Burgess or one of his affiliates, Mitchell continued:  "one particular person contacted me to shop a particular video they were in possession of and to contact the person who was in the video to see if they were interested in purchasing the video before it became public knowledge."  Mitchell described the request as a "catch and kill" and stated that "Mr. Combs was in the tape and this other person was, I would venture to say, more high profile than Mr. Combs.  Mitchell falsely confirmed that the video "exists, that it's real, that the other person in the video is very visible, it's no question if it's that person in the video, and I can tell that the video is pornographic in nature."

33.    With no evidentiary support, the NewsNation host, speaking about Mr. Combs' home, then said to Mitchell: "[I]t sounds like there was probably a lot of hidden cameras as well."

34.    Mitchell falsely confirmed this and then further stated that, based on her review of the supposed false evidence, it "doesn't seem like the person knows they're being videotaped . . . [it is] like they're being surreptitiously recorded."

35.    These statements were false.  Mitchell never possessed "pornographic" images involving Mr. Combs and any celebrity, was never able to confirm the existence of any such video of Mr. Combs, was never in a position to confirm that any celebrity was surreptitiously recorded in a sex act with Mr. Combs, and thus knew or recklessly disregarded that her statements were false when she made them.

36.    NewsNation, upon information and belief, conducted no investigation before broadcasting the false allegations, though it easily could have done so.

37.    Mitchell also told NewsNation on that broadcast about another client – a woman who alleged that Mr. Combs sexually assaulted her in Northern California in 2018.  This client's allegations are also false.

38.    Mitchell falsely represented that her client's fabricated claims were corroborated, even though Mitchell knew they were not.  Specifically, Mitchell falsely stated:  "We also have a police report . . . that was made in 2018."  Later in the interview, the host repeated Mitchell's assertion, emphasizing (about the purported police reports):  "you guys actually have one."  The host then asked:  "Are we going to be able to see it?"

39.    Mitchell falsely confirmed that she would produce the report.  She answered the host: "Yes, as soon as I file my lawsuit in civil court, I will be attaching the criminal complaint that was made."  These statements, in which Mitchell claimed to possess a police report corroborating her client's fabricated allegations, were false and Mitchell knew they were false when she made them.

40.    Roughly two weeks after the NewsNation broadcast, Mitchell filed the lawsuit she had previewed.  Contrary to her false assertions, the lawsuit did not attach any police report.

41.    Subsequently, the Walnut Creek Police Department denied having any involvement in the allegations made by Mitchell's client.  The Contra Costa County Sheriff's Office released a statement that they had "thoroughly investigated the accusations" and "determined the claims were unfounded."

42.    NewsNation broadcast its September 27, 2024 interview with Mitchell without fact checking Mitchell's false and injurious accusations.  NewsNation did not even reach out to Mr. Combs' representatives for comment.

43.    Burgess and Mitchell's repeated false and defamatory claims that Burgess possessed videos depicting Mr. Combs sexually assaulting celebrities, including minors, led federal prosecutors to subpoena him to a grand jury sitting in New York, New York.  On the day he appeared before the grand jury, Burgess and Mitchell gave an interview on the courthouse steps, during which they acknowledged that U.S. Marshals had visited his residences to ensure compliance with the subpoena.  In this and subsequent press and social media appearances, Burgess and Mitchell continued to repeat false and defamatory claims that Burgess possessed videos depicting Mr. Combs sexually assaulting celebrities, including minors.

44.    For example, on or about October 31, 2024, Burgess and Mitchell appeared on NewsNation's "Banfield" show (upon information and belief, at News Nation's studio in New York, New York), also broadcast on YouTube.  The host introduced the interview by announcing that Burgess "just testified before a federal grand jury.  He says he was in possession of a trove of digital evidence of Diddy's 'freak offs' and parties.  His name is Courtney Burgess, and he says a friend gave him 11 flash drives that belonged to the late Kim Porter . . . Diddy's ex-girlfriend and the mother of four of his kids.  On those drives, the witness says, eight videos featured eight celebrities at Diddy 'freak offs' or parties and that six were males, two were females."

