# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**SEAN COMBS**,

                 **Plaintiff**,

**v.**

**COURTNEY BURGESS, ARIEL MITCHELL, and NEXSTAR MEDIA INC.**,

                 **Defendants.**

Civil Action No. 1:25-cv-00650-JPC

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION BY DEFENDANT NEXSTAR MEDIA INC.
## <u>TO DISMISS PLAINTIFF'S CORRECTED COMPLAINT</u>

Elizabeth A. McNamara
Alison Schary
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone:    (212) 489-8230
Facsimile:    (212) 489-8340

*Counsel for Defendant Nexstar Media Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL BACKGROUND ............................................................................. 2

    A.    The Parties ......................................................................................... 2

    B.    Combs Faces Multiple Civil Lawsuits and Federal Prosecution for Alleged Sexual Abuse and Sex Trafficking ................................................ 3

    C.    NewsNation Reports On the Ongoing Civil and Criminal Cases Against Combs ....... 5

    D.    Plaintiff's Complaint ............................................................................ 9

    E.    Plaintiff Is Tried and Convicted of Two Felony Counts of Transportation to Engage in Prostitution ..................................................... 10

ARGUMENT ............................................................................................ 12

    I.    PLAINTIFF'S DEFAMATION CLAIM AGAINST NEXSTAR SHOULD BE DISMISSED FOR LACK OF ACTUAL MALICE ................................................ 13

        A.    Plaintiff Fails to Plausibly Allege that Nexstar Published Any Challenged Statements with Actual Malice ...................................... 13

        B.    To the Contrary, the Complaint Shows a *Lack* of Actual Malice by Nexstar .............................................................................. 18

    II.    PLAINTIFF'S CLAIM FAILS ON INDEPENDENT GROUNDS .......................... 20

        A.    Statements 1 and 3 Are Substantially True .................................... 20

        B.    Statement 3 Is Protected by New York's Fair-Report Privilege .......... 21

    III.    Nexstar Is Entitled to Fees Under New York's Anti-SLAPP Law .......................... 24

CONCLUSION .......................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*1st Amend. Praetorian v. N.Y. Times Co.*,
   2025 WL 949575 (S.D.N.Y. Mar. 28, 2025) ....................................................14, 17

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017) ............................19

*Arpaio v. Zucker*,
   414 F. Supp. 3d 84 (D.D.C. 2019) ........................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................12

*Atas v. N.Y. Times Co.*,
   2023 WL 5715617 (S.D.N.Y. Sept. 5, 2023) .........................................15

*Beary v. W. Publ'g Co.*,
   763 F.2d 66 (2d Cir. 1985)...................................................................21

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ......................................................................12, 15

*Biro v. Condé Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013), *aff'd* 807 F.3d 541, *aff'd*, 622 F. App'x
   67 (2d Cir. 2015)........................................................................12, 14

*Bloom v. A360 Media LLC*,
   735 F. Supp. 3d 466 (S.D.N.Y. 2024).................................................17

*Bobulinski v. Tarlov*,
   758 F. Supp. 3d 166 (S.D.N.Y. 2024).............................................13, 15, 16, 24

*Bose Corp. v. Consumer Union of U.S., Inc.*,
   466 U.S. 485 (1984)...................................................................14, 18, 20

*Brimelow v. N.Y. Times Co.*,
   2020 WL 7405261 (S.D.N.Y. Dec. 16, 2020), *aff'd*, 2021 WL 4901969
   (2d Cir. Oct. 21, 2021) .....................................................................14

*BYD Co. v. VICE Media LLC*,
   531 F. Supp. 3d 810 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973
   (2d Cir. Mar. 1, 2022) ................................................................14, 15, 17, 22

*Cabello-Rondon v. Dow Jones & Co.*,
  720 F. Appx. 87 (2d Cir. 2018)............................................................................14

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)..................................................................................6

*Chandok v. Klessig*,
  632 F. 3d 803 (2d Cir. 2011)................................................................................15

*Cholowsky v. Civiletti*,
  69 A.D.3d 110 (2d Dep't 2009)............................................................................23

*Church of Scientology Int'l. v. Behar*,
  238 F.3d 168 (2d Cir. 2001)................................................................................12

*Contemporary Mission, Inc. v. N.Y. Times Co.*,
  842 F.2d 612 (2d Cir. 1988)...........................................................................14, 16

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
  551 F. Supp. 3d 320 (S.D.N.Y. 2021)..................................................................24

*Cummings v. City of New York*,
  2021 WL 1163654 (S.D.N.Y. Mar. 26, 2021), *aff'd*, 2022 WL 2166585
  (2d Cir. June 16, 2022) .......................................................................................22

*Daleiden v. Planned Parenthood Fed'n of Am.*,
  2022 WL 1013982 (2d Cir. Apr. 5, 2022) ............................................................23

*Dongguk Univ. v. Yale Univ.*,
  734 F.3d 113 (2d Cir. 2013).................................................................................17

*Freeze Right Refrigeration & Air Conditioning Servs. v. City of New York*,
  101 A.D.2d 175 (1st Dep't 1984) ........................................................................22

*Fridman v. Buzzfeed, Inc.*,
  2021 WL 1040531 (Sup. Ct. N.Y. Cnty. Mar. 11, 2021) ......................................22

*Friedman v. Bloomberg L.P.*,
  884 F.3d 83 (2d Cir. 2017).............................................................................22, 23

*Garrison v. Louisiana*,
  379 U.S. 64 (1964)..............................................................................................14

*Gubarev v. Buzzfeed, Inc.*,
  340 F. Supp. 3d 1304 (S.D. Fla. 2018) ................................................................21

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989).......................................................................................15, 17

*Herbert v. Lando*,
  781 F.2d 298 (2d Cir. 1986)....................................................................................20

*Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*,
  49 N.Y.2d 63 (1979) ...............................................................................................22

*Idema v. Wager*,
  120 F. Supp. 2d 361 (S.D.N.Y. 2000), *aff'd*, 29 F. App'x 676 (2d Cir. 2002)......................21

*Kesner v. Dow Jones & Co.*,
  515 F. Supp. 3d 149 (S.D.N.Y. 2021).....................................................................23

*Kinsey v. N.Y. Times Co.*,
  991 F.3d 171 (2d Cir. 2021)....................................................................................22

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
  838 F.2d 1287 (D.C. Cir. 1988) .............................................................................18

*Lindberg v. Dow Jones & Co.*,
  2021 WL 3605621 (S.D.N.Y. Aug. 11, 2021) ........................................................13

*Loeb v. New Times Commc'ns Corp.*,
  497 F. Supp. 85 (S.D.N.Y. 1980) ...........................................................................16

*Masson v. New Yorker Magazine Inc.*,
  501 U.S. 496 (1991)...........................................................................................14, 21

*McDougal v. Fox News Network LLC*,
  489 F. Supp. 3d 174 (S.D.N.Y. 2020)...........................................................13, 14, 16

*In re Merrill Lynch & Co., Inc. Res. Reports Sec. Litig.*,
  289 F. Supp. 2d 416 (S.D.N.Y. 2003).......................................................................3

*Mira v. Kingston*,
  218 F. Supp. 3d 229 (S.D.N.Y. 2016).......................................................................3

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964)...........................................................................................14, 17

*Prince v. Intercept*,
  2023 WL 4492413 (S.D.N.Y. July 12, 2023) ........................................................15

*Ramsaran v. Abraham*,
  2017 WL 1194482 (S.D.N.Y. Mar. 30, 2017) ........................................................12

*Shuman v. N.Y. Mag.*,
  72 Misc. 3d 1211(A) (Sup. Ct. N.Y Cnty. 2021), *aff'd*, 211 A.D.3d 558
  (1st Dep't 2022) .....................................................................................................13

*St. Amant v. Thompson*,
  390 U.S. 727 (1968).................................................................................14, 19

*Stepanov v. Dow Jones & Co.*,
  120 A.D.3d 28 (1st Dep't 2014) ........................................................................17

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
  864 F.3d 236 (2d Cir. 2017)...............................................................................20

*TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.*,
  2017 WL 2627912 (S.D.N.Y. June 16, 2017) ...................................................17

*Zappin v. NYP Holdings, Inc.*,
  2018 WL 1474414 (S.D.N.Y. Mar. 26, 2018) ...................................................22

**Statutes**

N.Y. Civ. Rights Law § 70-a ......................................................................................2, 24

N.Y. Civ. Rights Law § 74 .............................................................................2, 13, 21, 22

N.Y. Civ. Rights Law § 76-a ...................................................................................13, 24

**Rules**

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 12, 24

Defendant Nexstar Media Inc. ("Defendant" or "Nexstar") submits this memorandum in support of its motion pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing Plaintiff Sean Combs's ("Plaintiff" or "Combs") claim against it with prejudice.

