**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SEAN COMBS,

                      Plaintiff,

       -against-

COURTNEY BURGESS, ARIEL MITCHELL,
and NEXSTAR MEDIA INC.,

                      Defendants.

No. 25-cv-650

## MEMORANDUM OF LAW IN SUPPORT OF SEAN COMBS'S SECOND MOTION TO ENLARGE TIME TO SERVE AND MOTION FOR LEAVE TO SERVE DEFENDANT BURGESS BY ALTERNATIVE MEANS

SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
(212) 202-2600

*Attorneys for Plaintiff Sean Combs*

## **TABLE OF CONTENT**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................. 2

    I.      Procedural Background ........................................................................................... 2

    II.    Plaintiff Has Made Numerous Attempts to Serve Defendant Burgess ................... 3

    III.   The Media Has Covered This Lawsuit Extensively ............................................... 7

ARGUMENT ...................................................................................................................... 9

    I.      Extending the Service Deadline Is Warranted Because Plaintiff Has
         Diligently Attempted to Serve Plaintiff with the Summons and
         Complaint ............................................................................................................... 9

    II.    The Court Should Grant Leave for Plaintiff to Serve Burgess through
         Alternative Means ............................................................................................... 12

         A.     Legal Standard for Leave to Serve via Certified Mail, Email,
               and Publication ....................................................................................... 12

         B.     Traditional Methods of Service Are Impracticable with Respect
               to Burgess ............................................................................................... 13

         C.     Alternative Service by Certified Mail and Email is Reasonably
               Calculated to Reach Burgess .................................................................. 14

         D.     Service by Publication Is Appropriate Because Burgess Has Notice
               of this Lawsuit and Is Evading Service .................................................. 16

CONCLUSION ................................................................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Astrologo v. Serra*,
240 A.D.2d 606 (2d Dep't 1997) ............................................................... 14

*Bourdeau v. Hous. Works, Inc.*,
99-cv-11915, 2001 WL 943316 (S.D.N.Y. Apr. 20, 2001) ........................... 11

*CE Line One Corp.Ltd. v. Masters*,
24-CV-9889 (RA)(OTW), 2025 WL 1099597 (S.D.N.Y. Apr. 11, 2025) .......... 13, 15

*Commer v. McEntee*,
283 F. Supp. 2d 993 (S.D.N.Y. 2003) ......................................................... 10

*D.R.I., Inc. v. Dennis*,
03-CV-10026 (PKL), 2004 WL 1237511 (S.D.N.Y. June 3, 2004) ................. 15

*Europgold Ltd. v.Silver N Gold Wholesale, LLC*,
24-CV-07297 (JLR), 2025 WL 897100 (S.D.N.Y. Mar. 24, 2025) ................. 13

*Ferrarese v. Shaw*,
164 F. Supp. 3d 361 (E.D.N.Y. 2016) ......................................................... 14

*Geller v. Newell*,
602 F. Supp. 501 (S.D.N.Y. 1984) .............................................................. 10, 11

*Luessenhop v. Clinton Cnty., New York*,
466 F.3d 259 (2d Cir. 2006) ..................................................................... 13

*Markoff v. S. Nassau Cmty. Hosp.*,
91 A.D.2d 1064 (2d Dep't 1983) ............................................................... 14

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Barney Assocs.*,
130 F.R.D. 291 (S.D.N.Y. 1990) ................................................................. 10, 12

*Pearson Educ. Inc. v. Doe 1*,
18-CV-7389 (PGG)(OTW), 2019 WL 6498305 (S.D.N.Y. Dec. 2, 2019) ......... 13, 16, 17

*Sirius XM Radio Inc. v. Aura Multimedia Corp.*,
339 F.R.D. 592 (S.D.N.Y. 2021) ................................................................. 13

*Urbont v. Sony Music Ent.*,
11-CV-4516 (NRB), 2012 WL 1592519 (S.D.N.Y. May 4, 2012) ................... 17, 18

**Rules**

C.P.L.R. § 308 ................................................................................................ 13, 14

C.P.L.R. § 316 ................................................................................................ 18

Fed. R. Civ. P. 4 ................................................................................ *passim*

Fed. R. Civ. P. 15 ............................................................................................ 3

Plaintiff Sean Combs ("Plaintiff" or "Mr. Combs") respectfully requests an additional sixty (60) days to serve Defendant Courtney Burgess ("Defendant" or "Burgess") after the Court issues an order and requests leave to serve by: (1) certified mail to three (3) addresses identified by a private investigator; (2) email to five (5) email addresses identified by a private investigator; (3) email to counsel for Defendant Ariel Mitchell ("Mitchell") (who previously represented Burgess, as described in the pleadings); and/or (4) one or more publication(s) with circulations in Maryland, South Carolina, and/or New Jersey, which are all reasonably calculated to put Burgess on notice of this lawsuit.

## PRELIMINARY STATEMENT

Plaintiff respectfully moves for additional time to effect service on Burgess and for leave to serve Burgess through alternative means. First, the Court should grant Plaintiff's request for an enlargement of time to serve Burgess because Plaintiff has repeatedly and diligently attempted to personally serve Burgess with the summons and Complaint in this action. With the assistance of a private investigator and other sources, Plaintiff initially identified five (5) physical addresses, a phone number, and five (5) email addresses that he reasonably believes to be associated with Burgess. Using this information, Plaintiff has attempted to personally serve Burgess on eleven (11) occasions using traditional means of service authorized by the Federal Rules of Civil Procedure. Even though Plaintiff believes that the contact information he has independently obtained is reliable, he has also requested contact information for Burgess from counsel for Burgess's co-defendant and prior attorney, Ariel Mitchell; however, counsel has failed to provide any contact information. Because Plaintiff has consistently and repeatedly attempted to serve Burgess, he has demonstrated good cause for his request for an enlargement of time to serve Burgess.