45.    The host went on to note that "because the eight people in the videos, the eight celebrities in the videos were allegedly victims of sex crimes, we know who they are, but we will not be naming them, famous or not."  This statement was false and the NewsNation host knew it

was false or, at a minimum, recklessly disregarded whether the statements were true or false because she had never seen such videos (because they do not exist).

46.     During the broadcast, Burgess and Mitchell confirmed that Burgess had been subpoenaed to a federal grand jury in Manhattan.

47.     In response to the host's questioning, Burgess falsely stated that "all" eight celebrities "who were recorded having intimate relations with Sean Combs," "two to three, possibly three" appeared to be minors, "all" appeared inebriated, and "all, to be honest" were "victims" of sexual assault.

48.     Burgess also repeated his false statements about the fake memoir.  The host asked him:  "Do you know if the notes from the book really were from Kim Porter?"  Burgess responded:  "Yes, because I spoke to her probably like six hours before I got it, received it."

49.     In another interview, Burgess claimed that federal law enforcement seized the flash drives from his home.  This too was false.

50.     On October 7, 2024, Mitchell also falsely claimed that she had done "research" indicating that baby oil may be used as a "conduit" for transmitting drugs "mixed into the oil" to another person for the purpose of incapacitating them.

51.     Mitchell suggested, moreover, that Mr. Combs did this to one of her clients—*i.e.*, mixed drugs with baby oil and doused her client with it, thereby "lowering her defenses."  That statement was a lie.  Mitchell performed no such research, and even if she had, there is no scientific basis for asserting that baby oil could be infused with drugs to incapacitate anyone. Again, Mitchell knew or should have known that her statements were false when she made them.

52.     Mitchell made statements throughout the interview that were unambiguously intended to convince viewers not only that Burgess was telling the truth, but also that she had

independently corroborated his claims and was vouching for him.  Mitchell made similar

statements, on or about the same day as the "Banfield" YouTube broadcast, during a separate

interview she and Burgess gave outside of federal district court in Manhattan.  In that interview,

the reporter asked:  "I know you can't mention celebrities per se.  You did mention some in the

interview.  So, just to clarify, you can back that up with actual factual footage?"  Mitchell

responded:  "We have, yeah, it's things that we have."  Mitchell intended this statement to

convince viewers that Burgess's false claims about Mr. Combs were true, even though she knew

or recklessly disregarded at the time that his claims were false.

53.     In her shameless pursuit of the spotlight, Mitchell repeated these known lies in a

documentary *The Making of a Bad Boy* that aired on NBC's streaming platform Peacock on

January 14, 2025.  In that documentary, Mitchell endorsed the ludicrous allegations of her client

Burgess, stating that Burgess "has done interviews where he purported to own several flashdrives

that included sex tapes with eight distinct individuals, including a-list celebrities and Diddy, all

engaged in sex. He believes that these people were intoxicated and that they may not have

known that they were being recorded."  Then, explicitly endorsing Burgess's known lies as

truths, Mitchell added, "And Courtney ultimately handed over the video" to the federal

government. These statements were completely false. Mitchell knew these statements were false

because no such video was ever turned over to the government because no such video exists.

54.     Mitchell did not stop there. She continued to lend credence to Burgess's lies,

asserting that Combs took these videos (which she knew did not exist) so that he could wield

power over the purported subjects: "[I]t was to advance his influence and his power. Because

now I have them on video, where I can say, I'm going to take this to your wife. I'll take this to

your husband. I'll take this to the public. And I'll ruin you if you don't do this for me."

55.     During the interview in *The Making of a Bad Boy*, Mitchell shamelessly promoted herself as a lawyer who had filed several cases against Sean Combs for sexual assault and asserted, with no basis in fact and with utter disregard for the truth that Combs "is a man who has done awful things to hundreds, maybe thousands of people."