## PRELIMINARY STATEMENT

In this action, Plaintiff Sean Combs attempts to punish a news outlet for reporting on a matter of intense public interest with widespread media coverage: allegations that Combs, an international celebrity, orchestrated, engaged in, and recorded elaborate sexual encounters known as "freak offs," in which some participants did not willingly consent. He challenges a handful of statements from two Nexstar news reports published in September and October 2024, a few weeks after federal prosecutors unsealed a blockbuster indictment charging Combs with sex trafficking and prostitution-related offenses. That indictment came on the heels of at least 10 civil suits filed against Combs over the course of the prior year. The criminal and civil complaints accused Combs of rape and sexual abuse, including allegations that he had drugged and filmed victims, some of whom were minors at the time. The challenged statements in this case were entirely consistent with these publicly filed and widely reported allegations.

Plaintiff does not begin to allege that Nexstar's reporting was published with actual malice, as he is required to do. Nor could he, given the documented public record. Indeed, Plaintiff's overarching theory of this case—that Defendants Mitchell and Burgess engaged in a campaign to mislead news outlets, including Nexstar, with false claims and invented evidence—only undercuts any plausible claim that Nexstar acted with actual malice. On this basis alone, Plaintiff's claim against Nexstar can and should be dismissed with prejudice.

While the lack of actual malice is dispositive, Plaintiff's challenges to statements about the "freak-off" videos (Statements 1 and 3) also fail on independent grounds. Regardless of whether Mitchell and Burgess actually possessed or viewed "freak-off" videos as they claimed, the "gist"

1

of these statements in the challenged reports—that "freak-off" videos exist—is substantially true. Further, New York's fair-report privilege, N.Y. Civ. Rights Law § 74, protects challenged statements from the interview of Burgess about his grand-jury testimony (Statement 3).

Finally, because Plaintiff fails to state any claim against Nexstar, his claim also lacks any "substantial basis" in law under New York's Anti-SLAPP Law, N.Y. Civ. Rights Law § 70-a(1)(a). As a result, Nexstar is entitled to an award of attorney's fees under New York law should it prevail on this motion.

For these reasons, the Court should dismiss Plaintiff's claim against Nexstar with prejudice and grant an award of fees pursuant to the New York Anti-SLAPP Law.

## FACTUAL BACKGROUND

### A.  The Parties

Plaintiff describes himself as a "musician and music producer, hip hop impresario, record label owner, fashion innovator and icon, pathbreaking spirits entrepreneur and committed philanthropist" who is "famous for his extraordinary and historic achievements."  ECF No. 16 ("Corrected Complaint," hereinafter "Compl.") ¶ 14.  Plaintiff is a convicted felon who remains in prison while he awaits sentencing.

Defendant Courtney Burgess was a grand-jury witness in the federal criminal case against Combs.  Defendant Ariel Mitchell represented Defendant Burgess in connection with that proceeding.  *Id.* ¶¶ 31, 43.  Defendant Mitchell has also represented plaintiffs in several civil suits against Combs.  *Id.* ¶¶ 37, 40.  Defendants Mitchell and Burgess (together, the "Individual Defendants") are not parties to this motion and are separately represented in this action.

Defendant Nexstar owns and operates the news network NewsNation, which airs the *Banfield* news program.  *Id.* ¶¶ 12, 44.  This action arises out of certain statements made during interviews of Defendants Mitchell and Burgess included in two episodes of *Banfield.*

**B.    Combs Faces Multiple Civil Lawsuits and Federal Prosecution for Alleged Sexual Abuse and Sex Trafficking**

Starting in the fall of 2023, multiple civil actions and ultimately a criminal complaint were filed against Combs alleging that he orchestrated drug-fueled sex parties called "freak-offs," where multiple individuals claimed they were sexually abused and/or trafficked.  The civil and criminal allegations were widely covered, including on NewsNation, in what Combs acknowledges was an "unrelenting tide of negative publicity."  Compl. ¶ 63.

The news broke on November 16, 2023, when Combs's former partner Casandra "Cassie" Ventura sued Combs for claims including sex trafficking and sexual battery.  *See* Complaint, *Ventura v. Combs*, No. 23-cv-10098 (S.D.N.Y. Nov. 16, 2023).[1]  Combs settled the case almost immediately.[2]  *See* Notice of Dismissal with Prejudice, *Ventura*, No. 23-cv-10098 (S.D.N.Y. Nov. 20, 2023).  Ms. Ventura's lawsuit—and its prompt settlement—drew widespread media attention.[3]  CNN later released hotel surveillance footage of Combs physically assaulting Ventura by throwing, kicking, and dragging her.[4]

In the months after Ventura filed suit, more individuals came forward with civil suits against Combs alleging sexual assault.  For example, one woman alleged that as a college student

---

[1] The Court may take judicial notice of these pleadings and other publicly available documents.  *Mira v. Kingston*, 218 F. Supp. 3d 229, 234 (S.D.N.Y. 2016).

[2] Ventura later testified that Combs had paid her $20 million in the settlement.  *See* Julia Jacobs & Joe Coscarelli, *Cassie Settled Lawsuit Against Sean Combs for $20 Million*, N.Y. Times (May 14, 2025), https://www.nytimes.com/ 2025/05/14/arts/music/diddy-cassie-settlement-amount.html.

[3] *See, e.g.*, Ginger Adams Otis, *Sean Combs Accused of Physical, Mental Abuse by Former Partner*, Wall Street J. (Nov. 16, 2023), https://www.wsj.com/us-news/sean-combs-accused-of-physical-mental-abuse-by-former-partner-ef7873c7; Larry Neumeister, *Sean "Diddy" Combs and Singer Cassie Settle Lawsuit Alleging Abuse 1 Day After It Was Filed*, AP (Nov. 18, 2023), https://apnews.com/article/sean-combs-cassie-lawsuit-2d2a4c8938eb82c34b62c01a30969554.  The Court may take judicial notice of these articles because they are being offered "for the fact of their publication" and not the truth of their contents on this motion to dismiss.  *See In re Merrill Lynch & Co., Inc. Res. Reports Sec. Litig.*, 289 F. Supp. 2d 416, 425 n.15 (S.D.N.Y. 2003).