Second, the Court should allow Plaintiff to serve Burgess through alternative means,

1

specifically by certified mail, email, and/or publication, because service by traditional means is impracticable. Despite Plaintiff's diligent attempts at service, he has been unable to personally serve Burgess using traditional means. There is ample reason to infer that Burgess is aware of this lawsuit and is deliberately evading service to frustrate the judicial process. For example, through Plaintiff's efforts to locate Burgess, his representatives have made contact with Burgess himself, Burgess's brother, and Burgess's neighbor. Burgess's former lawyer, Defendant Mitchell, is undeniably aware of this litigation in which she is actively participating; presumably, she and Burgess are in contact. Finally, national news outlets have covered this lawsuit extensively, including reporting on multiple occasions that Defendant Burgess is a named defendant in this action and repeating Plaintiff's allegations specifically as to Burgess. Under these circumstances, traditional methods of service have proven impracticable, and alternative service is both necessary and appropriate. Accordingly, Plaintiff respectfully requests that the Court authorize him to serve Burgess using alternative methods—specifically by certified mail, email, and/or publication. Through his investigative efforts, Plaintiff has identified physical and email addresses reasonably believed to be associated with Burgess. Alternative service to these addresses and publication covering those physical addresses are reasonably calculated to provide Burgess with actual notice of this action and therefore fully comport with the requirements of due process.

## **BACKGROUND**

### I.     **Procedural Background**

Plaintiff filed a complaint against Defendants Courtney Burgess, Ariel E. Mitchell, and Nexstar Media Inc. (collectively, "Defendants") on January 22, 2025. *See* ECF No. 1. After seeking and obtaining permission from the Court, Plaintiff filed a corrected complaint against Defendants on February 3, 2025 (the "Complaint"). *See* ECF No. 16. On April 2, 2025, Plaintiff served Defendant Nexstar Media Inc. *See* ECF No. 24. On April 21, 2025, Plaintiff filed a motion

requesting an extension of time to serve Defendants Burgess and Mitchell.  *See* ECF Nos. 29-33. The Court granted Plaintiff's request, ordering that he serve Burgess and Mitchell by July 28, 2025.  *See* ECF No. 34.  On May 23, 2025, Mitchell waived service and on May 28, 2025, filed a Waiver of Service.  *See* ECF No. 40.  Thereafter, Plaintiff consented to Defendant Nexstar Media Inc.'s request for an extension of time until May 14, 2025 to respond to the Complaint.  *See* ECF No. 27.  On July 19, 2025, Defendant Mitchell filed a Motion to Dismiss Plaintiff's Corrected Complaint.  *See* ECF No. 52.

On July 28, 2025, Plaintiff sought leave again to file a motion to enlarge the time to serve Burgess by an additional sixty (60) days, and for leave to serve Burgess by alternative methods. *See* ECF No. 53.  The Court granted Plaintiff until August 19, 2025 to file a motion for leave to enlarge time to serve Burgess and to serve Burgess by alternative means.  *See* ECF No. 54.

On July 29, 2025, Defendant Nexstar filed a Motion to Dismiss Plaintiff's Corrected Complaint.  *See* ECF No. 56.  On August 11, 2025, Plaintiff filed the First Amended Complaint against Defendants as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).  *See* ECF No. 61.  The following day, the Court adjourned the briefing schedule for the motions to dismiss pending further order of the Court.  *See* ECF No. 62.

## II.    Plaintiff Has Made Numerous Attempts to Serve Defendant Burgess

Plaintiff retained Demovsky Lawyer Service ("DSL"), a nationwide process service company, to effect service on Defendants.  *See* Declaration of Erica Wolff dated August 19, 2025 ("Wolff Decl."), ¶ 3.  Plaintiff also hired a private investigator with a myriad of investigatory experience to investigate potential addresses where Burgess might reside or do business.  *Id*. at ¶ 4.  To conduct his search, Plaintiff's private investigator researched and analyzed public records from multiple states.  *Id.*  Through skip tracing, the investigator identified the following five (5) potential addresses where Burgess might be located or reachable: (1) 708 Lancelot Drive,

Florence, South Carolina 29505 (the "South Carolina Address"); (2) 747 Valley Street, Apt. 2H, Maplewood, New Jersey 07040 (the "Maplewood, New Jersey Address"); (3) 26 Edgemont Rd, West Orange, New Jersey 07052 (the "West Orange, New Jersey Address"); (4) 351A Suter Road, #Mel323B, Catonsville, Maryland 21228 (the "Maryland Address"); and (5) P.O. Box 9476, Catonsville, MD 21228 (the "Maryland P.O. Box"). *Id*. at ¶ 5.

Based on the investigator's research, Plaintiff had reason to believe that Burgess and some of his family members reside at the South Carolina address. *See* Wolff Decl., ¶ 15. Accordingly, Plaintiff arranged for a process server from DLS to attempt personal service on Defendant Burgess at that address. *See* Exhibit A to Wolff Decl., Fortner Affidavit. The process server, Matthew Fortner, attempted service at the South Carolina Address on April 2, 2025, April 4, 2025, and April 5, 2025. *Id*. After Mr. Fortner's April 4, 2025, attempt to serve Defendant Burgess, a neighbor of the South Carolina Address provided Mr. Fortner with phone numbers for Burgess and Burgess's brother. *Id*. Mr. Fortner called both numbers but did not reach anyone. *Id*. On Saturday, April 5, 2025, Mr. Fortner received a return phone call from Defendant Burgess, who indicated that "he would have to talk to his lawyer" and would call Mr. Fortner back on Monday, April 7, 2025. *Id*. Mr. Fortner also spoke with Burgess's brother, who told him that he believed Burgess currently resided in Maryland or New Jersey. *Id*. Neither Defendant Burgess nor anyone on his behalf ever called Mr. Fortner or any representative of Plaintiff after the April 5 phone call. *See* Wolff Decl., ¶ 18.