56.     Defendants eagerly peddled these lies to enrich themselves.  Burgess has profited from his fake Kim Porter memoir, which prior to being pulled down from the Amazon website briefly rose to the top of its best-seller list.  Burgess's craven willingness to profit from the fabricated memoir proves that he is callously indifferent to the emotional distress of Ms. Porter's children and has nothing but contempt for the feelings of Ms. Porter's extended family and many friends who were heartbroken by her untimely death.

57.     Mitchell has also sought to profit from her false and defamatory statements about Mr. Combs.  Mitchell has seized every opportunity to promote herself in the media, and has insisted on valuable benefits and payments in exchange for interviews, including first class air travel, four-star hotel accommodations, hair and makeup allowances, and a "materials fee" for copies of, among other things, demand letters sent on behalf of one of her clients who sued Mr. Combs.

58.     NewsNation has likewise profited from repeating and amplifying Burgess's and Mitchell's lies, drawing viewers and promoting its programming based on wholly unsubstantiated lies that would have been revealed as false had NewsNation conducted even the most modest fact checking.

59.     Defendants made false and defamatory statements about Mr. Combs knowing that they were false and with reckless disregard of their falsity.

60.    Defendants made these false and defamatory statements in bad faith, as part of a deliberate effort to damage Mr. Combs's reputation, undermine his businesses and, by painting him as debauched and a pedophile, to poison the public's perception of him and deprive him of a fair trial.

61.    Defendants had no good faith basis for claiming that Burgess possessed videos of Mr. Combs involved in the sexual assault of anyone.  Burgess purposefully made up the videos and told hideous lies about Mr. Combs, and Mitchell and NewsNation either knew that Burgess's claims were false or made no effort to verify the truth of those false claims.

***Defendants' Malicious Lies Have Materially Injured Mr. Combs***

62.    As a result of Defendant's malicious lies, Mr. Combs has suffered significant reputational and economic harm.

63.     People who heard and believed Defendants' lies have accused Combs, on social media that is consumed by hundreds of millions of viewers each and every day, of being a debauched "monster" and a pedophile.  Moreover, many viewers of the social media posts in which Defendants' falsehoods are published and republished post harassing and threatening messages against Mr. Combs.  The unrelenting tide of negative publicity and threatening social media posts resulting from Defendants' lies have caused and will continue to cause Mr. Combs severe reputational harm.

64.    Defendants' intentionally false and defamatory statements have also poisoned the minds of the overwhelming majority of individuals residing in the Southern District of New York who might qualify for jury service and potentially sit on the jury in Mr. Combs's trial beginning in May 2025.  Thus, in addition to all of the other harms resulting from Defendants'

unlawful false statements, they have also deprived him of any meaningful opportunity for a fair

trial on the government's charges against him.

## FIRST CAUSE OF ACTION
### (Defamation)

65.    Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully set

forth herein.

66.    Defendants made false and defamatory statements concerning the Plaintiff.  As set

forth in detail above, Defendants' defamatory statements included false assertions that Burgess

was in possession of videos depicting Plaintiff involved in the sexual assault of celebrities and

minors and that Mitchell was in possession of information corroborating allegations of heinous

sexual assaults.

67.    These statements published by Defendants about Plaintiff accused Plaintiff of

committing a serious crime and engaging in sexual misconduct.

68.     These statements published by Defendants about Plaintiff were defamatory per

se.

69.    These statements published by Defendants caused substantial reputational and

financial harm to Plaintiff, and damaged his right to a fair trial on the government's charges

against him.

70.    Defendants published these statements without privilege to a third party.

71.    Defendants published these statements with actual malice.  Defendants published

these statements with knowledge of their falsity or reckless disregard for their veracity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment:

1.      Awarding Plaintiff money damages in an amount to be determined at trial, but not less than $50,000,000.00; and

2.      Granting such other and further relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial.


Dated: New York, New York
        January 22, 2025

_____

Michael Tremonte
Erica A. Wolff
Anna Estevao

SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, N.Y.  10004
Telephone: (212) 202-2600
Email: mtremonte@shertremonte.com

*Attorneys for Plaintiff Sean Combs*

17