[4] *See, e.g.*, *Surveillance Video Shows Sean 'Diddy' Combs Physically Assaulting Former Girlfriend in 2016*, CNN (May 19, 2024), https://www.cnn.com/2024/05/17/entertainment/video/sean-diddy-combs-cassie-venture-surveillance-digvid.

in the early 1990s, she was "drugged, sexually assaulted and abused, and [made] the victim of 'revenge porn' that [Combs] created and distributed." Complaint ¶ 1, *Dickerson-Neal v. Combs*, No. 952341/2023 (Sup. Ct. N.Y. Cnty. Nov. 23, 2023). Another woman alleged she was gang-raped and trafficked by Combs and others when she was a 17-year-old junior in high school. Complaint ¶ 6, *Kane v. Combs*, No. 23-cv-10628 (S.D.N.Y. Dec. 6, 2023).[5] And music producer Rodney 'Lil Rod' Jones filed a lawsuit accusing Combs of sexual assault, alleging that he possessed "hundreds of hours of video and audio recordings" of illegal activity and evidence of "Combs providing laced alcoholic beverages to minors." Complaint ¶¶ 29-30, *Jones v. Combs*, No. 24-cv-1457 (S.D.N.Y. Mar. 4, 2024).[6] Numerous other civil suits followed, raising similar allegations against Combs.[7] These civil actions were widely reported in the media.[8]

Then the criminal prosecution of Combs became public. On March 25, 2024, federal agents raided multiple properties tied to Combs and seized nearly 100 electronic devices. *See* Transcript at 10:13-17, *United States v. Combs*, No. 24-cr-542 (S.D.N.Y. Oct. 18, 2024)

---

[5] Kane has since filed amended complaints; the operative complaint contains the same allegations. *See* Amended Complaint ¶ 6, *Kane v. Combs*, No. 23-cv-10628 (S.D.N.Y. Dec. 10, 2024).

[6] Jones has since filed amended complaints; the operative complaint contains the same allegations. *See* Second Amended Complaint ¶¶ 28-29, *Jones v. Combs*, No. 24-cv-1457 (S.D.N.Y. Apr. 12, 2024).

[7] *See, e.g.*, Complaint ¶¶ 23-54, 81-82, *Lampros v. Combs*, No. 154859/2024 (Sup. Ct. N.Y. Cnty. May 23, 2024) (alleging Combs repeatedly raped plaintiff, forced her to take ecstasy, and filmed a sexual encounter without her knowledge); Complaint ¶¶ 115, 127, *English v. Combs*, No. 24-cv-5090 (S.D.N.Y. July 3, 2024) (alleging plaintiff was sex trafficked by Combs and that security cameras at Combs's home filmed a sexual assault of plaintiff while she was unconscious); Amended Complaint ¶¶ 62-79, *McKinney v. Combs*, No. 24-cv-3931 (S.D.N.Y. Aug. 1, 2024) (alleging Combs gave plaintiff laced marijuana and forced her to perform oral sex on him); Complaint ¶¶ 94-100, *Richard v. Combs*, No. 24-cv-6848 (S.D.N.Y. Sept. 10, 2024) (alleging plaintiff, who worked with Combs and appeared on seasons of *Making the Band*, observed Combs invite people who "appeared underage" to "use drugs and engage in sex acts" and was herself sexually harassed and assaulted by Combs); Complaint ¶¶ 78-79, *Graves v. Combs*, No. 24-cv-7201 (S.D.N.Y. Sept. 24, 2024) (alleging Combs and others "rap[ed] Plaintiff and record[ed] it," then "published and/or disseminated the video without Plaintiff's knowledge or consent"); Complaint ¶¶ 36-39, *McCrary v. Combs*, No. 24-cv-8054 (S.D.N.Y. Oct. 23, 2024) (alleging Combs raped plaintiff under threat of violence).

[8] *See, e.g.*, *Sean 'Diddy' Combs Accused of 1991 Sexual Assault in Second Suit*, Reuters (Nov. 24, 2023 5:06 AM), https://www.reuters.com/world/us/sean-diddy-combs-accused-1991-sexual-assault-second-suit-2023-11-24/; Colleen Shalby, *Sean 'Diddy' Combs Faces Sex Assault Lawsuit from a Sixth Person*, L.A. Times (May 24, 2024 3:00AM); Sidney Madden, *New Lawsuit Accuses Sean Combs of Rape, Recording Assault Later Distributed As Porn*, NPR (Sept. 24, 2024 6:01 PM), https://www.npr.org/2024/09/24/g-s1-24401/sean-diddy-combs-graves-rape-lawsuit.

(hereinafter "*U.S. v. Combs*").  On September 17, 2024, federal prosecutors unsealed an indictment charging Combs with racketeering conspiracy, sex trafficking, and transportation to engage in prostitution.  *See* Compl. ¶ 15; Sealed Unredacted Indictment ("Indictment"), *U.S. v. Combs* (Sept. 12, 2024).[9]  The grand jury charged that Combs "abused, threatened, and coerced women and others around him to fulfill his sexual desires, protect his reputation, and conceal his conduct." Indictment ¶ 1.  Among other things, the indictment alleged Combs engaged in "verbal, emotional, physical, and sexual" abuse, controlling women by "distributing narcotics to them."  *Id.* ¶ 3.  The indictment also alleged that Combs "arranged, directed, masturbated during, and often electronically recorded" "elaborate and produced sex performances" called "Freak Offs"; that he "used force, threats of force, and coercion[] to cause victims to engage in" Freak Offs; that he "distributed a variety of controlled substances to victims, in part to keep the victims obedient and compliant"; and that he "kept videos he filmed of victims engaging in sex acts."  *Id.* ¶ 12(a). Combs was arrested on September 16, 2024 and denied bail pending trial.  *See* Order, *U.S. v. Combs* (Nov. 27, 2024).

## C.    NewsNation Reports On the Ongoing Civil and Criminal Cases Against Combs

The civil complaints, criminal indictment, and widespread news coverage concerning the allegations against Combs described above all occurred before the NewsNation coverage challenged in this action.  At issue here are two news reports from the NewsNation show *Banfield*, which aired on September 27, 2024 and October 31, 2024 (together, the "Challenged Reports").[10] *See* Compl. ¶¶ 31-39, 44-48.

---

[9] Two superseding indictments added further charges and allegations.  Superseding Indictment, *U.S. v. Combs*, ECF No. 144 (adding allegations related to two additional victims to racketeering conspiracy charge); Superseding Indictment, *U.S. v. Combs*, ECF No. 209 (adding special sentencing factor to racketeering conspiracy charge, and adding charges related to Victim 2 for sex trafficking and transportation to engage in prostitution).

[10] Video recordings of the Challenged Reports are attached as exhibits to the accompanying Declaration of Elizabeth A. McNamara.  *See* McNamara Decl. Ex. 1 (September 27 Video); *id.* Ex. 2 (October 31 Video).  The Court may

**September 27 Report (Compl. ¶¶ 31-39):**  In the September 27 Report, NewsNation host Laura Ingle covered Combs's recent indictment and other developments in civil cases against him. Ms. Ingle reported on a forthcoming TMZ documentary about Combs's indictment and discussed recent news coverage by other outlets, including a New York Post interview with an individual who had attended Combs's infamous "freak off" parties[11]:

> The New York Post got an exclusive interview with an unnamed coke dealer in the Hamptons who says he was so freaked out by one of Diddy's freak offs that he, quote, "got the F out of there."  That's a quote.  He says he saw famous men having sex with each other, prostitutes passed around like candy, and a lot of people high on ketamine and GHB.  He told the Post, and these are his words, quote, "weird stuff was starting to happen.  Celebrity guys were [blanking] each other.  There were back bedrooms, and it was like the inner sanctum.  You see two people you would not think would be hooking up, talking rappers.  That's what shocked me."

McNamara Decl. Ex. 1 at 3:59-4:40, Ex. 3 at 2.

Ms. Ingle also discussed the many civil suits pending and threatened against Combs, including a "Jane Doe" lawsuit filed that day "accusing Combs of drugging, raping, and impregnating her."  *Id.* Ex. 1 at 6:45-50, Ex. 3 at 3.