On April 14, 2025, Carmina Hachenburg, a paralegal at undersigned counsel's law firm, Sher Tremonte LLP, mailed a copy of the summons and Complaint, a request to waive Service of Summons, copies of the Waiver of Service of Summons, and a pre-paid return envelope to Defendant Burgess at the South Carolina Address—the same address where Mr. Fortner attempted to personally serve Defendant Burgess earlier that month. *See* ECF No. 33, ¶ 4. The following

day, on April 15, 2025, Samantha Luevanos, a paralegal at undersigned counsel's law firm, mailed a copy of the summons and Complaint, a request to waive Service of Summons, copies of the Waiver of Service of Summons, and a pre-paid return envelope to Defendant Burgess at Maplewood, New Jersey Address, another address that, based on Plaintiff's investigation, appears to be a potential residence of Defendant Burgess. *See* ECF No. 32, ¶ 5.

After Plaintiff's mailings to Defendant Burgess in South Carolina and New Jersey, Timothy Botti, a process server for DLS, attempted to serve Defendant Burgess personally at the Maplewood, New Jersey Address. *See* Exhibit C to Wolff Decl., Botti Affidavit. Over the three-day period of April 16 to 18, 2025, Mr. Botti tried to serve Burgess four times at the Maplewood, New Jersey Address, but each time he rang the doorbell, no one answered. *Id.* Later, on April 24, 2025, the mailed copy of the summons and Complaint, request to waive Service of Summons, copies of the Waiver of Service of Summons, and pre-paid return envelope that was previously sent to the Maplewood, New Jersey Address on April 15, 2025, was returned to sender. *See* Declaration of Samantha Luevanos dated August 19, 2025 ("Luevanos Decl."), ¶ 3.

Also on April 24, 2025, undersigned counsel emailed Steven Metcalf ("Mr. Metcalf"), counsel for Burgess's co-defendant and former attorney, Mitchell, for contact information for Burgess's counsel. *See* Exhibit G to Wolff Decl., April Email Chain. Mr. Metcalf did not provide Plaintiff's counsel with the requested information. *See* Wolff Decl. ¶ 12. On May 28, 2025, undersigned counsel emailed Mr. Metcalf and asked if he had contact information or could identify Burgess's counsel. *See* Exhibit H to Wolff Decl., May-July Email Chain. The day before, on May 27, Mr. Metcalf represented to Plaintiff that Mitchell would likely have contact information for Mr. Burgess and that he would check with his client about such information. *Id.* He did not. *See* Wolff Decl. ¶ 13.

Thereafter, the process server called Burgess three times, on June 6, June 12, and July 2,

5

2025, at the phone number previously provided by Burgess's South Carolina neighbor. *See* Exhibit D to Wolff Decl., Chen Affidavit.

On July 4, 2025, Plaintiff's process server attempted service at the Maryland Address, which Plaintiff's investigator identified as a possible residence of Burgess; however, the person living at that address informed Plaintiff that she had recently moved into the unit and was not familiar with Burgess. *See* Exhibit E to Wolff Decl., Getlan Affidavit. Between July 10 and 11, 2025, DLS attempted service at the West Orange, New Jersey Address, which, based on information provided by Burgess's brother and a private investigator, was believed to be location where Burgess resided. *See* Exhibit F to Wolff Decl., Supplemental Botti Affidavit; *see also*, Wolff Decl., ¶ 5. But there was no answer at the door. *See* Exhibit F to Wolff Decl., Supplemental Botti Affidavit. On July 16, 2025, undersigned counsel emailed Mr. Metcalf again seeking contact information for Burgess and/or the name and contact information for Burgess's counsel, if any. *See* Exhibit H to Wolff Decl., May-July Email Chain. To date, neither Mr. Metcalf nor his client has provided any information regarding Burgess's current counsel or contact information. *See* Wolff Decl., ¶ 14.

On July 24, 2025, Plaintiff mailed a request to waive service to the Maryland P.O. Box, which Plaintiff's private investigator identified as being associated with Burgess. *See* Luevanos Decl., ¶ 4; *see also* Wolff Decl., ¶ 5. On July 23, 2025, Plaintiff emailed the same request to waive service to four different email addresses that Plaintiff's private investigator identified as associated with Burgess. *See* Wolff Decl., ¶ 16. On or about that same date, Plaintiff's private investigator communicated with a source familiar with Burgess who indicated Burgess was believed to be residing in Baltimore, Maryland,[1] and also has residences in Newark, New Jersey and South

---

[1] Notably, the two Maryland addresses that Plaintiff's investigator previously identified addresses for Burgess are in Catonsville, Maryland, which is a suburb of Baltimore, Maryland. *See* Wolff Decl., ¶¶ 5, 7.

Carolina.  *See id.* at ¶ 7.  To date, as of August 19, 2025, Plaintiff has not been able to personally

serve Burgess, nor has Burgess returned an executed waiver of service.  *See id.* at ¶¶ 17-18.