Ms. Ingle then transitioned to her interview of Defendant Mitchell, who she introduced as the lawyer for a new accuser who claimed she was raped by Combs in 2018.  *Id.* Ex. 1 at 6:56-7:08, Ex. 3 at 3.  Mitchell described her client's allegations, which she represented would form the basis of a forthcoming lawsuit: her client alleged she encountered Plaintiff at the home of a friend with "industry ties" and was served a drink that made her "woozy," after which Plaintiff allegedly sexually assaulted her and then directed another individual to engage in a sex act with her while

---

properly consider videos of the Challenged Reports at the dismissal stage because they are "integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147,152-53 (2d Cir. 2002).  *See* Compl. ¶¶ 31-39, 44-48.  Nexstar has also provided transcriptions for the Court's convenience.  *See* McNamara Decl. Ex. 3 (September 27 Transcript); *id.* Ex. 4 (October 31 Transcript).

[11] *See* Michael Kaplan & Jeanette Settembre, *Inside Sean "Diddy" Combs' Hamptons Sex Parties, Featuring "Gay Rappers" Who Were "High on Ketamine": Source*, N.Y. Post (Sept. 19, 2024), https://nypost.com/2024/09/19/us-news/sean-diddy-combs-hamptons-sex-parties-with-gay-rappers/.

he watched. *Id.* Ex. 1 at 7:39-8:33, Ex. 3 at 3.  Mitchell represented that her client had a witness—a neighbor who saw her client running from the house screaming and brought her inside to call the police—and that there was a police report from that night. *Id.* Ex. 1 at 8:34-9:45, Ex. 3 at 3-4. Mitchell asserted she would be filing suit in California "within the week" and stated:  "I will be attaching the criminal complaint that was made—I'll attach the number so everyone can see that this is a real number, and can go to the police department there and request their own copy of that police report that was made back in 2018." *Id.* Ex. 1 at 11:53-12:01, 15:34-53, Ex. 3 at 5-6.

In addition to her client's forthcoming lawsuit, Mitchell told Ms. Ingle that another individual had sought her advice regarding the sale of "one of the Diddy tapes." *Id.* Ex. 1 at 12:01-12, Ex. 3 at 5.  Ms. Ingle commented that "we've heard about the tapes," but noted "the shopping thing is kind of new." *Id.* Ex. 1 at 12:23-26, Ex. 3 at 5.  In response to further questions, Mitchell confirmed the video was "real" and she had seen stills from it, in which another individual who was even "more high profile than Mr. Combs" was "very visible." *Id.* Ex. 1 at 12:50-13:18, Ex. 3 at 5.  She described the video as "pornographic in nature." *Id.* Ex. 1 at 13:18-22, Ex. 3 at 5.

Following Mitchell's interview, Ms. Ingle told the audience: "These are allegations, of course.  [Combs] has not responded.  But we will follow it as we move along this developing story." *Id.* Ex. 1 at 17:36-42, Ex. 3 at 7.

**October 31 Report (Compl. ¶¶ 44-48).**  On October 31, 2024, Burgess testified before the grand jury in Combs's criminal case in response to a federal subpoena.  Compl. ¶¶ 43, 46. Burgess gave an interview outside the courthouse immediately after his testimony. *Id.* ¶ 43.  Later that day, NewsNation aired a *Banfield* segment with clips from an in-studio interview of Burgess and Mitchell taped shortly after his testimony. *See* Compl. ¶ 44.  Host Ashleigh Banfield discussed the status of Combs's legal battles, noting he was "scheduled for trial next May on federal charges

of sex trafficking, racketeering, and prostitution." McNamara Decl. Ex. 2 at 3:49-55, Ex. 4 at 1-2. She also remarked on the increasing number of civil suits alleging sexual abuse, noting there were "about 27 give or take . . . sex suits against [Combs]" filed to date, including some in which "the accusers claimed that they were children when they were assaulted." *Id.* Ex. 2 at 4:05-16, Ex. 4 at 2.

Ms. Banfield then introduced Burgess, explaining he had "just testified before a federal grand jury" and "says he was in possession of . . . flash drives that belonged to the late Kim Porter," Combs's ex-girlfriend. *Id.* Ex. 2 at 4:24-43, Ex. 4 at 2. "On those drives, the witness says, eight videos featured eight celebrities at Diddy freak offs or parties." *Id.* Ex. 2 at 4:52-5:01, Ex. 4 at 2. She noted: "Courtney Burgess told his story on a podcast before he told the grand jury today, and after he told the grand jury, and I mean immediately after, he booked it over to my set, and he and his attorney talked to me." *Id.* Ex. 2 at 5:13-25, Ex. 4 at 2. Ms. Banfield cautioned that Burgess was "very limited in how much detail he could go into about his testimony," and explained that because "the eight celebrities in the videos were allegedly victims of sex crimes, we know who they are, but we will not be naming them, famous or not." *Id.* Ex. 2 at 5:24-43, Ex. 4 at 2.

During the interview, Burgess and Mitchell confirmed that Burgess received a federal subpoena in the grand-jury proceedings against Combs. Burgess opined that all eight celebrities in the videos "appeared to be either inebriated or intoxicated or under the influence of drugs" and two or three "seemed to be potentially" minors. *Id.* Ex. 2 at 9:04-10:03, Ex. 4 at 3-4.[12] Burgess stated that he received flash drives containing the videos and a manuscript from an individual who was dating the late Kim Porter, and that he spoke to Porter by phone before receiving them. *Id.* Ex. 2 at 11:46-13:02, Ex. 4 at 5. Ms. Banfield reminded the audience that while Combs had been

---

[12] Mitchell emphasized that these assessments reflected Burgess's opinion and speculation based on reviewing the videos, not his independent knowledge. McNamara Decl. Ex. 2 at 8:56-9:03, Ex. 4 at 3.

"accused," he "has not been convicted of any crimes." *Id.* Ex. 2 at 13:46-54, Ex. 4 at 6. She continued: "[E]verything against him is an allegation until it is proven in a court of law, or he decides to sign a plea deal . . . But at this point in the story, Sean Combs is not guilty of any crimes. He is currently under indictment. He is currently being held on, on bail." *Id.* Ex. 2 at 13:54-14:17, Ex. 4 at 6.

### D.    Plaintiff's Complaint

Combs filed this lawsuit on January 22, 2025. ECF No. 1.[13] The Complaint is almost entirely composed of allegations against Mitchell and Burgess, most of which are unrelated to the Challenged Reports. The only allegations against Nexstar arise from publishing the September 27 Report and the October 31 Report.[14]

The Complaint expressly acknowledges (or does not dispute) key facts: that Combs orchestrated and videotaped "Freak Offs" involving drugs, prostitution, and sexual exploits often including prominent people like himself. Combs likewise does not (nor could he) dispute that prior to the Challenged Reports a raft of civil complaints were filed accusing him of rape, sexual assault, and physical abuse (including with minors), or that his criminal indictment was unsealed before the Challenged Reports and alleged, among other things, that he "abused threatened, and coerced women and others" and that he engaged in "verbal, emotional, physical, and sexual" abuse during the videotaped "Freak Offs." Indictment ¶ 12(c). Instead, Combs's defamation claim against Nexstar rests on the following statements from the Challenged Reports:

---

[13] Combs filed a Corrected Complaint (ECF No. 16) to correct an error in the caption.

[14] Paragraphs 50 and 51 of the Complaint refer to statements made by Mitchell "on October 7, 2024," without specifying the context. To the extent those statements are intended to refer to a NewsNation report, the Complaint does not plead those facts, nor does it make any allegations specific to Nexstar.