## III.    The Media Has Covered This Lawsuit Extensively

Numerous media outlets have reported on this lawsuit since Plaintiff filed the Complaint

earlier this year.[2]  Not only have media outlets covered the Complaint generally, but they have

also quoted directly from the Complaint, including allegations against Burgess specifically.  *See*

*e.g.*, Tracy Wright, *Diddy Files $50 Million Defamation Suit Against Grand Jury Witness, Fox*

*News* (Jan. 22, 2025, 8:32 PM EST),  https://www.foxnews.com/entertainment/diddy-files-50-

million-defamation-suit-against-grand-jury-

witness?msockid=3dfe22682d726289003037862cc6639a; KiMi Robinson, *Sean "Diddy" Combs*

*Files $50 Million Defamation Lawsuit Over Alleged Sexual Assault Videos, USA Today* (Jan. 22,

2025,                           10:27                          PM                          EST),

https://www.usatoday.com/story/entertainment/celebrities/2025/01/22/sean-diddy-combs-sues-

for-defamation/77889904007/.    For  example,  Fox  News  reported  on  its  website  Plaintiff's

---

[2] *See, e.g.*, Desiree Anello, *Sean "Diddy" Combs Files $50 Million Defamation Lawsuit Against Accuser Over Alleged Celeb Sex Tapes, E! News* (Jan. 23, 2025, 10:48 PM), updated Jan. 24, 2025, 4:06 AM, https://www.eonline.com/news/1412522/sean-diddy-combs-files-s50-million-defamation-lawsuit-against-accuser-over-alleged-celeb-sex-tapes ("the suit refers to Mitchell and the accuser as 'social media protagonists,' whom the suit claims had spent months 'fueling a media frenzy' and 'vying to outdo each other in a shameless competition to draw attention to themselves, with no regard for the truth.'"); DeFrank, Daren,  *"Sean 'Diddy' Combs Has Filed a $50 Million Dollar Defamation Lawsuit Against Courtney Burgess, His Lawyer, Ariel Mitchell and NewsNation," Yahoo! News* (Jan. 22, 2025), https://www.yahoo.com/news/sean-diddy-combs-files-50-022118144.html ("The defamation suit, which was filed on Wednesday in New York claims Burgess, Mitchell and Nextstar engaged in 'willful scheme to fabricate and broadcast outrageous lies.'"); Favour Adegoke, *Diddy Fights Back As He Sues Accuser For Defamation Over Claims Of Sex Tapes With A-listers*, *The Blast* (Jan. 23, 2025, 9:30 AM EST), updated Jan. 23, 2025, 9:48 AM EST, https://theblast.com/655542/diddy-sues-accuser-defamation-sex-tapes/ ("Diddy claimed that Burgess and his attorney, Ariel Mitchell—also named as a defendant in the filing—deliberately fabricated and amplified false allegations about him for financial gain, specifically referencing their claims of possessing alleged sex tapes involving him.").

allegation that Burgess "falsely claimed that he possessed videos of Mr. Combs involved in the sexual assault of celebrities and minors." *Diddy Files $50 Million Defamation Suit*, *Fox News*. . Similarly, USA Today reported that Plaintiff's "lawsuit named Courtney Burgess . . . [who] 'willfully fabricated and disseminated outrageous lies with reckless disregard for the truth.'" *Sean "Diddy" Combs Files $50 Million Defamation Lawsuit*, *USA Today*.[3]

After the Plaintiff filed the First Amended Complaint in early August, the mainstream media again reported on Plaintiff's allegations against Burgess specifically.[4]  For example, in its reporting on the filing of the First Amended Complaint, *Us Weekly* explained that Plaintiff was

---

[3] *See also* Yara Sameh, *Sean "Diddy" Combs Files $50 M Defamation Lawsuit Against Grand Jury Witness*, *The Hollywood Reporter* (Jan. 23, 2025), https://www.hollywoodreporter.com/news/general-news/sean-diddy-combs-files-50m-defamation-lawsuit-against-grand-jury-witness-1236115466/ (claims "Burgess' interviews in which he states that he possesses videos showing the singer sexually assaulting celebrities, some of whom appear underage, may prevent him from receiving a fair trial on sex trafficking and racketeering charges.").

[4] *See, e.g.*, Caroline Fisher, *Diddy Seeks $100M in Broadened Defamation Lawsuit Over Sexual Assault Allegations*, HotNewHipHop (Aug. 12, 2025), https://www.hotnewhiphop.com/936827-diddy-broadened-lawsuit-hip-hop-news ("Diddy alleges that Courtney Burgess and NewsNation caused him 'severe reputational harm.'"); Segarra, Edward, *Sean "Diddy" Combs Amends Defamation Lawsuit Seeks $100 Million*, USA Today (Aug. 11, 2025, 10:03 PM EST), https://www.usatoday.com/story/entertainment/music/2025/08/11/sean-diddy-combs-defamation-lawsuit-courtney-burgess-ariel-mitchell/85618821007/ ("'In this pitiful spectacle, all pretense of objectivity has been abandoned, as a global audience feasts at the all-you-can-eat buffet of wild lies and conspiracy theories,' the lawsuit states. 'Mitchell and Burgess are among the worst perpetrators in this offensive scenario.'"); Dolak, Kevin, *Sean 'Diddy' Combs Doubles Defamation Damages, Demands $100M in Fresh Legal Filing*, *The Hollywood Reporter* (August 12 2025, 10:56 AM EST), https://www.hollywoodreporter.com/news/general-news/diddy-doubles-defamation-damages-demands-100m-new-legal-filing-1236342345/ ("The suit points to an October interview with Burgess and a September interview with Mitchell in which the two discuss alleged video footage Burgess states he possesses showing Combs allegedly sexually assaulting celebrities, some of whom appear underage. One interview saw Burgess present still images, allegedly from the videos, in which Justin Bieber was shown kissing an unidentified male."); *Diddy Pushes Amends Nexstar Defamation Lawsuit To $100M, The Source* (Aug. 19, 2025), https://thesource.com/2025/08/19/diddy-pushes-amends-nexstar-defamation-lawsuit-to-100m/(" the sprawling civil case stems from interviews Burgess and Mitchell gave on NewsNation, where they allegedly made explosive accusations that Diddy's team insists are entirely fabricated").