**September 27 Report**

- Mitchell's reported contention that someone attempted to "shop" a pornographic video showing Combs and another celebrity, alleging that Mitchell "was never able to confirm the existence of any such video[s]." Compl. ¶¶ 31, 32, 34. **("Statement 1")**

- Mitchell's reported description of an alleged sexual assault suffered by her client in California in 2018 and representation that she planned to file a civil complaint that would include a police report from the incident. Compl. ¶¶ 37-39. Combs acknowledges that "roughly two weeks after the NewsNation broadcast, Mitchell filed the lawsuit she had previewed." *Id.* ¶ 40. But he alleges that the lawsuit did not attach any police report. *Id.* **("Statement 2")**

**October 31 Report**

- Burgess's description of his grand-jury testimony, including that he received flash drives containing "eight videos [that] featured eight celebrities at Diddy freak offs or parties," that "two to three, possibly three" appeared to be minors, "all" appeared inebriated, and he believed that "all, to be honest" were "victims." *Id.* ¶¶ 44, 47-48.

  **("Statement 3")**

(together, the "Statements").

Based on these Statements (and other statements not attributed to Nexstar), Combs asserts damages in an amount not less than $50 million.

**E.    Plaintiff Is Tried and Convicted of Two Felony Counts of Transportation to Engage in Prostitution**

Jury selection began in Combs's federal criminal trial on May 5, 2025, and trial lasted approximately seven weeks. *See* Minute Entry, *U.S. v. Combs* (May 12, 2025) (opening statements); Minute Entry, *U.S. v. Combs* (June 27, 2025) (closing statements). The government's

10

34 witnesses included at least three women who had also brought civil suits against Combs. *See* Minute Entries, *U.S. v. Combs* (May 13-16, 2025) (testimony of Casandra Ventura); Minute Entries, *U.S. v. Combs* (May 16 and 19, 2025) (testimony of Dawn Richard); Minute Entries, *U.S. v. Combs* (June 4-5, 2025) (testimony of Bryana Bongolan). Witnesses alleged a number of sexual assaults by Combs. In opening and closing statements, Combs's defense counsel asserted that the sexual activities were consensual.[15]

The evidence at trial included several sexually explicit videos depicting "freak-offs."[16] The defense did not dispute the authenticity of these videos, the existence of "freak-offs," or the evidence of drugs, baby oil, and other materials recovered from Combs's homes and allegedly used in "freak-offs." Indeed, Combs's defense counsel showed jurors some of the explicit videos themselves.[17]

On July 2, the jury found Combs guilty of two counts of transportation to engage in prostitution and acquitted him of the remaining charges. *See* Verdict Sheet, *U.S. v. Combs* (July 8, 2025).

---

[15] *See, e.g.*, *Diddy Sex Trafficking Trial: Opening Statements*, Court TV (May 14, 2025), https://www.courttv.com/title/diddy-sex-trafficking-trial-listen-to-opening-statements/ (quoting from defense counsel opening statement: "This case is about voluntary adult choices made by capable adults and consensual relationships. . . . [Jane] agreed and they went to a private hotel room. Again, like a consensual threesome. And Combs would watch."); Ben Sisario et al., *4 Takeaways from the Defense's Closing Argument at Sean Combs's Trial*, N.Y. Times (July 1, 2025), https://www.nytimes.com/2025/06/27/arts/music/sean-combs-diddy-trial-defense-closings.html ("[Combs's counsel] devoted long stretches of his four-hour closing argument to highlighting testimony, texts and video evidence, that he said demonstrated that Casandra Ventura and 'Jane,' who testified under a pseudonym, consensually participated in the marathon sex parties that are central to the government's claim that the women were sex trafficked.").

[16] *See, e.g.*, Aaron Katersky et al., *Sean "Diddy" Combs Trial Day 29 Recap: Jurors Watch Videos of "Freak-Offs"*, ABC News (June 17, 2025 6:49 PM), https://abcnews.go.com/US/sean-diddy-combs-trial-day-29-recap-jurors/story?id=122949525; *Diddy Jury Watches Sexually Explicit Videos from "Marathon" Hotel Nights*, Court TV (June 23, 2025), http://courttv.com/title/diddy-jury-watches-sexually-explicit-videos-from-marathon-hotel-nights/.

[17] *Sean "Diddy" Combs Jury Views More Sex Videos As Prosecution Case Nears End*, The Guardian (June 23, 2024 3:45 PM), https://www.theguardian.com/music/2025/jun/23/sean-diddy-combs-trial ("Defense lawyers last week showed the jury about 18 minutes of video clips from the sex performances involving Cassie after a lawyer said in opening statements that the videos prove sexual activity was consensual and not evidence of a crime.").

## ARGUMENT

To survive a 12(b)(6) motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That standard requires the plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Biro v. Condé Nast,* 807 F.3d 541, 544 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). Although a court must take "well-pleaded factual allegations" as true for purposes of a Rule 12(b)(6) motion, legal conclusions couched as factual allegations "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678-79. Unless a plaintiff's well-pleaded allegations have "nudged [his] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

New York law requires a public-figure defamation plaintiff like Combs to plead and prove that each statement at issue is "(1) of and concerning [him], (2) likely to be understood as defamatory by the ordinary person, (3) false, and (4) published with actual malice, that is, either knowledge of falsity or reckless disregard of the truth." *Church of Scientology Int'l. v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001). Further, "[a] defamatory statement is actionable only if it is made without authorization or privilege (a requirement that is sometimes listed as part of the elements of a defamation action)." *Ramsaran v. Abraham*, 2017 WL 1194482, at *3 (S.D.N.Y. Mar. 30, 2017).

Here, Plaintiff fails to plausibly allege that Nexstar published any of the challenged statements with actual malice; to the contrary, the Complaint shows a *lack* of actual malice. His claim against Nexstar can and should be dismissed with prejudice on this ground alone.

Additionally—and independently—Plaintiff cannot state a defamation claim with respect to Statements 1 and 3 because the "gist" or "sting" of these statements is substantially true: Plaintiff

claims Mitchell and Burgess never possessed or saw stills from explicit sexual videos depicting him with other well-known individuals, but his criminal trial already established that such videos exist. And to the extent Plaintiff is challenging NewsNation's reporting about a grand-jury witness's account of his testimony and evidence provided in response to a federal subpoena (Statement 3), that reporting is protected by New York's robust fair-report privilege, *see* N.Y. Civ. Rights Law § 74.

Finally, because the Challenged Reports are plainly about a subject of intense public interest, New York's Anti-SLAPP Law applies to this case and entitles Nexstar to an award of attorney's fees and costs for prevailing on this motion. *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 182-89 (S.D.N.Y. 2024).

# I.    PLAINTIFF'S DEFAMATION CLAIM AGAINST NEXSTAR SHOULD BE DISMISSED FOR LACK OF ACTUAL MALICE

## A.    Plaintiff Fails to Plausibly Allege that Nexstar Published Any Challenged Statements with Actual Malice

There is no question that Combs is a public figure required to plead and prove actual malice; indeed, the Complaint concedes the actual-malice standard applies to his claims. *See, e.g.*, Compl. ¶ 14 (describing Combs as "famous for his extraordinary and historic achievements"); *id.* ¶ 45 (alleging NewsNation "knew [a statement] was false or, at a minimum, recklessly disregarded whether the statements were true or false").[18] The actual-malice standard presents "a high bar," *McDougal v. Fox News Network LLC*, 489 F. Supp. 3d 174, 186 (S.D.N.Y. 2020), designed "to

---

[18] Because the legal claims against Combs are plainly a matter of public interest, the actual malice standard *also* applies under New York's Anti-SLAPP Law. *See* N.Y. Civ. Rights Law § 76-a(1)(a)(1) (Anti-SLAPP Law applies to communications involving "an issue of public interest," which "shall be construed broadly"); *Lindberg v. Dow Jones & Co.*, 2021 WL 3605621, at *8 (S.D.N.Y. Aug. 11, 2021) (defining matters of public interest as "matters of political, social, or other concern to the community"); *Shuman v. N.Y. Mag.*, 72 Misc. 3d 1211(A), at *2 (Sup. Ct. N.Y Cnty. 2021), ("[A]ccounts of sexual harassment, rape, and/or the potential abuse of the Title IX process at well-known academic institutions are matters of social concern to the public."), *aff'd*, 211 A.D.3d 558 (1st Dep't 2022).

assure to the freedoms of speech and press that 'breathing space' essential to their fruitful exercise." *Contemporary Mission, Inc. v. N.Y. Times Co.*, 842 F.2d 612, 621 (2d Cir. 1988). It focuses solely on the defendant's *subjective* state of mind "at the time of publication." *Bose Corp. v. Consumer Union of U.S., Inc.*, 466 U.S. 485, 512 (1984). "Mere negligence does not suffice." *Masson v. New Yorker Magazine Inc.*, 501 U.S. 496, 510 (1991). Instead, "[t]here must be sufficient evidence to permit the conclusion that the defendant *in fact* entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (emphasis added), or had a "high degree of awareness of their probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). And because organizations like Nexstar cannot have institutional knowledge of falsity, actual malice must be "brought home to the persons in the . . . organization having responsibility for the publication." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964).