"accusing Courtney Burgess, his attorney Ariel Mitchell and Nexstar Media Inc. of fabricating and broadcasting 'outrageous lies concerning Mr. Combs.'"  Vulpo, Mike, *Diddy Files $100 Million Defamation Lawsuit Against Lawyer*, *Us Weekly* (August 12, 2025), https://www.usmagazine.com/celebrity-news/news/diddy-files-100-million-defamation-lawsuit-against-lawyer.  In light of the extensive coverage of this lawsuit, including specific mention of Burgess, it is hard to believe that Burgess is not aware of its existence.

## ARGUMENT

I.     **Extending the Service Deadline Is Warranted Because Plaintiff Has Diligently Attempted to Serve Plaintiff with the Summons and Complaint**

Good cause exists to extend the time for service because Plaintiff has made repeated, diligent efforts to effect service.  Plaintiff's investigations have identified multiple potential addresses for Burgess, and Plaintiff has made multiple attempts to serve Burgess at these addresses in accordance with Rule 4(e) of the Federal Rules of Civil Procedure, which provides that an individual may be served by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Despite repeated efforts over several months, however, Plaintiff's process servers have been unable to serve Burgess.  Accordingly, an enlargement of time to serve Burgess is warranted.

Rule 4(m) provides that a plaintiff must serve a summons and complaint within ninety days of filing, but that upon a showing of good cause for failure to serve within that period, "the court must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m).  Where a plaintiff makes repeated, timely, and reasonable efforts to effect service but is unsuccessful, courts in this District have found good cause exists to extend the time to serve.  *See Nat'l Union Fire Ins. Co. of*

*Pittsburgh, Pa. v. Barney Assocs.*, 130 F.R.D. 291, 293 (S.D.N.Y. 1990) (denying motion to dismiss for lack of timely service because plaintiff's attorneys "made reasonable efforts to effect service" and granting an extension of time to serve); *see also Geller v. Newell*, 602 F. Supp. 501, 502 (S.D.N.Y. 1984) (denying dismissal for failure to effect timely service where "plaintiff was diligent in his efforts to serve defendant," effected service on defendant after the period for service ended, and where defendant had not alleged prejudice due to the delay in service).

To determine whether a plaintiff has shown good cause under Rule 4(m), courts generally consider "whether: (1) the plaintiff made reasonable efforts to serve the defendant, and (2) the defendant was prejudiced by the delay in service." *Commer v. McEntee*, 283 F. Supp. 2d 993, 997 (S.D.N.Y. 2003). For example, when a plaintiff has not "merely [] rel[ied] on a process server to effect service" but instead "kept in contact with them to determine the status of service and whether it would be effected in time" and taken the further step of making a "motion for enlargement of time," such conduct by plaintiff's counsel "weighs in favor of a showing of diligence" and demonstrates that plaintiff is "aware of its obligations . . . and [is] attempting to comply with them." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 130 F.R.D. at 293 (denying motion to dismiss for lack of timely service because plaintiff's attorneys "made reasonable efforts to effect service"). Moreover, where a plaintiff has made "reasonable efforts to effect service" but service has not been timely completed, "dismissal is unwarranted"; that "harsh sanction" is reserved for "those cases in which non-service was the result of mere inadvertence." *Geller*, 602 F. Supp. at 502 (denying dismissal for failure to effect timely service where "plaintiff was diligent in his efforts to serve defendant," effected service on defendant after the period for service ended, and where defendant had not alleged prejudice due to the delay in service).

Here, good cause exists to extend Plaintiff's time to serve Defendant because Plaintiff has made repeated, diligent efforts to effect service on Defendant Burgess. Plaintiff hired a private

10

investigation firm to identify relevant addresses for Burgess and retained a reputable process server company, DLS, to arrange service at those addresses. Using the information obtained by Plaintiff and his investigation firm, process servers attempted personal service on Defendant Burgess on at least eleven occasions, at four different addresses, over the course of eight months. Plaintiff also sought waivers of service by mail at multiple addresses and by multiple email addresses believed to be associated with Burgess. Additionally, on at least three occasions, undersigned counsel has asked counsel for Burgess's co-defendant and former attorney, Mitchell, for contact information for Burgess or his current counsel. *See* Wolff Decl., ¶¶ 11-14; Exhibits G, April Email Chain and H, May-July Email Chain, to Wolff Decl. Mitchell's counsel has declined to provide any contact information, though he has indicated his client has such information. *See* Wolff Decl., ¶¶ 11-14. Plaintiff has attempted to effect service on Burgess in every manner contemplated by Rule 4 and has simply been unsuccessful, but not for lack of trying.

Even if Plaintiff had not diligently attempted service (which he has), the Court would still have "discretion to enlarge the time in which service must be completed" because the delay in service has not prejudiced Burgess. *Bourdeau v. Hous. Works, Inc.*, No. 99-cv-11915, 2001 WL 943316, at *7 (S.D.N.Y. Apr. 20, 2001) (denying motion to dismiss for failing to serve the complaint within ninety days, as required under Fed. R. Civ. P. 4(m)). When there is no colorable claim that a defendant will be prejudiced by extending the time for service, it is particularly appropriate for a court to exercise its discretion to enlarge the time for service. *See Barney Assocs.*, 130 F.R.D. at 294 (noting prejudice under Rule 4 "involves impairment of the defendant's ability to defend on the merits, rather than merely foregoing such a procedural or technical advantage"). This Court has multiple reasons to believe that Burgess is already well-aware of the pending lawsuit and is evading service. First, on April 5, 2025, Burgess called Plaintiff's process server, Mr. Fortner, to discuss Mr. Fortner's attempted service. *See* Exhibit A to Wolff Decl., Fortner

Affidavit.  Second, Burgess's brother spoke to the process server and notified them that he believed Burgess was living in New Jersey or Maryland.  *Id*.  Third, Burgess's lawyer, Mitchell, with whom he is presumably in contact, is actively participating in and defending this action.  *See, e.g.*, ECF Nos. 40, 52.  And, finally, there has been extensive media coverage of this lawsuit, including specifically Plaintiff's allegations as to Burgess.  *See supra* nn. 2-4.