"Not only is proving actual malice a heavy burden, but, in the era of *Iqbal* and *Twombly*, *pleading* actual malice is a more onerous task as well." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 278 (S.D.N.Y. 2013), *aff'd* 807 F.3d 541, *aff'd*, 622 F. App'x 67 (2d Cir. 2015) (emphasis added). "Pleading 'actual-malice buzzwords' is simply not enough to nudge a case into discovery." *Id.* at 279–80. For this reason, courts routinely dismiss defamation claims prior to discovery for failure to adequately plead facts that would support actual malice. *See, e.g.*, *1st Amend. Praetorian v. N.Y. Times Co.*, 2025 WL 949575, at *7-10 (S.D.N.Y. Mar. 28, 2025); *BYD Co. v. VICE Media LLC*, 531 F. Supp. 3d 810, 822-26 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022); *Brimelow v. N.Y. Times Co.*, 2020 WL 7405261, at *8-12 (S.D.N.Y. Dec. 16, 2020), *aff'd*, 2021 WL 4901969 (2d Cir. Oct. 21, 2021); *McDougal*, 489 F. Supp. 3d at 185-88; *Cabello-Rondon v. Dow Jones & Co.*, 720 F. Appx. 87, 88 (2d Cir. 2018).

Here, the Complaint does not allege any facts that would show Nexstar published the Statements knowing them to be false or seriously doubting their accuracy. Instead, it merely recites the legal standard or pleads conclusory assertions that are not sufficient as a matter of law. At bottom, Plaintiff claims that "NewsNation, upon information and belief, conducted no investigation," did not "fact check[]," and did not "reach out to Mr. Combs's representatives for comment" before publishing the Statements. Compl. ¶¶ 36, 42. These allegations fail for several reasons.

*First*, Plaintiff's "formulaic recitation" of the actual malice standard, *see id.* ¶¶ 59, 61, carries no weight on a motion to dismiss. *Twombly*, 550 U.S. at 555; *see also, e.g., Atas v. N.Y. Times Co.*, 2023 WL 5715617, at *5 (S.D.N.Y. Sept. 5, 2023) (plaintiff who "recites the actual malice standard" has not "plausibly pleaded" actual malice); *Bobulinski*, 758 F. Supp. 3d at 179 ("conclusory assertions that [defendant] made the statements either 'knowing that they were false or with reckless disregard for the truth'" not sufficient to plead actual malice).

*Second*, allegations that NewsNation "conducted no investigation," did not "fact check[]," and did not "reach out to Mr. Combs' representatives for comment" before airing its September 27 Report are not sufficient either. *See* Compl. ¶¶ 36, 42. "[T]here is a critical difference between not knowing whether something is true and being highly aware that it is probably false"—and "[o]nly the latter establishes [actual malice] in a defamation action." *Chandok v. Klessig*, 632 F. 3d 803, 815 (2d Cir. 2011). As a result, it is well established that "a failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish [actual malice]." *BYD Co. Ltd.*, 531 F. Supp. 3d at 826 (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 688 (1989)) Similarly, a "failure to verify statements with the plaintiff" does not constitute actual malice. *Prince v. Intercept*, 2023 WL 4492413, at *10

(S.D.N.Y. July 12, 2023) (quoting *Loeb v. New Times Commc'ns Corp.*, 497 F. Supp. 85, 92-93 (S.D.N.Y. 1980)).[19]   Even "[p]ublication in the face of a denial by plaintiff[] . . . does not demonstrate actual malice."[20]   *Contemp. Mission*, 665 F. Supp. at 270.   Courts routinely dismiss claims with similar deficient allegations.   *See, e.g., McDougal*, 489 F. Supp. 3d at 185; *Bobulinski*, 758 F. Supp. 3d at 179–80.

    *Third*, Combs cannot twist an innocuous statement by the host of the October 31 Report into an admission of actual malice.   Ms. Banfield introduced clips of her interview with Burgess following his grand-jury testimony by explaining:

> [Burgess] says he was in possession of a trove of digital evidence from Diddy's freak offs and parties. . . [H]e says a friend gave him 11 flash drives that belonged to the late Kim Porter . . . . On those drives, [Burgess] says, eight videos featured eight celebrities at Diddy Freak Offs or parties, and that six were males, two were females. . . . I should tell you that he was very limited in how much detail he could go into about his testimony, and **because the eight people in the videos, the eight celebrities in the videos, were allegedly victims of sex crimes, we know who they are, but we will not be naming them, famous or not**.

McNamara Decl. Ex. 2 at 4:29-5:42, Ex. 4 at 2.   Combs claims the bold text implies that Ms. Banfield had personally viewed these videos in order to "know who [the celebrities] are," which was a knowingly false statement because she had *not* personally seen the videos.   But Ms. Banfield *never said that she viewed the videos*; she specifically attributed the identification of the celebrities to Burgess.   Because the October 31 Report cannot reasonably be read to support Plaintiff's invented inference—much less to "affirmatively suggest[] that [Nexstar] intended or endorsed that

---

[19] Plaintiff's conclusory assertion that statements by Mitchell and Burgess "would have been revealed as false had NewsNation conducted even the most modest fact checking," Compl. ¶ 58, is just another iteration of this "failure to investigate" theory of actual malice, and therefore also fails as a matter of law.

[20] Even without contacting Combs or his counsel, the NewsNation hosts made a point to emphasize that the claims against Combs were *allegations*, not proven in court.   *See supra* pp. 7, 8-9.

inference"—that inference is not well pleaded. *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37 (1st Dep't 2014).

*Fourth,* none of Plaintiff's generalized allegations about "motive" or "bias" demonstrate actual malice as a matter of law. Plaintiff's assertion that NewsNation "profited" from airing the Challenged Reports does not suffice. *Bloom v. A360 Media LLC*, 735 F. Supp. 3d 466, 474 (S.D.N.Y. 2024) ("desire to turn a profit" not sufficient for actual malice). Nor does his allegation that "Defendants" made statements "in bad faith, as part of a deliberate effort to damage Mr. Combs's reputation, undermine his businesses and . . . poison the public's perception of him and deprive him of a fair trial."[21] *See Harte-Hanks*, 491 U.S. at 665 ("[A defendant's] motive in publishing a story . . . cannot provide a sufficient basis for finding actual malice."); *1st Amend. Praetorian*, 2025 WL 949575, at *9 (allegations that defendant had preconceived narrative and engaged in a "quest to sensationalize news" insufficient to plead actual malice); *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019) ("[T]he motivations behind defendants' communications . . . do not impact whether defendants acted with actual malice as a matter of law.").