Good cause is satisfied because Plaintiff made reasonable efforts to serve Burgess, and Burgess has not been prejudiced by the delay in service, including because the case is still in its early stages—Plaintiff just recently filed his First Amended Complaint as of right (ECF No. 51) and no discovery has taken place.  Accordingly, Plaintiff respectfully requests that his time to serve Burgess be enlarged an additional sixty (60) days from the date on which any such order issues.

## II.     The Court Should Grant Leave for Plaintiff to Serve Burgess through Alternative Means

Granting leave for alternative service is warranted because Plaintiff has exhausted reasonable means to serve Burgess by conventional methods and Burgess is likely evading service. Notwithstanding Plaintiff's efforts to serve Plaintiff through traditional means on numerous occasions and notwithstanding Plaintiff's process server making direct telephone contact with Burgess, Plaintiff has been unable to effect service successfully.  Accordingly, Plaintiff seeks leave to serve Burgess through alternative means, specifically via certified mail, email, and/or publication, all of which are reasonably calculated to reach Burgess.

### A.     Legal Standard for Leave to Serve via Certified Mail, Email, and Publication

Rule 4(e)(1) permits service by any method allowed under the law of the state where the district court is located.  Fed. R. Civ. P. 4(e)(1).  New York CPLR § 308(5) authorizes the court to fashion an alternative method of service when traditional methods are impracticable.  Pursuant thereto, courts in this District routinely authorize alternative service when traditional methods are impracticable.  *See, e.g., CE Line One Corp. Ltd. v. Masters*, No. 24-CV-9889 (RA) (OTW), 2025

WL 1099597, at *2 (S.D.N.Y. Apr. 11, 2025) (approving service by certified mail and email when defendant was evading service and the physical and email addresses identified by the investigator belong to the defendant); *see also Pearson Educ. Inc. v. Doe 1*, 18-CV-7389 (PGG) (OTW), 2019 WL 6498305, at *3 (S.D.N.Y. Dec. 2, 2019) ("Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant"). To satisfy the impracticability requirement, the plaintiff must make some showing that the prescribed methods of service cannot be made, but he need not show either due diligence or that all other methods of service have been exhausted. *See Sirius XM Radio Inc. v. Aura Multimedia Corp.*, 339 F.R.D. 592, 593 (S.D.N.Y. 2021); *Europgold Ltd. v. Silver N Gold Wholesale, LLC*, 24-CV-07297 (JLR), 2025 WL 897100, at *1 (S.D.N.Y. Mar. 24, 2025). The proposed method of service must also satisfy due process, by being "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Luessenhop v. Clinton Cnty., New York*, 466 F.3d 259, 269 (2d Cir. 2006).

### B.    Traditional Methods of Service Are Impracticable with Respect to Burgess

The fact that Plaintiff has tried diligently to serve Defendant Burgess through multiple traditional methods on numerous occasions but has been unsuccessful demonstrates that such methods are impracticable. "Although the impracticability standard 'is not capable of easy definition', it does not require the applicant to satisfy the more stringent standard of 'due diligence' under CPLR 308(4), or to make a showing that 'actual prior attempts to serve a party under each and every method provided in the statute have been undertaken.'" *Astrologo v. Serra*, 240 A.D.2d 606, 606 (2d Dep't 1997) (quoting *Markoff v. S. Nassau Cmty. Hosp.*, 91 A.D.2d 1064, 1065 (2d Dep't 1983)). For example, a court in the Second Circuit determined that traditional methods of service were impracticable after the plaintiff attempted service at defendant's multiple addresses and hired a private investigator to help locate the defendant. *Ferrarese v. Shaw*, 164 F. Supp. 3d

13

361, 366 (E.D.N.Y. 2016).

Similarly, as described above, Plaintiff has attempted service numerous times on multiple addresses affiliated with Burgess. *See* Wolff Decl. ¶ 10. In total, Plaintiff has attempted personal service *eleven* times. *See id*; Exhibits A-F to Wolff Decl. Plaintiff has attempted service at four different addresses in three different states. *See* Wolff Decl., ¶ 10; Exhibits A-F to Wolff Decl. *Id*. In addition, Plaintiff has attempted to make contact with Burgess via telephone and email. *See* Exhibits A, Fortner Affidavit and D, Chen Affidavit to Wolff Decl.; *see also* Wolff Decl. ¶ 16. Burgess also returned a call from Plaintiff's service processor in April 2025 and assured the service processor that his attorney would follow up. *See* Exhibit A to Wolff Decl., Fortner Affidavit. Despite Burgess's assurance in April and three additional calls from Plaintiff's service processor to Burgess in June and July 2025, neither Burgess nor anyone on his behalf has returned the service processor's call. *See* Exhibit D to Wolff Decl., Chen Affidavit; Wolff Decl. ¶ 11. Moreover, using contact information obtained by Plaintiff's private investigator, Plaintiff's counsel has attempted to contact Burgess by email at four different email addresses to obtain a waiver of service. *See* Wolff Decl. ¶ 16. Finally, Plaintiff has asked counsel for Burgess's codefendant and former lawyer, Mitchell, for contact information for Burgess on at least three occasions, but none has been provided. *See id.* at ¶¶ 11-14. Plaintiff's numerous attempts to serve Burgess at multiple addresses identified by a private investigator and unsuccessful efforts to make contact through his prior counsel, establish that traditional methods of service are impracticable.