*Finally*, Plaintiff fails to "bring home" the requisite subjective knowledge of falsity or serious doubts as to truth to individuals at Nexstar responsible for the challenged reports. *Sullivan*, 376 U.S. at 287; *accord Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013). General allegations of what organizations like NewsNation or Nexstar allegedly "knew" are not sufficient. *See, e.g., BYD Co.,* 531 F. Supp. 3d at 826 (plaintiff failed to plausibly plead actual malice where it failed to "bring home" allegations of subjective knowledge of falsity); *Bloom*, 735 F. Supp. 3d

---

[21] This allegation should also be disregarded because it constitutes impermissible group pleading. *See TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.,* 2017 WL 2627912, at *2 (S.D.N.Y. June 16, 2017) (complaint that "generally attribute[s] misconduct to the 'Defendants' collectively" and fails to "differentiate between the [multiple] defendants" is subject to dismissal).

at 473 (allegations that "vaguely reference" what corporate defendant knew or did "cannot support an inference of actual malice").

Because none of Plaintiff's allegations about Nexstar suffice to plead actual malice as a matter of law, his claim against Nexstar should be dismissed.

### B.    To the Contrary, the Complaint Shows a *Lack* of Actual Malice by Nexstar

Plaintiff's failure to plead actual malice does not end with his inability to allege that Nexstar harbored "serious doubt" concerning the challenged Statements.  Even more damning for his claim is the fact that the Complaint and public record show a *lack* of actual malice by Nexstar.

*First*, the substance of the challenged Statements—that videos existed depicting Combs and celebrities engaging in sexual acts at "freak-offs," and that a forthcoming civil suit would allege Combs had sexually assaulted a woman with an inanimate object and then directed another man to engage in sexual acts with her while he watched—were far from "inherently improbable." The Challenged Reports came on the heels of (1) numerous civil lawsuits filed against Combs, including allegations of sexually assaulting minors, drugging, and video recording sexual assault; (2) published video footage of Combs violently attacking a romantic partner; and (3) a federal indictment against Combs for racketeering conspiracy, sex trafficking, and transportation to engage in prostitution, which included allegations that Combs coerced others into sexual acts, including with drugs, and recorded those acts.  *Supra* pp. 3-5.  Actual malice is measured by the publisher's knowledge "at the time of publication," *Bose*, 466 U.S. at 512; and at that time, the challenged Statements were consistent with similar allegations that were widely reported and were actively being litigated by civil plaintiffs and prosecuted by the federal government.  Reliance on consistent court filings and prior news reporting supports a lack of actual malice.  *See, e.g.*, *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1297 (D.C. Cir. 1988) ("*The Wall Street Journal*'s good faith reliance on previously published reports in reputable sources . . . precludes a finding of

actual malice as a matter of law."); *Adelson v. Harris*, 973 F. Supp. 2d 467, 502 (S.D.N.Y. 2013)

("[R]eliance upon a report disseminated by a reputable news organization and a sworn declaration

would be insufficient to establish liability as a matter of law."), *aff'd*, 876 F.3d 413 (2d Cir. 2017).

*Second*, far from Nexstar relying on "anonymous" or "unverified" sources, *St. Amant*, 390

U.S. at 732, the Complaint alleges that Burgess and Mitchell were personally involved in Combs's

criminal and civil proceedings and frequently interviewed on these topics.  Burgess "appeared

before the grand jury" in the criminal case against Combs, Compl. ¶ 43, and had claimed to possess

the same digital evidence "numerous times to the press and in social media appearances," *id.* ¶ 18.

Likewise, Mitchell—the attorney for Burgess in his grand-jury testimony, *id.* ¶¶ 31, 43—

"promoted herself as an authority on the federal grand jury investigation into Mr. Combs," *id.* ¶ 28,

and spoke with "various media outlets," *id.* ¶ 31.

*Finally*, the Complaint and the Challenged Reports show that Mitchell and Burgess

repeatedly confirmed they had evidence to support their claims and provided specific details in

response to questions by NewsNation hosts.  For example, Mitchell confirmed in the September

27 Report that she had "seen stills of the video" and could verify "that it exists, that it's real, that

the other person in the video is very visible," and that "the video is pornographic in nature."

Compl. ¶ 32; McNamara Decl. Ex. 1 at 13:04-21, Ex. 3 at 5.  Mitchell provided specific details of

her client's forthcoming lawsuit and vividly described conversations with her; she further

confirmed that there was a witness to the alleged events and a police report from that night, and

that she was actively trying to get information from police about their investigation.  Compl. ¶¶ 38,

39; McNamara Decl. Ex. 1 at 8:46-9:13, 11:15-50; Ex. 3 at 3-5.[22]

---

[22] Contrary to the Complaint's characterizations, Mitchell clarified that what she planned to include was not the police report but the complaint number from the incident.  *See* McNamara Decl. Ex. 1 at 15:34-53, Ex. 3 at 6 ("As soon as I file my lawsuit in civil court, I will be attaching the criminal complaint that was made—*I'll attach the number so everyone can see that this is a real number, and can go to the police department there and request their own copy of*

Similarly, in the October 31 Report, Burgess and Mitchell confirmed that Burgess was subpoenaed by the federal government to provide evidence in the Combs criminal case. Compl. ¶ 46. The Complaint concedes that Burgess provided specific details about what he observed on the tapes in response to the host's questions, *id.* ¶ 47, and that he stood behind the authenticity of the materials by asserting that he had "spoke[n] to [Kim Porter] probably like six hours before" receiving the materials, *id.* ¶ 48.

Because the Complaint not only fails to plausibly plead actual malice as to Nexstar, but also affirmatively *undercuts* its ability to do so, Plaintiff's claim against Nexstar should be dismissed with prejudice.

## II.    PLAINTIFF'S CLAIM FAILS ON INDEPENDENT GROUNDS

### A.    Statements 1 and 3 Are Substantially True

Plaintiff's defamation claim against Nexstar with respect to Statements 1 and 3 should also be dismissed for an independent reason: the "gist" or "sting" of these statements, *i.e.*, that Combs recorded explicit sexual videos of "freak-offs," is substantially true. "Because falsity is an element of New York's defamation tort, and 'falsity' refers to material not substantially true, the complaint in this case must plead facts that, if proven, would establish that the defendant's statements were not substantially true." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017). A statement is substantially true if it "would not have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Id.* at 242. "Minor

---

that police report that was made back in 2018." (emphasis added)). Regardless, the contents of the later-filed complaint are not relevant to actual malice. *See Bose*, 466 U.S. at 498 (actual malice measured "at the time of publication"); *Herbert v. Lando*, 781 F.2d 298, 305-06 (2d Cir. 1986) ("It is self-evident that information acquired after the publication of [allegedly] defamatory material cannot be relevant to the publisher's state of mind or his alleged malice at the time of publication.").

inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." *Masson*, 501 U.S. at 517.

It is well established by the Complaint and the public record—including evidence at Combs's criminal trial—that Combs orchestrated and took part in "freak-offs" that involved drugs, alcohol and sex with a wide range of people, including celebrities, and that many of these events were recorded on video. Regardless of whether Mitchell was actually provided with images from a "pornographic" video involving Combs and another celebrity (Statement 1), and regardless of whether Burgess actually possessed videos of celebrities participating in sexual encounters at "freak-offs" (Statement 3), the result is the same: Combs cannot state a claim over these statements because the defamatory "sting"—that such videos exist—is substantially true.