### C.    Alternative Service by Certified Mail and Email is Reasonably Calculated to Reach Burgess

Plaintiff seeks leave to serve Burgess via certified mail at the South Carolina Address, the West Orange Address, and the Maryland P.O. Box, via email at five (5) email addresses identified by a private investigator as belonging to or being associated with Burgess, and/or via email through counsel for Mitchell. Service using these physical and email addresses is reasonably calculated to

14

reach Burgess, satisfies the requirements of due process, and therefore should be permitted.

Courts in this District have determined that service by certified mail and by email are appropriate means of alternative service because they meet the requirements of due process. Service by these methods satisfies due process requirements when a plaintiff has shown that physical and email addresses identified by an investigator belong to the defendant who is evading service. *CE Line One Corp. Ltd.,* 2025 WL 1099597, at *2; *see also D.R.I., Inc. v. Dennis*, 03-CV-10026 (PKL), 2004 WL 1237511, at *1 (S.D.N.Y. June 3, 2004).

Here, an investigator has identified at least three physical addresses that, if served via certified mail, are reasonably calculated to reach Burgess: (1) the South Carolina Address; (2) the West Orange Address; and (3) the Maryland P.O. Box.[5]  Service by certified mail to the South Carolina Address is reasonably calculated to reach Burgess because an investigator found that Burgess was associated with that address, a neighbor was familiar enough with Burgess at this address that they had his and his brother's contact information, and based on information from the private investigator, Burgess has family residing at the address.  *See* Wolff Decl. ¶¶ 5, 15; *see also* Exhibit A, Fortner Affidavit, to Wolff Decl.  The West Orange and Maryland P.O. Box Addresses are also reasonably calculated to reach Burgess because a licensed investigator found through skip trace searches and other investigative techniques that Burgess was associated with those addresses, and Burgess's brother informed a process server that he believed Burgess was residing in New Jersey or Maryland.  *See* Wolff Decl. ¶ 5; Exhibit A to Wolff Decl., Fortner Affidavit.  Moreover, less than one month ago, a separate source advised Plaintiff's investigator that they believed Burgess lives in Maryland and has residences in New Jersey and South Carolina.  *See* Wolff Decl.

---

[5] Plaintiff does not seek leave to serve Burgess via certified mail at the Maplewood, New Jersey Address or the Maryland Address because those addresses are not reasonably calculated to provide Burgess with notice.  Copies of the waiver of service were returned to sender in mailing attempts to the Maplewood, New Jersey Address (*see* Luevanos Decl., ¶ 3), and another tenant unrelated to Burgess resides at the Maryland Address (*see* Exhibit E to Wolff Decl., Getlan Affidavit).

¶ 7.

Notwithstanding Plaintiff's request to serve Burgess by certified mail, email service alone meets the requirements of due process so long as the plaintiff "demonstrates that the email is likely to reach the defendant." *Pearson Educ. Inc.*, 2019 WL 6498305, at *3. Here, Plaintiff has identified multiple email addresses through which service is reasonably calculated to reach Burgess. First, Plaintiff seeks leave to serve Burgess at email addresses believed to belong to Burgess. Plaintiff's private investigator has identified five (5) email addresses as belonging to Burgess: (1) clburgess78@yahoo.com; (2) burgesscourtney@gmail.com; (3) courtneyburgess07106@gmail.com; (4) burgess.courtney@gmail.com; and (5) hiphopherald537@gmail.com. *See* Wolff Decl. ¶ 9. Because a private investigator found these email addresses using online pedigree records and other investigative techniques to be associated with Burgess, it is reasonable to believe that Burgess will receive notification of the lawsuit by service to these email addresses. *See Pearson Educ. Inc.*, 2019 WL 6498305, at *3.

Plaintiff also seeks leave to serve Burgess by email through his co-defendant's counsel. As set forth above, counsel for Burgess's co-defendant and former attorney, Mitchell, has indicated to Plaintiff that he or Mitchell had updated contact information for Burgess. This contact information is a reliable means of notifying Burgess of the lawsuit because Mitchell was Burgess's legal counsel, made multiple media appearances together as recently as October 2024, and were together after Burgess testified at Grand Jury in October 2024. *See* ECF No. 61, ¶¶ 63-67, 70. This relationship likely required reliable contact information. Email addresses confirmed to be associated with Burgess by a private investigator and/or Mitchell are therefore both reasonably calculated methods to reach Burgess.

### D.    Service by Publication Is Appropriate Because Burgess Has Notice of this Lawsuit and Is Evading Service

There is no doubt that Burgess has actual knowledge of this lawsuit; indeed, it is apparent

that he is evading service. Under these circumstances, service by publication satisfies the requirements of due process and is warranted. Where, like here, there is evidence that a defendant is deliberately avoiding or obstructing service, courts in this District have permitted service by publication. For example, in *Urbont v. Sony Music Entertainment*, service by publication was authorized because the defendant, who had been served with the original complaint, was actively avoiding service of the amended complaint. *Urbont v. Sony Music Ent.*, No. 11-CV-4516 (NRB), 2012 WL 1592519, at *3 (S.D.N.Y. May 4, 2012). In *Urbont*, the court held that service by traditional means was impractical where the plaintiff had been unable to serve the defendant despite multiple attempts to do so, including through his employment of a private investigator to find the defendant. *Id*. at *2-3. Because service by traditional methods was impractical and the defendant likely knew of the lawsuit, among other factors, the court authorized service by publication. *Id*. at *3.