### B.  Statement 3 Is Protected by New York's Fair-Report Privilege

Statement 3 is also absolutely privileged under New York law as a "fair and true report" of an official proceeding: Burgess's grand-jury testimony. *See* N.Y. Civ. Rights Law § 74. Section 74 provides that "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding." *Id.* The privilege was established "to implement the public policy in favor of encouraging publication and dissemination of judicial decisions and proceedings as being in the public interest." *Beary v. W. Publ'g Co.*, 763 F.2d 66, 68 (2d Cir. 1985). It "exists to protect the media while they gather the information needed for the public to exercise effective oversight of the government . . . even when they report on official action that the government would like to keep secret." *Gubarev v. Buzzfeed, Inc.*, 340 F. Supp. 3d 1304, 1314 (S.D. Fla. 2018) (applying New York privilege to classified report of a government proceeding); *see also Idema v. Wager*, 120 F. Supp. 2d 361, 365 (S.D.N.Y. 2000) (privilege helps avoid stifling "an active, thriving, and

untrammeled press" that requires "broad protection" to report freely on official proceedings), *aff'd*, 29 F. App'x 676 (2d Cir. 2002).

"New York courts adopt a liberal interpretation of the 'fair and true report' standard of § 74 so as to provide broad protection to news accounts of [official] proceedings." *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 93 (2d Cir. 2017). In determining whether a news report is "fair and true," the language of the report "should not be dissected and analyzed with a lexicographer's precision." *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 68 (1979). Rather, it "is deemed a fair and true report if it is substantially accurate, that is if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth." *Friedman*, 884 F.3d at 93. Applying these principles, courts regularly dismiss defamation claims based on the fair-report privilege. *See, e.g.*, *Kinsey v. N.Y. Times Co.,* 991 F.3d 171, 180 (2d Cir. 2021); *Cummings v. City of New York*, 2021 WL 1163654, at *14-15 (S.D.N.Y. Mar. 26, 2021), *aff'd*, 2022 WL 2166585 (2d Cir. June 16, 2022); *BYD Co.*, 531 F. Supp. 3d at 821-22; *Zappin v. NYP Holdings, Inc.,* 2018 WL 1474414, at *6-9 (S.D.N.Y. Mar. 26, 2018).

Here, the privilege shields Nexstar from liability for Statement 3, in which Ms. Banfield interviewed Burgess about his grand-jury testimony and federal subpoena. Combs's criminal investigation, including the grand-jury process, is unquestionably an "official proceeding" within the scope of Section 74. New York's broad privilege applies to both "ongoing investigation[s]" and "completed investigation[s]," whether or not "the activities of the [investigating] agency [are] public." *Freeze Right Refrigeration & Air Conditioning Servs. v. City of New York*, 101 A.D.2d 175, 182 (1st Dep't 1984). *See also Fridman v. Buzzfeed, Inc.*, 2021 WL 1040531, at *6 (Sup. Ct. N.Y. Cnty. Mar. 11, 2021) (New York's privilege provides "broad protection to news accounts of

official proceedings, including not only judicial and legislative proceedings, but also . . . classified proceedings"). The privilege shields "statements made by those connected to the" proceeding, *Daleiden v. Planned Parenthood Fed'n of Am.*, 2022 WL 1013982, at *2 (2d Cir. Apr. 5, 2022), and information derived from "secondary sources," *Cholowsky v. Civiletti*, 69 A.D.3d 110, 115 (2d Dep't 2009), as well as "the release of background material with regard to the case," *Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 172 (S.D.N.Y. 2021) (citation omitted). There is "no requirement that the publication report the plaintiff's side of the controversy" for the privilege to apply. *Cholowsky*, 69 A.D.3d at 115.

Applying these principles, Plaintiff cannot state a claim against Nexstar for Statement 3. Ms. Banfield made clear the interview concerned Burgess's grand-jury testimony and materials that he produced in response to a federal subpoena.[23] And the "effect on [the viewer]" of Statement 3 is no different than that of the underlying proceedings, including the federal indictment.[24] *Friedman*, 884 F.3d at 93; *see also supra* § II.B. Accordingly, the fair report privilege provides another independent ground to dismiss Plaintiff's claim against Nexstar premised on Statement 3.

---

[23] *See, e.g.*, McNamara Decl. Ex. 2 at 4:24-28, Ex. 4 at 2 ("[M]y next guest just testified before the federal grand jury."); Ex. 2, at 4:52-5:01, Ex. 4 at 2 ("On those drives, *the witness says*, eight videos featured eight celebrities at Diddy freak offs or parties . . . ." (emphasis added)); Ex. 2 at 5:17-31, Ex. 4 at 2 ("[A]fter he told the grand jury, and I mean immediately after, he booked it over to my set, and he and his attorney talked to me. I should tell you that he was very limited in how much detail he could go into about his testimony.").

[24] Indictment ¶¶ 3, 12(a) (alleging, *inter alia*, that Combs engaged in "verbal, emotional, physical, and sexual" abuse and controlled women by "distributing narcotics to them"; that he "arranged, directed, masturbated during, and often electronically recorded" "elaborate and produced sex performances" called "Freak Offs"; that he "used force, threats of force, and coercion[] to cause victims to engage in" Freak Offs; that he "distributed a variety of controlled substances to victims, in part to keep the victims obedient and compliant"; and that he "kept videos he filmed of victims engaging in sex acts").

## III.    NEXSTAR IS ENTITLED TO FEES UNDER NEW YORK'S ANTI-SLAPP LAW

Because Plaintiff's claim is based on Nexstar's "exercise of the constitutional right of free speech in connection with an issue of public interest,"[25] N.Y. Civ. Rights Law § 76-a(1)(a), this action falls within the scope of New York's Anti-SLAPP Law, which provides a mandatory award of attorney's fees should Nexstar prevail on this motion.  While the Second Circuit has not yet weighed in, Judge Oetken's thoughtful opinion in *Bobulinski* persuasively explains that the fee-shifting provision is a matter of New York substantive law, and that the statutory entitlement to fees is satisfied where a party prevails on a Rule 12(b)(6) motion.  *Bobulinski*, 758 F. Supp. 3d at 182-89.  Because Nexstar's success on this motion would necessarily mean Plaintiff's claim against Nexstar lacks a "substantial basis" under the Anti-SLAPP Law, N.Y. Civ. Rights Law § 70-a(1), Nexstar has a substantive right to fees under New York law should it prevail on this motion.

## <u>CONCLUSION</u>

For these reasons, Nexstar respectfully requests that this Court dismiss Plaintiff's claim against Nexstar with prejudice and award it reasonable attorney's fees.

Dated:  New York, New York
          July 29, 2025

                                        Respectfully submitted,

                                        DAVIS WRIGHT TREMAINE LLP

                                        By:  */s/ Elizabeth A. McNamara*
                                        Elizabeth A. McNamara
                                        Alison Schary
                                        1251 Avenue of the Americas, 21st Floor
                                        New York, NY  10020-1104

---

[25] The Challenged Reports are also "communication[s] in a place open to the public or a public forum in connection with an issue of public interest" under Section 76-a(1)(a).  *E.g., Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 332 (S.D.N.Y. 2021) (anti-SLAPP law applied where statements were published online).

(212) 489-8230 Phone
(212) 489-8340 Fax

*Counsel for Defendant Nexstar Media Inc.*

TO:    Erica Ashley Wolff
       Sher Tremonte LLP
       90 Broad Street
       New York, New York 10004
       212-202-2600
       Fax: 212-202-4156
       Email: ewolff@shertremonte.com

       Michael Tremonte
       Sher Tremonte LLP
       90 Broad Street
       New York, NY 10004
       212-202-2603
       Fax: 212-202-4156
       Email: mtremonte@shertremonte.com

       *Counsel for Plaintiff*

## **CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS**

I hereby certify that the word count of this memorandum of law complies with the word limits of Local Civil Rule 7.1(c). According to the word-processing system used to prepare this reply memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1(c) is 8,480 words.

I certify under penalty of perjury that the foregoing is true and correct.

Dated:   July 29, 2025

*/s/ Elizabeth A. McNamara*
Elizabeth A. McNamara
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
21st Floor
New York, New York 10020
Telephone:  (212) 489-8230
Facsimile:  (212) 489-8340
lizmcnamara@dwt.com

*Counsel for Defendant Nexstar Media Inc.*