As in *Urbont*, this Court has every reason to believe that Burgess is already well-aware of the pending lawsuit and is evading service. First, Plaintiff's process server, Mr. Fortner, spoke with Burgess and his brother on April 6, 2025, and informed Burgess that he had important documents for Burgess. *See* Exhibit A to Wolff Decl., Fortner Affidavit. Acknowledging that Mr. Fortner was referring to legal documents, Burgess advised Mr. Fortner that he would speak with his lawyer and then follow up with the process server. *Id*. Second, because of his relationship with Mitchell, Burgess is certainly aware of this lawsuit. Mitchell was Burgess's legal counsel and has made multiple media appearances with him as recently as October 2024, including after Burgess testified at Grand Jury. *See* ECF No. 61, ¶¶ 63-67, 70. This relationship likely makes Burgess aware of this lawsuit. Finally, Burgess is most likely aware of this lawsuit because it has been highly publicized, and Burgess has been named by many mainstream media outlets in connection with their coverage of this lawsuit. *See supra* nn. 2-4. Plaintiff's multiple attempts at

17

service and repeated attempts to contact Burgess by various means without success, and Burgess's likelihood of knowledge of this lawsuit all support service by publication.

Southern District of New York Local Rule 83.4 provides that "all notices required to be published by a party . . . must be published in a newspaper which has a general circulation in the district where the case was filed or a circulation reasonably calculated to give public notice of a legal publication."  *See also* C.P.L.R. § 316(a) (describing the requirements for service by publication).  Plaintiff has identified three publications through which to serve Burgess, one in each location where Plaintiff has a reasonable basis to believe Burgess resides or is associated with an address.  First, because Plaintiff's private investigator identified the Maryland P.O. Box Address for Burgess in Maryland and Burgess most likely resides in Maryland (Wolff Decl. ¶ 8), Plaintiff proposes service via the *Maryland Daily Record*.[6]  The *Maryland Daily Record* serves the entire state. The Daily Record, *About* (on file with The Daily Record), available at thedailyrecord.com/about (last visited Aug. 19, 2025).  It is published five days a week, year-round (and operates as a digital-first news outlet with a companion print edition.  Daily Record e-Edition*, The Daily Record daily-edition (via NewsMemory)*, https://thedailyrecord-md.newsmemory.com/(last visited Aug. 19, 2025). In addition to covering legal, business, and government news, it regularly publishes official legal notices, including public notices, verdicts, and settlements.  Daily Record*, About,* thedailyrecord.com/about*.*  Alternatively, or in addition, because Plaintiff has identified two New Jersey addresses that might be affiliated with Burgess, Plaintiff proposes alternative service via *The Star Ledger*.[7]  *The Star Ledger* is a New Jersey publication, publishes daily in digital form, and serves the entire state of New Jersey. *The Star Ledger*, https://www.nj.com/starledger/(last visited Aug. 19, 2025).  It regularly publishes official

---

[6] https://thedailyrecord.com/todays-paper/

[7] https://classifieds.nj.com/nj/category/public-notices

legal notices, including public notices, verdicts, and settlements. *Id*. Finally, alternatively or in addition, Plaintiff proposes service by publication in South Carolina through the *Morning News*.[8] That publication is the major daily newspaper for Florence, South Carolina, where Plaintiff believes Burgess has an address. Local News, *SCNow*, https://www.scnow.com/news/local/ (last visited Aug. 19, 2025). The newspaper is published three times a week in print (Tuesdays, Thursdays, and Saturdays) and updated online every day. *Id*. The *Morning News* publishes legal notices that are accessible through its digital public notices section. Public Notices, *SCNow*, https://scnow.column.us/search (last visited Aug. 19, 2025). All three publications are regularly used to provide service by publication in their respective states.

Because Burgess has already received actual notice of this lawsuit, service by one or more publication(s) with circulations in Maryland, New Jersey, and/or South Carolina complies with due process.

## CONCLUSION

Plaintiff has made repeated, reasonable efforts to timely serve Defendants and because Defendants would not be prejudiced by extending the time for service, Plaintiff respectfully requests that the Court enlarge the time for service of the First Amended Complaint by sixty (60) days from the date such order is entered. Service by alternative means, specifically certified mail, email, and/or publication, is also appropriate here because Burgess has already received actual notice of this lawsuit and these alternative methods of service are reasonably calculated to provide notice and satisfy the requirements of due process.

Dated: New York, New York  
      August 19, 2025

SHER TREMONTE LLP

    */s/ Erica A. Wolff*

Erica A. Wolff  
Michael Tremonte

---

[8] https://scnow.column.us/search

19

90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
EWolff@shertremonte.com
MTremonte@shertremonte.com

*Attorneys for Plaintiff Sean Combs*

## CERTIFICATION OF COMPLIANCE

The undersigned counsel of record for Plaintiff, Sean Combs, certifies that the foregoing brief complies with the 8,750 word limit set forth in Local Rule 7.1(c) of the Southern District of New York Local Civil Rules.  The foregoing brief contains 6,373 words, excluding the parts of the brief exempted by Local Rule7.1(c), according to the Word Count feature on Microsoft Word.

Dated: New York, New York
       August 19, 2025

SHER TREMONTE LLP

    */s/ Erica A. Wolff*

Erica A. Wolff
Michael Tremonte
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
EWolff@shertremonte.com
MTremonte@shertremonte.com

*Attorneys for Plaintiff Sean Combs*