**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

**SEAN COMBS**,

                    **Plaintiff**,

**v.**

**COURTNEY BURGESS, ARIEL
MITCHELL, and NEXSTAR MEDIA INC.,**

                    **Defendants.**

Civil Action No. 1:25-cv-00650-JPC

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION BY DEFENDANT NEXSTAR MEDIA INC.
TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Elizabeth A. McNamara
Alison Schary
Mary E. Goetz
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone:    (212) 489-8230
Facsimile:    (212) 489-8340

*Counsel for Defendant Nexstar Media Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND.................................................................................................... 2

A.    The Parties ..................................................................................................... 2

B.    Combs Faces Multiple Civil Lawsuits and Federal Prosecution for Alleged
      Sexual Abuse and Sex Trafficking ................................................................ 2

C.    NewsNation Reports On the Ongoing Cases Against Combs ....................... 5

D.    Plaintiff Files This Lawsuit........................................................................... 9

E.    Plaintiff Is Convicted of Two Felony Counts ............................................. 10

ARGUMENT ......................................................................................................................... 11

I.    PLAINTIFF'S DEFAMATION CLAIM AGAINST NEXSTAR SHOULD BE
      DISMISSED FOR LACK OF ACTUAL MALICE ................................................... 12

      A.    Plaintiff Fails to Plausibly Allege that Nexstar Published Any Challenged
            Statements with Actual Malice ...................................................................... 12

      B.    To the Contrary, the FAC Shows a Lack of Actual Malice by Nexstar ......... 16

II.   PLAINTIFF'S DEFAMATION CLAIM FAILS ON INDEPENDENT
      GROUNDS ................................................................................................................. 19

      A.    Plaintiff Fails to Plead a Defamation by Implication Claim and Instead
            Challenges Protected Opinions and Speculation ........................................... 19

            1.    Statement 1............................................................................................ 20

            2.    Statement 2............................................................................................ 21

            3.    Statement 4............................................................................................ 21

            4.    Statement 5............................................................................................ 22

      B.    Statements 1 and 2 Are Protected by New York's Fair-Report Privilege ...... 22

III.  Nexstar Is Entitled to Fees Under New York's Anti-SLAPP Law .............................. 24

CONCLUSION...................................................................................................................... 25

APPENDIX:  GLOSSARY OF CHALLENGED STATEMENTS............................................. 27

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1st Amend. Praetorian v. N.Y. Times Co.*,
  2025 WL 949575 (S.D.N.Y. Mar. 28, 2025) .....................................................................13, 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).........................................................................................................11, 13

*Beary v. W. Publ'g Co.*,
  763 F.2d 66 (2d Cir. 1985).....................................................................................................22

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................11, 13, 14

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015).....................................................................................................11

*Biro v. Condé Nast*,
  883 F. Supp. 2d 441 (S.D.N.Y. 2012).....................................................................................19

*Biro v. Condé Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013).................................................................................13, 18

*Bloom v. A360 Media LLC*,
  735 F. Supp. 3d 466 (S.D.N.Y. 2024).................................................................................15, 16

*Bobulinski v. Tarlov*,
  758 F. Supp. 3d 166 (S.D.N.Y. 2024)..................................................................12, 14, 24, 25

*Bose Corp. v. Consumer Union of U.S., Inc.*,
  466 U.S. 485 (1984).............................................................................................13, 17, 18

*Brimelow v. N.Y. Times Co.*,
  2020 WL 7405261 (S.D.N.Y. Dec. 16, 2020) .........................................................................13

*BYD Co. v. VICE Media LLC*,
  531 F. Supp. 3d 810 (S.D.N.Y. 2021).........................................................................13, 14, 23

*Chandok v. Klessig*,
  632 F. 3d 803 (2d Cir. 2011).................................................................................................13

*Cholowsky v. Civiletti*,
  69 A.D.3d 110 (2d Dep't 2009)........................................................................................23, 24

*Church of Scientology Int'l. v. Behar*,
   238 F.3d 168 (2d Cir. 2001).................................................................................................11

*Coleman v. Grand*,
   523 F. Supp. 3d 244 (E.D.N.Y. 2021) ................................................................................20

*Colliton v. Cravath, Swaine & Moore LLP*,
   2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008)......................................................................17

*Contemporary Mission v. N. Y. Times Co.*,
   665 F. Supp. 248 (S.D.N.Y. 1987) ......................................................................................14

*Contemporary Mission, Inc. v. N.Y. Times Co.*,
   842 F.2d 612 (2d Cir. 1988).................................................................................................12

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
   551 F. Supp. 3d 320 (S.D.N.Y. 2021).................................................................................24

*Cummings v. City of New York*,
   2021 WL 1163654 (S.D.N.Y. Mar. 26, 2021) .....................................................................23

*Cummins v. Suntrust Cap. Markets, Inc.*,
   649 F. Supp. 2d 224 (S.D.N.Y. 2009).................................................................................20

*Daleiden v. Planned Parenthood Fed'n of Am.*,
   2022 WL 1013982 (2d Cir. Apr. 5, 2022) ..........................................................................23

*Dongguk Univ. v. Yale Univ.*,
   734 F.3d 113 (2d Cir. 2013).................................................................................................16

*Flynn v. Cable News Network, Inc.*,
   2024 WL 1765566 (S.D.N.Y. Apr. 24, 2024)......................................................................19

*Freeze Right Refrigeration & Air Conditioning Servs. v. City of New York*,
   101 A.D.2d 175 (1st Dep't 1984) ...................................................................................23, 24

*Friedman v. Bloomberg L.P.*,
   884 F.3d 83 (2d Cir. 2017).............................................................................................23, 24

*Garrison v. Louisiana*,
   379 U.S. 64 (1964)...............................................................................................................13

*Gross v N.Y. Times Co.*,
   82 N.Y.2d 146 (1993) ..........................................................................................................19

*Gubarev v. Buzzfeed, Inc.*,
   340 F. Supp. 3d 1304 (S.D. Fla. 2018) ..........................................................................23, 24

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
491 U.S. 657 (1989)..........................................................................................................14, 16

*Haynes v. Alfred A. Knopf, Inc.*,
8 F.3d 1222 (7th Cir. 1993) ......................................................................................................22

*Herbert v. Lando*,
781 F.2d 298 (2d Cir. 1986).....................................................................................................18

*Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*,
49 N.Y.2d 63 (1979)...................................................................................................................23

*Kesner v. Dow Jones & Co.*,
515 F. Supp. 3d 149 (S.D.N.Y. 2021).........................................................................19, 21, 23

*Kinsey v. N.Y. Times Co.*,
991 F.3d 171 (2d Cir. 2021)......................................................................................................23

*Lindberg v. Dow Jones & Co.*,
2021 WL 3605621 (S.D.N.Y. Aug. 11, 2021).........................................................................12

*Masson v. New Yorker Magazine Inc.*,
501 U.S. 496 (1991)............................................................................................................13, 20

*McDougal v. Fox News Network LLC*,
489 F. Supp. 3d 174 (S.D.N.Y. 2020)......................................................................12, 13, 15

*In re Merrill Lynch & Co., Inc. Res. Reports Sec. Litig.*,
289 F. Supp. 2d 416 (S.D.N.Y. 2003).........................................................................................3

*Milkovich v. Lorain J. Co.*,
497 U.S. 1 (1990)........................................................................................................................19

*Mira v. Kingston*,
218 F. Supp. 3d 229 (S.D.N.Y. 2016)..........................................................................................3

*N.Y. Times Co. v. Sullivan*,
376 U.S. 254 (1964)......................................................................................................13, 15, 16

*Nunes v. NBCUniversal Media, LLC*,
2025 WL 2199115 (S.D.N.Y. Aug. 1, 2025)...........................................................................15

*Prince v. Intercept*,
2023 WL 4492413 (S.D.N.Y. July 12, 2023) ..................................................................14, 18

*Sandmann v. N.Y. Times Co.*,
617 F. Supp. 3d 683 (E.D. Ky. 2022) .....................................................................................21

iv

*St. Amant v. Thompson*,
  390 U.S. 727 (1968)..................................................................................................13, 16, 17

*Stepanov v. Dow Jones & Co.*,
  120 A.D.3d 28 (1st Dep't 2014) .............................................................................................19

*Tah v. Glob. Witness Publ'g, Inc.*,
  413 F. Supp. 3d 1 (D.D.C. 2019), *aff'd*, 991 F.3d 231 (D.C. Cir. 2021)................................18

*TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.*,
  2017 WL 2627912 (S.D.N.Y. June 16, 2017) ........................................................................16

*Trump v. Simon & Schuster, Inc.*,
  __ F. Supp. 3d __, 2025 WL 2017888 (S.D.N.Y. 2025) .........................................................17

*Wang v. Sussman*,
  2025 WL 81355 (S.D.N.Y. Jan. 13, 2025) .............................................................................22

**Statutes**

N.Y. Civ. Rights Law § 70-a .....................................................................................................2, 25

N.Y. Civ. Rights Law § 74 ...........................................................................................12, 22, 23

N.Y. Civ. Rights Law § 76-a ..........................................................................................12, 24

Defendant Nexstar Media Inc. ("Defendant" or "Nexstar") submits this memorandum in support of its Rule 12(b)(6) motion to dismiss Plaintiff Sean Combs's ("Plaintiff" or "Combs") First Amended Complaint ("FAC") against it with prejudice.

## PRELIMINARY STATEMENT

In this action, Combs attempts to punish a news outlet for reporting on a matter of intense public interest: allegations that Combs, an international celebrity, orchestrated, engaged in, and recorded sexual encounters known as "freak offs," in which some participants did not willingly consent. He challenges a handful of statements from three Nexstar reports published in September and October 2024, weeks after federal prosecutors unsealed a blockbuster indictment charging Combs with sex trafficking and prostitution-related offenses. That indictment came on the heels of at least 10 civil suits filed against Combs over the prior year. The criminal and civil complaints accused Combs of rape and sexual abuse, including allegations that he drugged and filmed victims, some of whom were minors at the time.

Plaintiff's FAC fails to allege that Nexstar published any challenged statement with actual malice, as he must. Nor could he, since the challenged statements were all consistent with previous publicly filed and widely reported allegations.[1] Indeed, Plaintiff's theory of this case—that Defendants Mitchell and Burgess engaged in a campaign to mislead news outlets, including Nexstar, with false claims and invented evidence—undercuts any plausible claim that Nexstar acted with actual malice. On this basis alone, Plaintiff's claim against Nexstar can and should be dismissed with prejudice.

---

[1] Of the seven statements at issue in the FAC, only four (Statements 1, 2, 4, and 5) are alleged against Nexstar. The remaining statements at issue (Statements 3, 6, and 7) are attributed to Nexstar publications and are alleged only against Defendants Mitchell and/or Burgess. FAC ¶ 86; *see* Appendix: Glossary of Challenged Statements.

Plaintiff's defamation claim also fails on independent grounds, including that the statements are nonactionable opinions; are not materially false; and/or are protected by New York's fair report privilege. And because Plaintiff fails to state any claim against Nexstar, he also lacks a "substantial basis" in law for these claims under New York's Anti-SLAPP Law, N.Y. Civ. Rights Law § 70-a(1)(a). Nexstar is therefore entitled to an award of attorney's fees.

For these reasons, the Court should dismiss Plaintiff's claim against Nexstar with prejudice and award it fees pursuant to the New York Anti-SLAPP Law.

## FACTUAL BACKGROUND

### A.    The Parties

Plaintiff describes himself as a "musician and music producer, hip hop impresario, record label owner, fashion innovator and icon, pathbreaking spirits entrepreneur, and committed philanthropist" who is "famous for his extraordinary and historic achievements." FAC ¶ 19. Plaintiff is a convicted felon who remains in prison pending sentencing.

Defendant Courtney Burgess was a grand-jury witness in the federal criminal case against Combs. *Id.* ¶ 65. Defendant Ariel Mitchell represented Burgess in connection with that proceeding. *Id.* ¶ 63. Mitchell has also represented plaintiffs in several civil suits against Combs. *Id.* ¶¶ 40, 42. Mitchell and Burgess (together, the "Individual Defendants") are not parties to this motion and are separately represented in this action.

Defendant Nexstar owns and operates NewsNation, which airs the *Banfield* news program. *Id.* ¶¶ 17, 63.

### B.    Combs Faces Multiple Civil Lawsuits and Federal Prosecution for Alleged Sexual Abuse and Sex Trafficking

Starting in the fall of 2023, multiple civil actions and ultimately a criminal complaint alleged that Combs orchestrated drug-fueled sex parties called "freak-offs," where multiple

individuals claimed they were sexually abused and/or trafficked.  The civil and criminal allegations were widely covered, including on NewsNation, in what Combs acknowledges was an "unrelenting tide of negative publicity."  FAC ¶ 83.

The news initially broke on November 16, 2023, when Combs's former partner Casandra "Cassie" Ventura sued Combs for claims including sex trafficking and sexual battery.  *See* Complaint, *Ventura v. Combs*, No. 23-cv-10098 (S.D.N.Y. Nov. 16, 2023).[2]  Combs settled almost immediately.[3]  *See* Notice of Dismissal with Prejudice, *Ventura*, No. 23-cv-10098 (S.D.N.Y. Nov. 20, 2023).  Ms. Ventura's lawsuit—and the prompt settlement—drew widespread media attention.[4]  CNN later released hotel surveillance footage of Combs physically assaulting Ventura.[5]

In the following months, more individuals filed civil suits against Combs alleging sexual assault.  One woman alleged that as a college student in the 1990s, she was "drugged, sexually assaulted and abused, and [made] the victim of 'revenge porn' that [Combs] created and distributed."  Complaint ¶ 1, *Dickerson-Neal v. Combs*, No. 952341/2023 (Sup. Ct. N.Y. Cnty. Nov. 23, 2023).  Another alleged she was gang-raped and trafficked by Combs and others as a 17-year-old junior in high school.  Complaint ¶ 6, *Kane v. Combs*, No. 23-cv-10628 (S.D.N.Y. Dec.

---

[2] The Court may take judicial notice of these pleadings and other publicly available documents.  *Mira v. Kingston*, 218 F. Supp. 3d 229, 234 (S.D.N.Y. 2016).

[3] Ventura later testified that Combs paid $20 million in the settlement.  *See* Julia Jacobs & Joe Coscarelli, *Cassie Settled Lawsuit Against Sean Combs for $20 Million*, N.Y. Times (May 14, 2025), https://www.nytimes.com/2025/05/14/arts/music/diddy-cassie-settlement-amount.html.

[4] *See, e.g.*, Ginger Adams Otis, *Sean Combs Accused of Physical, Mental Abuse by Former Partner*, Wall Street J. (Nov. 16, 2023), https://www.wsj.com/us-news/sean-combs-accused-of-physical-mental-abuse-by-former-partner-ef7873c7; Larry Neumeister, *Sean "Diddy" Combs and Singer Cassie Settle Lawsuit Alleging Abuse 1 Day After It Was Filed*, AP (Nov. 18, 2023), https://apnews.com/article/sean-combs-cassie-lawsuit-2d2a4c8938eb82c34b62c01a30969554.  The Court may take judicial notice of these articles because they are offered "for the fact of their publication," not the truth of their contents.  *See In re Merrill Lynch & Co., Inc. Res. Reports Sec. Litig.*, 289 F. Supp. 2d 416, 425 n.15 (S.D.N.Y. 2003).

[5] *See, e.g.*, *Surveillance Video Shows Sean 'Diddy' Combs Physically Assaulting Former Girlfriend in 2016*, CNN (May 19, 2024), https://www.cnn.com/2024/05/17/entertainment/video/sean-diddy-combs-cassie-venture-surveillance-digvid.

6, 2023).  And music producer Rodney 'Lil Rod' Jones filed a lawsuit accusing Combs of sexual assault, alleging he possessed "hundreds of hours of video and audio recordings" of illegal activity and evidence of "Combs providing laced alcoholic beverages to minors."  Complaint ¶¶ 29-30, *Jones v. Combs*, No. 24-cv-1457 (S.D.N.Y. Mar. 4, 2024).  More civil suits followed, raising similar allegations against Combs.[6]  These lawsuits were widely reported in the media.[7]

Then the criminal prosecution became public.  On March 25, 2024, federal agents raided multiple properties tied to Combs and seized nearly 100 electronic devices.  Transcript at 10:13-17, *U.S. v. Combs*, No. 24-cr-542 (S.D.N.Y. Oct. 18, 2024) (hereinafter "*U.S. v. Combs*").  On September 17, 2024, federal prosecutors unsealed an indictment charging Combs with racketeering conspiracy, sex trafficking, and transportation to engage in prostitution.  FAC ¶ 20; Sealed Unredacted Indictment ("Indictment"), *U.S. v. Combs* (Sept. 12, 2024).  Among other things, the indictment charged that Combs:

- "abused, threatened, and coerced women and others around him to fulfill his sexual desires, protect his reputation, and conceal his conduct";

- engaged in "verbal, emotional, physical, and sexual" abuse, controlling women by "distributing narcotics to them";

---

[6] *See, e.g.*, Complaint ¶¶ 23-54, 81-82, *Lampros v. Combs*, No. 154859/2024 (Sup. Ct. N.Y. Cnty. May 23, 2024) (alleging Combs repeatedly raped plaintiff, forced her to take ecstasy, and filmed sexual encounter without her knowledge); Complaint ¶¶ 115, 127, *English v. Combs*, No. 24-cv-5090 (S.D.N.Y. July 3, 2024) (alleging plaintiff was sex trafficked by Combs and that security cameras at Combs's home filmed a sexual assault while she was unconscious); Amended Complaint ¶¶ 62-79, *McKinney v. Combs*, No. 24-cv-3931 (S.D.N.Y. Aug. 1, 2024) (alleging Combs gave plaintiff drugs and forced her to perform oral sex on him); Complaint ¶¶ 94-100, *Richard v. Combs*, No. 24-cv-6848 (S.D.N.Y. Sept. 10, 2024) (alleging plaintiff, who worked with Combs and appeared on seasons of *Making the Band*, observed Combs invite people who "appeared underage" to "use drugs and engage in sex acts" and was herself sexually harassed and assaulted by Combs); Complaint ¶¶ 78-79, *Graves v. Combs*, No. 24-cv-7201 (S.D.N.Y. Sept. 24, 2024) (alleging Combs and others "rap[ed] Plaintiff and record[ed] it," then "published and/or disseminated the video without Plaintiff's knowledge or consent"); Complaint ¶¶ 36-39, *McCrary v. Combs*, No. 24-cv-8054 (S.D.N.Y. Oct. 23, 2024) (alleging Combs raped plaintiff under threat of violence).

[7] *See, e.g.*, *Sean 'Diddy' Combs Accused of 1991 Sexual Assault in Second Suit*, Reuters (Nov. 24, 2023 5:06 AM), https://www.reuters.com/world/us/sean-diddy-combs-accused-1991-sexual-assault-second-suit-2023-11-24/; Colleen Shalby, *Sean 'Diddy' Combs Faces Sex Assault Lawsuit from a Sixth Person*, L.A. Times (May 24, 2024 3:00AM), https://www.latimes.com/california/story/2024-05-22/sean-diddy-combs-new-sexual-assault-lawsuit;    Sidney Madden, *New Lawsuit Accuses Sean Combs of Rape, Recording Assault Later Distributed As Porn*, NPR (Sept. 24, 2024 6:01 PM), https://www.npr.org/2024/09/24/g-s1-24401/sean-diddy-combs-graves-rape-lawsuit.

- "arranged, directed, masturbated during, and often electronically recorded" "elaborate and produced sex performances" called "Freak Offs";

- "used force, threats of force, and coercion[] to cause victims to engage in" Freak Offs;

- "distributed a variety of controlled substances to victims, in part to keep the victims obedient and compliant"; and

- "kept videos he filmed of victims engaging in sex acts."

Indictment ¶¶ 1, 3, 12(a)  Combs was arrested September 16, 2024 and denied bail pending trial.

Order, *U.S. v. Combs* (Nov. 27, 2024).

### C.   NewsNation Reports On the Ongoing Cases Against Combs

The civil complaints, criminal indictment, and news coverage described above all occurred

before the three *Banfield* reports challenged here.

**September 27 Report (FAC ¶¶ 45-53):**  In the September 27 Report, NewsNation host

Laura Ingle covered Combs's recent indictment and other developments related to the allegations

against him.  Ms. Ingle reported on a forthcoming TMZ documentary about Combs's indictment

and discussed recent news coverage, including a New York Post interview with a former attendee

at Combs's infamous "freak off" parties:

> The New York Post got an exclusive interview with an unnamed coke dealer in the Hamptons who says he was so freaked out by one of Diddy's freak offs that he, quote, "got the F out of there."  That's a quote.  He says he saw famous men having sex with each other, prostitutes passed around like candy, and a lot of people high on ketamine and GHB.  He told the Post, and these are his words, quote, "weird stuff was starting to happen.  Celebrity guys were [blanking] each other.  There were back bedrooms, and it was like the inner sanctum.  You see two people you would not think would be hooking up, talking rappers.  That's what shocked me."

McNamara Decl. Ex. 1 at 3:59-4:40, Ex. 4 at 2.  She also discussed the many lawsuits against

Combs, including a new "Jane Doe" suit filed that day "accusing Combs of drugging, raping, and

impregnating her."  *Id.* Ex. 1 at 6:45-50, Ex. 4 at 3.

Ms. Ingle then introduced Mitchell as the lawyer for a new accuser who claimed she was

raped by Combs in 2018. *Id.* Ex. 1 at 6:56-7:08, Ex. 4 at 3. Mitchell described her client's allegations, which she said would be presented in a forthcoming lawsuit: her client alleged she encountered Combs at the home of a friend with "industry ties" and was served a drink that made her "woozy," after which Combs allegedly sexually assaulted her and then directed another individual to engage in a sex act with her while he watched. *Id.* Ex. 1 at 7:39-8:33, Ex. 4 at 3. Mitchell represented that her client had a witness—a neighbor who saw her running from the house and brought her inside to call the police—and that there was a police report from that night. *Id.* Ex. 1 at 8:34-9:45, Ex. 4 at 3-4. Mitchell said she file suit in California "within the week" and stated: "I will be attaching the criminal complaint that was made—I'll attach the number so everyone can see that this is a real number, and can go to the police department there and request their own copy of that police report that was made back in 2018." *Id.* Ex. 1 at 11:53-12:01, 15:34-53, Ex. 4 at 5-6. Ms. Ingle asked whether Combs "was named in the police report," and Mitchell responded, "I don't think so," explaining that her client "felt that the police were trying to bury this and disregard her claims and not really investigate." *Id.* Ex. 1 at 15:57-16:13, Ex. 4 at 7.

Mitchell also told Ms. Ingle that another individual sought her advice about the sale of "one of the Diddy tapes." *Id.* Ex. 1 at 12:01-12, Ex. 4 at 5. Ms. Ingle commented that "we've heard about the tapes." *Id.* Ex. 1 at 12:23-26, Ex. 4 at 5. In response to further questions, Mitchell confirmed the video was "real," that she had seen stills from it where another individual who was even "more high profile than Mr. Combs" was "very visible," and that the video was "pornographic in nature." *Id.* Ex. 1 at 12:50-13:22, Ex. 4 at 5. Ms. Ingle noted "we know that [Combs] videotaped a lot of activities at his home," and asked Mitchell about hidden cameras. Mitchell replied that "the [other] person isn't, like, looking into the video. So it's, to me, doesn't seem like that person knows they're being videotaped." *Id.* Ex. 1 at 13:21-53, Ex. 4 at 6.

6

Following Mitchell's interview, Ms. Ingle told the audience: "These are allegations, of course. [Combs] has not responded. But we will follow it as we move along this developing story." *Id.* Ex. 1 at 17:36-42, Ex. 4 at 7.

**October 7 Report (FAC ¶¶ 74-75).** In the October 7 Report, host Brian Entin reported further on Combs's criminal case and read an extended statement from Combs's mother in his defense, as well as a statement by musician Aubrey O'Day claiming Combs abused her and others, including minors. *Id.* Ex. 2 at 2:39-6:05, Ex. 5 at 1-2. Mr. Entin reported that Miami Beach revoked a key to the city they had given Combs, and he interviewed Mitchell remotely about that revocation and her client's forthcoming California lawsuit. *Id.* Ex. 2 at 6:05-12:52, Ex. 5 at 2-5. Mitchell explained that her client alleges Combs removed a liquid substance from a fanny pack and squirted it on her before the alleged assault, and that "her body got more and more limp" over the course of the attack. *Id.* Ex. 2 at 9:09-10:34, Ex. 5 at 3-4. When Mr. Entin asked if it was possible there was "something that could have been in it that would have made it so she couldn't move," Mitchell responded that "oil in general is used as a conduit for specific drugs, like, for instance, GHB." Based on this, she surmised, "it seems to me that there were some types of drugs mixed into the oil, which is why he was dousing her in that oil prior." *Id.* Ex. 2 at 10:34-11:30, Ex. 5 at 4.

**October 31 Report (FAC ¶¶ 63-67).** On October 31, 2024, Burgess testified before the grand jury in Combs's criminal case. FAC ¶¶ 63, 65. Burgess gave an interview outside the courthouse after his testimony.[8] Later that day, NewsNation aired a *Banfield* segment with clips from an interview of Burgess and Mitchell taped shortly after his testimony. *Id.* ¶ 63. Host

---

[8] *See Diddy Grand Jury Talks to New Witness . . . Claims He Has Tapes, Kim Porter Diary*, TMZ (Oct. 31, 2024), https://www.tmz.com/2024/10/31/diddy-grand-jury-subpoena-new-witness-claims-sex-tapes-kim-porter-memoir/.

Ashleigh Banfield discussed Combs's legal battles, noting he was "scheduled for trial next May on federal charges of sex trafficking, racketeering, and prostitution."  McNamara Decl. Ex. 2 at 3:49-55, Ex. 6 at 1-2.  She also noted the increasing number of civil suits alleging sexual abuse, with "about 27 give or take . . . sex suits against [Combs]" filed to date, including some in which "the accusers claimed that they were children when they were assaulted."  *Id.* Ex. 2 at 4:05-16, Ex. 6 at 2.

Ms. Banfield then introduced Burgess, explaining he had "just testified before a federal grand jury" and "says he was in possession of . . . flash drives that belonged to the late Kim Porter," Combs's ex-girlfriend.  *Id.* Ex. 2 at 4:24-43, Ex. 6 at 2.[9]  "On those drives, the witness says, eight videos featured eight celebrities at Diddy freak-offs or parties," and the drives "included a manuscript of an alleged Kim Porter memoir, a memoir that her four kids insist is fake."  *Id.* Ex. 2 at 4:52-5:13, Ex. 6 at 2.  She noted: "Burgess told his story on a podcast before he told the grand jury today, and after he told the grand jury, and I mean immediately after, he booked it over to my set, and he and his attorney talked to me."  *Id.* Ex. 2 at 5:13-25, Ex. 6 at 2.  Ms. Banfield cautioned that Burgess was "very limited in how much detail he could go into about his testimony" and explained that because "the eight celebrities in the videos were allegedly victims of sex crimes, we know who they are, but we will not be naming them, famous or not."  *Id.* Ex. 2 at 5:24-43, Ex. 6 at 2.

During the interview, Burgess opined that the celebrities in the videos "appeared to be either inebriated or intoxicated or under the influence of drugs," and two or three "seemed to be potentially minors."  *Id.* Ex. 2 at 9:04-10:03, Ex. 6 at 3-4.  Mitchell underscored that this was

---

[9] Burgess reiterated that he received the flash drives from an individual who was dating the late Kim Porter, and that he spoke to Porter by phone before receiving them.  *Id.* Ex. 2 at 11:46-13:02, Ex. 6 at 5.

Burgess's "speculation" based on reviewing the videos, not reflecting any independent knowledge. *Id.* Ex. 2 at 8:56-9:03, Ex. 4 at 3. Ms. Banfield reminded viewers that while Combs had been "accused," he "has not been convicted of any crimes." *Id.* Ex. 2 at 13:46-54, Ex. 6 at 6. "[E]verything against him is an allegation until it is proven in a court of law, or he decides to sign a plea deal . . . But at this point in the story, Sean Combs is not guilty of any crimes." *Id.* Ex. 2 at 13:54-14:17, Ex. 6 at 6.

### D.    Plaintiff Files This Lawsuit

Combs filed this lawsuit on January 22, 2025. ECF No. 1. After Nexstar moved to dismiss, Combs filed the FAC, which targeted an additional broadcast but otherwise asserted substantially the same allegations against Nexstar. The FAC is composed almost entirely of allegations against Mitchell and Burgess, most of which are unrelated to the Nexstar reports. The only allegations against Nexstar arise from publishing the September 27, October 7, and October 31 Reports (the "Challenged Reports").

The FAC does not dispute that Combs orchestrated and videotaped "Freak Offs" involving drugs, prostitution, and sexual exploits often including prominent people like himself. It does not (and cannot) dispute that prior to the Challenged Reports, a raft of civil complaints accused Combs of rape, sexual assault, and physical abuse (including with minors and involving drugs), or that his criminal indictment was unsealed before the Challenged Reports and alleged, among other things, that he "abused threatened, and coerced women and others" and that he engaged in "verbal, emotional, physical, and sexual" abuse during the videotaped "Freak Offs." Indictment ¶ 12(c). Instead, Combs identifies four allegedly defamatory assertions (the "Statements"):

- **Statement 1 (October 31)**: "That there existed video recordings of Plaintiff sexually assaulting minors and celebrities." FAC ¶ 86(a).

- **Statement 2 (September 27 and October 31)**: "That Plaintiff secretly recorded himself having sex with people who did not know they were being recorded." FAC ¶ 86(b).

- **Statement 4 (September 27)**:  "That a police report existed that corroborated the outrageous allegations made by Mitchell's client that she was raped by Plaintiff in Northern California in March 2018."  FAC ¶ 86(c).

- **Statement 5 (October 7)**:  "That Combs used drug-laced baby oil to incapacitate people."  FAC ¶ 86(d).

None of these are verbatim quotes from the Challenged Reports; instead, they are alleged implications arising from them.  Based on the Statements (and the other allegedly defamatory statements *not* attributed to Nexstar), Combs asserts damages of at least $50 million.

## E.    Plaintiff Is Convicted of Two Felony Counts

Plaintiff's federal criminal trial began on May 5, 2025 and lasted approximately seven weeks.  The government's 34 witnesses included at least three women who had also brought civil suits against Combs.  *See* Minute Entries, *U.S. v. Combs* (May 13-16, 2025) (Casandra Ventura); *id.* (May 16 and 19, 2025) (Dawn Richard); *id.* (June 4-5, 2025) (Bryana Bongolan).  Multiple witnesses alleged sexual assaults by Combs.  In opening and closing statements, Combs's lawyers asserted the sexual activities were consensual.[10]

The trial evidence included sexually explicit videos depicting "freak-offs."[11]  The defense did not dispute the authenticity of these videos, the existence of "freak-offs," or the evidence of

---

[10] *See, e.g.*, *Diddy Sex Trafficking Trial:  Opening Statements*, Court TV (May 14, 2025), https://www.courttv.com/ title/diddy-sex-trafficking-trial-listen-to-opening-statements/ (quoting from defense counsel opening statement: "This case is about voluntary adult choices made by capable adults and consensual relationships. . . . [Jane] agreed and they went to a private hotel room.  Again, like a consensual threesome.  And Combs would watch."); Ben Sisario et al., *4 Takeaways from the Defense's Closing Argument at Sean Combs's Trial*, N.Y. Times (July 1, 2025), https://www.nytimes.com/2025/06/27/arts/music/sean-combs-diddy-trial-defense-closings.html ("[Combs's counsel said] that Casandra Ventura and 'Jane,' who testified under a pseudonym, consensually participated in the marathon sex parties that are central to the government's claim that the women were sex trafficked.").

[11] *See, e.g.*, Aaron Katersky et al., *Sean "Diddy" Combs Trial Day 29 Recap:  Jurors Watch Videos of "Freak-Offs"*, ABC News (June 17, 2025 6:49 PM), https://abcnews.go.com/US/sean-diddy-combs-trial-day-29-recap-jurors/story?id=122949525; *Diddy Jury Watches Sexually Explicit Videos from "Marathon" Hotel Nights*, Court TV (June 23, 2025), http://courttv.com/title/diddy-jury-watches-sexually-explicit-videos-from-marathon-hotel-nights/.

drugs, baby oil, and other materials seized from Combs's homes and allegedly used in "freak-offs." Indeed, Combs's defense counsel showed jurors some of the explicit videos themselves.[12]

On July 2, the jury found Combs guilty of two counts of transportation to engage in prostitution and acquitted him of the remaining charges. Verdict Sheet, *U.S. v. Combs* (July 8, 2025). The court denied bail pending sentencing. Order, *U.S. v. Combs* (Aug. 4, 2025).

## ARGUMENT

To survive a Rule 12(b)(6) motion, the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court must take "well-pleaded factual allegations" as true when assessing the motion, legal conclusions "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678-79. Rather, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Biro v. Condé Nast,* 807 F.3d 541, 544 (2d Cir. 2015).

New York law requires public figures like Combs to plead and prove that each challenged statement is "(1) of and concerning [him], (2) likely to be understood as defamatory by the ordinary person, (3) false, and (4) published with actual malice." *Church of Scientology Int'l. v. Behar*, 238 F.3d 168, 173 (2d Cir. 2001).

Here, Plaintiff fails to plausibly allege that Nexstar published any of the challenged statements with actual malice; to the contrary, the FAC shows a *lack* of actual malice. His claim against Nexstar should be dismissed on this ground alone.

---

[12] *Sean "Diddy" Combs Jury Views More Sex Videos As Prosecution Case Nears End*, The Guardian (June 23, 2024 3:45 PM), https://www.theguardian.com/music/2025/jun/23/sean-diddy-combs-trial ("[d]efense lawyers last week showed the jury about 18 minutes of video clips from the sex performances involving Cassie" ).

Plaintiff's claim also fails on multiple independent grounds. The plain language and context of Statements 1, 2 and 5 make clear that these are nonactionable opinions and speculation. And to the extent they are found to include assertions of fact, the "gist" or "sting" of those facts are substantially true: there is no question Combs hosted sex- and drug-fueled parties, attended by celebrities, where participants were recorded engaging in "pornographic" activity. Mitchell's statement that a police report exists in connection with her California client's case (Statement 4) is also undisputedly true. And reporting about a grand-jury witness's testimony and subpoenaed evidence (Statements 1 and 2) is protected by New York's robust fair-report privilege. N.Y. Civ. Rights Law § 74.

Finally, because the Challenged Reports plainly concern a matter of intense public interest, New York's Anti-SLAPP Law entitles Nexstar to attorney's fees for prevailing on this motion. *Bobulinski v. Tarlov*, 758 F. Supp. 3d 166, 182-89 (S.D.N.Y. 2024).

## I. PLAINTIFF'S DEFAMATION CLAIM AGAINST NEXSTAR SHOULD BE DISMISSED FOR LACK OF ACTUAL MALICE

### A. Plaintiff Fails to Plausibly Allege that Nexstar Published Any Challenged Statements with Actual Malice

Combs concedes he is a public figure who must satisfy the actual malice standard. *See* FAC ¶ 19 (Combs is "famous for his extraordinary and historic achievements"); *id.* ¶ 64 (reciting actual-malice standard of fault).[13] Actual malice presents "a high bar," *McDougal v. Fox News Network LLC*, 489 F. Supp. 3d 174, 186 (S.D.N.Y. 2020), designed "to assure to the freedoms of speech and press that 'breathing space' essential to their fruitful exercise." *Contemporary Mission, Inc. v. N.Y. Times Co.*, 842 F.2d 612, 621 (2d Cir. 1988). It focuses solely on the defendant's

---

[13] Because the claims against Combs are plainly a matter of public interest, the actual malice standard *also* applies under New York's Anti-SLAPP Law. N.Y. Civ. Rights Law § 76-a(1)(a)(1) & (2); *see Lindberg v. Dow Jones & Co.*, 2021 WL 3605621, at *8 (S.D.N.Y. Aug. 11, 2021) (defining matters of public interest as "matters of political, social, or other concern to the community").

subjective state of mind "at the time of publication." *Bose Corp. v. Consumer Union of U.S., Inc.*, 466 U.S. 485, 512 (1984).  "Mere negligence does not suffice." *Masson v. New Yorker Magazine Inc.*, 501 U.S. 496, 510 (1991).  Instead, "[t]here must be sufficient evidence to permit the conclusion that the defendant *in fact* entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (emphasis added), or had a "high degree of awareness of their probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964).  "[T]here is a critical difference between not knowing whether something is true and being highly aware that it is probably false"—and "only the latter" constitutes actual malice. *Chandok v. Klessig*, 632 F. 3d 803, 815 (2d Cir. 2011).  And because organizations like Nexstar cannot have institutional knowledge of falsity, actual malice must be "brought home to the persons in the . . . organization having responsibility for the publication." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964).

"Not only is proving actual malice a heavy burden, but, in the era of *Iqbal* and *Twombly, pleading* actual malice is a more onerous task as well." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 278 (S.D.N.Y. 2013), *aff'd* 807 F.3d 541, *aff'd*, 622 F. App'x 67 (2d Cir. 2015) (emphasis added). "Pleading 'actual-malice buzzwords' is simply not enough to nudge a case into discovery." *Id.* at 279-80.  Thus, courts routinely dismiss defamation claims prior to discovery for failure to plead actual malice. *See, e.g.*, *1st Amend. Praetorian v. N.Y. Times Co.*, 2025 WL 949575, at *7-10 (S.D.N.Y. Mar. 28, 2025); *BYD Co. v. VICE MEDIA LLC*, 531 F. Supp. 3d 810, 822-26 (S.D.N.Y. 2021), *aff'd*, 2022 WL 598973 (2d Cir. Mar. 1, 2022); *Brimelow v. N.Y. Times Co.*, 2020 WL 7405261, at *8-12 (S.D.N.Y. Dec. 16, 2020), *aff'd*, 2021 WL 4901969 (2d Cir. Oct. 21, 2021); *McDougal*, 489 F. Supp. 3d at 185-88.

13

Here, the FAC does not plead facts to show Nexstar published the Statements knowing them to be false or seriously doubting their accuracy.  And none of its allegations suffice to plead actual malice as a matter of law.

*First*, Plaintiff's "formulaic recitation" of the actual malice standard, *e.g.*, FAC ¶¶ 5, 79, 81, carries no weight on a motion to dismiss.  *Twombly*, 550 U.S. at 555; *see also Bobulinski*, 758 F. Supp. 3d at 179 ("conclusory assertions that [defendant] made the statements either 'knowing that they were false or with reckless disregard for the truth'" insufficient for actual malice).

*Second*, allegations that Nexstar "conducted no investigation," did not "fact check[]," and did not "reach out to Mr. Combs' representatives for comment" do not demonstrate actual malice.  *See* FAC ¶¶ 49, 57, 78.  It is well established that "a failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish [actual malice]."  *BYD Co. Ltd.*, 531 F. Supp. 3d at 826 (quoting *Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 688 (1989)).  Thus, neither a "failure to verify statements with the plaintiff" nor "[p]ublication in the face of a denial by plaintiff[]" constitutes actual malice.  *Prince v. Intercept*, 2023 WL 4492413, at *10 (S.D.N.Y. July 12, 2023); *Contemporary Mission v. N. Y. Times Co.*, 665 F. Supp. 248, 270 (S.D.N.Y. 1987), *aff'd*, 842 F.2d 612.

The FAC claims NewsNation should have discovered two pieces of information with further investigation: first, that the police report by Mitchell's client "undermined" her claims because it named two white men and not Combs (FAC ¶¶ 7-8, 54, 62, 95); and second, that Mitchell's adversary in an unrelated case sought sanctions against her for allegedly bribing a witness (*id.* ¶¶ 8, 10, 34, 49, 57, 60, 64, 78, 95).[14]  Neither theory holds water.  Plaintiff ignores

---

[14] The FAC also points to a complaint filed by the Florida Bar against Mitchell in an unrelated case.  *See* FAC ¶¶ 35-39.  But that complaint was filed on July 24, 2025, so it is irrelevant to Nexstar's knowledge when publishing the Challenged Reports nine months earlier. *See* Complaint, *Florida Bar v. Mitchell*, No. SC2025-1091 (Fla. Sup. Ct. July 24, 2025) ("Florida Bar Complaint").

that the September 27 Report was a live interview of Mitchell, and the FAC does not allege Nexstar knew the contents of the police report before the interview. Nor does it allege Nexstar's knowledge of a sanctions threat against Mitchell in an unrelated action.[15]  "While a speaker may be found to have acted with actual malice if a plaintiff can allege that the speaker specifically reviewed a contrary publication previously, [they are] not otherwise required to seek out contrary stories." *McDougal*, 489 F. Supp. 3d at 187.

The recent decision in *Nunes v. NBCUniversal Media, LLC*, 2025 WL 2199115 (S.D.N.Y. Aug. 1, 2025), is instructive.  In *Nunes*, the plaintiff alleged MSNBC relied on information in a *Politico* article that was cast into doubt by a later *Politico* article.  The court rejected this theory of actual malice, explaining that the network "had no duty to make an independent investigation into the [original] article" to ensure later articles had not undermined it.  *Id.* at *8.  So too here: if actual malice cannot be inferred from a published news article, it certainly cannot arise from an alleged failure to discover information buried in unrelated court dockets.[16]  *See* FAC ¶ 58 (alleging police report was attached to filing in 2019 domestic violence proceeding in California state court).

***Third****,* none of Plaintiff's conclusory allegations about "motive" or "bias" plausibly plead actual malice.  *See* FAC ¶¶ 3, 50, 78, 80.  Asserting that Nexstar "profited" from reporting does not suffice.  *Bloom v. A360 Media LLC*, 735 F. Supp. 3d 466, 474 (S.D.N.Y. 2024) ("desire to turn a profit" not sufficient for actual malice).  Nor does alleging that "Defendants" acted "in bad faith, as part of a deliberate effort to damage Mr. Combs's reputation . . . [and] poison the public's

---

[15] Sanctions were denied in that unrelated matter. *See* Florida Bar Complaint at 7.

[16] Even contradictory information in a publisher's *own prior articles* is not sufficient to show actual malice, *e.g.*, *McDougal*, 489 F. Supp. 3d at 187; *Sullivan*, 376 U.S. at 287-88.

perception of him and deprive him of a fair trial," FAC ¶ 80.[17]   *Harte-Hanks*, 491 U.S. at 665

("[M]otive in publishing a story . . . cannot provide a sufficient basis for finding actual malice.");

*1st Amend. Praetorian*, 2025 WL 949575, at \*9 (allegations of preconceived narrative and "quest

to sensationalize news" insufficient for actual malice).

 ***Finally***, Plaintiff fails to "bring home" the requisite knowledge to individuals at Nexstar

responsible for each of the Challenged Reports.  *Sullivan*, 376 U.S. at 287; *accord Dongguk Univ.

v. Yale Univ.*, 734 F.3d 113, 123 (2d Cir. 2013).  General allegations about what an organization

allegedly "knew" are not sufficient.  *See Bloom*, 735 F. Supp. 3d at 473 (allegations "vaguely

referenc[ing]" what corporate defendant knew "cannot support an inference of actual malice").

 Because none of Plaintiff's allegations suffice to plead actual malice by Nexstar as a matter

of law, his claim against Nexstar should be dismissed.

## B. To the Contrary, the FAC Shows a Lack of Actual Malice by Nexstar

 Not only does the FAC fail to plead actual malice, it actually shows a *lack* of actual malice

by Nexstar.  ***First***, the gist of the challenged Statements—that there were videos depicting Combs

and celebrities engaging in sexual activity at "freak-offs," and that a civil suit would allege Combs

sexually assaulted a woman and directed another man to engage in sexual acts with her while he

watched—were hardly "inherently improbable."  *St. Amant*, 390 U.S. at 732.  Nexstar's reporting

followed (1) numerous civil lawsuits filed against Combs, including allegations of sexually

assaulting minors, drugging, and video recording sexual assaults; (2) published video footage of

Combs violently attacking a romantic partner; and (3) a federal indictment against Combs for

racketeering, sex trafficking, and prostitution-related charges, with allegations that Combs coerced

---

[17] This allegation also constitutes impermissible group pleading. *See TheECheck.com, LLC v. NEMC Fin. Servs. Grp. Inc.,* 2017 WL 2627912, at \*2 (S.D.N.Y. June 16, 2017) (complaint "generally attribut[ing] misconduct to the 'Defendants' collectively" and failing to "differentiate between the [multiple] defendants" subject to dismissal).

others into sexual acts with drugs and recorded those acts. *Supra* pp. 2-5. Actual malice is measured by the publisher's knowledge "at the time of publication," *Bose*, 466 U.S. at 512, and at that time, the challenged Statements were consistent with other allegations that were widely reported and being actively litigated by civil plaintiffs and prosecuted by the federal government.

**Second**, far from Nexstar relying on "anonymous" or "unverified" sources, *St. Amant*, 390 U.S. at 732, the FAC alleges Burgess and Mitchell were personally involved in Combs's criminal and civil proceedings and frequently interviewed on these topics. Burgess appeared before the grand jury in the criminal case against Combs, *see* FAC ¶ 65, and had claimed to possess the same digital evidence "numerous times to the press and in social media appearances," *id.* ¶ 24. Likewise, Mitchell—who represented Burgess for his grand-jury testimony, *id.* ¶ 63—had spoken with "various media outlets" about claims against Combs, *id.* ¶ 44.[18]

**Finally**, the Challenged Reports show Mitchell and Burgess repeatedly confirming that they had evidence to support their claims and providing specific details in response to questions from NewsNation hosts. For example, Mitchell confirmed in the September 27 Report that she had "seen stills of the video" and could verify "that it exists, that it's real, that the other person in the video is very visible," and that "the video is pornographic in nature." FAC ¶ 45; McNamara Decl. Ex. 1 at 13:04-21, Ex. 4 at 5. Mitchell provided details of her client's forthcoming lawsuit and described conversations with her client; she stated there was a witness to the alleged events

---

[18] Plaintiff's original pleading included even more allegations about prior media interviews of Mitchell and Burgess. *See, e.g.*, ECF No. 16 ¶ 3 ("Burgess repeated [the claim that he possessed Freak Off tapes] many times to anyone who would listen, including reporters for major news outlets"); ¶ 11 ("[Mitchell] repeatedly promoted herself as an authority on the federal grand jury investigation into Mr. Combs"); ¶ 55 ("Mitchell shamelessly promoted herself as a lawyer who had filed several cases against Sean Combs for sexual assault"). In response to Nexstar's motion to dismiss the prior complaint, Plaintiff has now removed these allegations from the FAC and replaced them with conclusory allegations that Mitchell and Burgess were "unreliable," *e.g.*, FAC at 6, 9. But Plaintiff cannot erase his own previous factual allegations in an amended pleading; this kind of gamesmanship has long been rejected by courts in this District, who may "accept the facts described in the original complaint as true." *Colliton v. Cravath, Swaine & Moore LLP*, 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008); *accord Trump v. Simon & Schuster, Inc.*, __ F. Supp. 3d __, 2025 WL 2017888, at *10 n.10 (S.D.N.Y. 2025) (collecting cases).

and a police report from that night, and that she was actively trying to get information from police about their investigation. FAC ¶¶ 52-53; McNamara Decl. Ex. 1 at 8:46-9:13, 11:15-50; Ex. 4 at 3-5.[19]  In the October 7 Report, Mitchell asserted she would be filing a "complaint lay[ing] out all of the details" of her client's allegations.  *Id.* Ex.2 at 7:53-8:53, Ex. 5 at 3.

Similarly, in the October 31 Report, Burgess and Mitchell were interviewed shortly after Burgess testified before the grand jury and spoke with media about his testimony.[20]  Burgess provided details about what he observed on the tapes in response to the host's questions, FAC ¶ 66, and that he stood behind the authenticity of the materials, asserting that he had "spoke[n] to [Kim Porter] probably like six hours before" receiving the materials, *id.* ¶ 67.  The FAC's conclusory assertion that this statement was "facially improbable" because Porter's children had denied Burgess's claims, *id.* ¶¶ 69, 95, does not move the needle.  "[P]ublication in the face of a denial" does not constitute actual malice, *Prince*, 2023 WL 4492413, at *10 (cleaned up), and "including denials of a plaintiff"—as the Report did, McNamara Decl. Ex. 2 at 4:52-5:13, Ex. 6 at 2—"rebuts [an] inference of actual malice." *Biro*, 963 F. Supp. 2d at 283; *accord Tah v. Glob. Witness Publ'g,*

---

[19] Contrary to the FAC's characterizations, Mitchell clarified that what she planned to include was not the police report but the complaint number from the incident.  *See* McNamara Decl. Ex. 1 at 15:34-53, Ex. 4 at 6 ("As soon as I file my lawsuit in civil court, I will be attaching the criminal complaint that was made—*I'll attach the number so everyone can see that this is a real number, and can go to the police department there and request their own copy of that police report that was made back in 2018*." (emphasis added)).  Regardless, the contents of the later-filed complaint are not relevant to actual malice.  *See Bose*, 466 U.S. at 498 (actual malice measured "at the time of publication"); *Herbert v. Lando*, 781 F.2d 298, 305-06 (2d Cir. 1986) ("It is self-evident that information acquired after the publication of [allegedly] defamatory material cannot be relevant to the publisher's state of mind or his alleged malice at the time of publication.").

[20] The FAC also deleted allegations that Mitchell and Burgess "confirmed that Burgess was subpoenaed by the federal government to provide evidence in the Combs criminal case," ECF No. 16 ¶ 46, and that "Burgess and Mitchell's [claims about Freak Off videos] led federal prosecutors to subpoena him to a grand jury sitting in New York, New York.  On the day he appeared before the grand jury, Burgess and Mitchell gave an interview on the courthouse steps in which they acknowledged that U.S. Marshals had visited his residences to ensure compliance with the subpoena. In this and subsequent press and social media appearances, Burgess and Mitchell continued to repeat [their claims]." ECF No. 16 ¶ 43. These allegations should be considered for the same reasons explained *supra* n. 18.

*Inc.*, 413 F. Supp. 3d 1, 14 (D.D.C. 2019) (no actual malice where report "included excerpts from Plaintiffs' denials"), *aff'd*, 991 F.3d 231, 242 (D.C. Cir. 2021).

Because the FAC not only fails to plausibly plead actual malice as to Nexstar, but also affirmatively *undercuts* any such showing, the defamation claim against Nexstar should be dismissed with prejudice.

## II.   PLAINTIFF'S DEFAMATION CLAIM FAILS ON INDEPENDENT GROUNDS

### A.   Plaintiff Fails to Plead a Defamation by Implication Claim and Instead Challenges Protected Opinions and Speculation

None of the Statements are verbatim quotes from the Challenged Reports.  Instead, the FAC presents allegedly defamatory *implications* arising from those reports—some of which are premised on misrepresenting what are clearly *opinions* expressed by interviewees as statements of fact.  To prevail on a defamation-by-implication claim, even at the pleading stage, Combs "must make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37-38 (1st Dep't 2014); *accord, e.g.*, *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 466 (S.D.N.Y. 2012).  Where a publication "attributes [an] accusation" to its source and "supplie[s] the other side of the story," the implication is not actionable.  *Kesner v. Dow Jones & Co.*, 515 F. Supp. 3d 149, 173 (S.D.N.Y. 2021).

Moreover, a "statement on matters of public concern must be provable as false before there can be liability under state defamation law, at least in situations, like the present where a media defendant is involved."  *Flynn v. Cable News Network, Inc.*, 2024 WL 1765566, at *4 (S.D.N.Y. Apr. 24, 2024) (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 19-20 (1990)).  Whether a statement is constitutionally protected opinion is a question of law for the Court.  *Gross v N.Y. Times Co.,* 82 N.Y.2d 146, 152-53 (1993).

Finally, there can be no viable defamation claim where the "gist" or "sting" of the challenged statement is "substantially true," that is, it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson*, 501 U.S. at 517 (citations omitted).

### 1.    Statement 1

The FAC alleges that by publishing Burgess's interview in the October 31 Segment, Nexstar asserted that "there existed video recordings of Plaintiff sexually assaulting minors and celebrities." This is not an actionable implication. Burgess's "speculation" as to whether the people in the videos "*appeared* to be *potentially* victimized" because they "*appeared* to be either inebriated or intoxicated or under the influence of drugs" is a non-verifiable characterization of what Burgess said he witnessed. McNamara Decl. Ex. 3 at 8:43-9:52; Ex. 6 at 2-3 (emphases added). Such "non-verifiable characterization[s]" are "not actionable." *Cummins v. Suntrust Cap. Markets, Inc.*, 649 F. Supp. 2d 224, 247 (S.D.N.Y. 2009). *See also Coleman v. Grand*, 523 F. Supp. 3d 244, 263 (E.D.N.Y. 2021) (speaker's claim of being "victim" in relationship with plaintiff was protected opinion).

In the same way, Burgess's "speculation" that some individuals in the videos "*seemed* to be *potentially* minors" is clearly Burgess's subjective assessment that the individuals looked young, not an objective assertion about their actual ages and the local law of consent where the party took place. McNamara Decl. Ex. 3 at 8:29-10:04; Ex. 6 at 3-4 (emphasis added). And it is well established—including by evidence at Combs's criminal trial—that Combs orchestrated and took part in "freak-offs" that involved drugs, alcohol, and sex with a wide range of people, including celebrities, and that many of these events were recorded on video. Regardless of whether Burgess actually possessed videos of these freak-offs, the defamatory "sting"—that such videos exist—is substantially true.

20

Finally, Plaintiff cannot show that Nexstar "endorsed" its proposed implication because Nexstar specifically stated that Combs had "not been convicted of any crimes, and so far everything against him is an allegation." McNamara Decl. Ex. 3 at 13:46-14:28, Ex. 6 at 6. Given that disclaimer, Plaintiff cannot assert that Nexstar was implying the truth of what it clearly described as unproven allegations. *See, e.g.*, *Kesner*, 515 F. Supp. 3d at 173 ("[T]o the extent that the article implied that Kesner failed in his role as a gatekeeper, the article expressly attributes that accusation to the detailed and pungent MabVax Complaint. The article nowhere adopted MabVax's thesis. To the extent Kesner is distressed with the implication . . . , his grievance is thus with VabMax.").

### 2.    Statement 2

Statement 2 also cannot support an actionable claim. In the September 27 Segment, host Laura Ingle noted that "we know that [Combs] videotaped a lot of activities at his home" and asked Mitchell if there might be hidden cameras. Mitchell replied that "the [other] person isn't, like, looking into the video. So *it's, to me, doesn't seem like that person knows they're being videotaped*." McNamara Decl. Ex. 1 at 13:21-53, Ex. 4 at 6 (emphasis added). This is plainly Mitchell's speculation, expressly premised only on looking at the video. *See Sandmann v. N.Y. Times Co.*, 617 F. Supp. 3d 683, 691 (E.D. Ky. 2022) (witness's statement that plaintiff "blocked" him based on observation that plaintiff "stood in my way" was not objectively verifiable but "simply conveying his view of the situation"). Such protected opinion cannot form the basis for an actionable implication of fact.

### 3.    Statement 4

Plaintiff fares no better with Statement 4. First, it is undisputedly true that Mitchell's client *did* file a police report stating she was sexually assaulted in March 2018. To the extent Plaintiff is alleging that the September 27 Report implied Combs was named in the report, that is not a

reasonable implication. The NewsNation host asked Mitchell if Combs was named in the report, and Mitchell stated "I don't think so"—she further explained why her client said she did not want to disclose that information to police. McNamara Decl. Ex. 1 at 15:57-16:13, Ex. 4 at 7. *See Wang v. Sussman*, 2025 WL 81355, at *2 (S.D.N.Y. Jan. 13, 2025) (no endorsed implication that plaintiff was fired because of certain allegations of sexual misconduct where article specifically stated he was fired due to "*unrelated* allegations of sexual misconduct" (emphasis added)).

#### 4.    Statement 5

Finally, Statement 5 is premised on non-actionable opinion and speculation. In the segment, Mitchell said her client alleged being doused with a liquid prior to the alleged assault, and that her body became "limp" during the attack. Mitchell explains that she did some "research" leading her to believe that "oil in general is used as a conduit for specific drugs." Based on this, Mitchell posited "it *seems to me* that there were some types of drugs mixed into" the substance allegedly placed on her client. McNamara Ex. 2 at 10:34-11:30, Ex. 5 at 4 (emphasis added). Mitchell "did not pretend to have the inside dope" as to whether or not the substance contained drugs, *see Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993), and her speculation about that possibility is not actionable.

#### B.    Statements 1 and 2 Are Protected by New York's Fair-Report Privilege

Statements 1 and 2 are also absolutely privileged under New York law as a "fair and true report" of Burgess's grand-jury testimony. Section 74 of New York Civil Rights Law precludes liability "for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding." *Id.* The privilege "implement[s] the public policy in favor of encouraging publication and dissemination of judicial decisions and proceedings as being in the public interest." *Beary v. W. Publ'g Co.*, 763 F.2d 66, 68 (2d Cir. 1985). It "exists to protect the media while they gather the information needed for the public to exercise effective oversight

of the government . . . even when they report on official action that the government would like to keep secret." *Gubarev v. Buzzfeed, Inc.*, 340 F. Supp. 3d 1304, 1317 (S.D. Fla. 2018) (applying New York privilege to classified report of government proceeding).

"New York courts adopt a liberal interpretation of the 'fair and true report' standard of § 74 so as to provide broad protection to news accounts of [official] proceedings." *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 93 (2d Cir. 2017). In determining whether a news report is "fair and true," the language "should not be dissected and analyzed with a lexicographer's precision." *Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 68 (1979). Rather, it "is deemed a fair and true report if it is substantially accurate"; that is, if "it does not produce a different effect on a reader than would a report containing the precise truth." *Friedman*, 884 F.3d at 93. Applying these principles, courts regularly dismiss defamation claims based on the fair-report privilege. *See, e.g.*, *Kinsey v. N.Y. Times Co.,* 991 F.3d 171, 180 (2d Cir. 2021); *Cummings v. City of New York*, 2021 WL 1163654, at *14-15 (S.D.N.Y. Mar. 26, 2021), *aff'd*, 2022 WL 2166585 (2d Cir. June 16, 2022); *BYD Co.*, 531 F. Supp. 3d at 821-22.

Combs's criminal investigation, including the grand-jury process, is an "official proceeding" within the scope of Section 74, which applies to both "ongoing investigation[s]" and "completed investigation[s]," whether or not "the activities of the [investigating] agency [are] public." *Freeze Right Refrigeration & Air Conditioning Servs. v. City of New York*, 101 A.D.2d 175, 182 (1st Dep't 1984). The privilege shields "statements made by those connected to the" proceeding, *Daleiden v. Planned Parenthood Fed'n of Am.*, 2022 WL 1013982, at *2 (2d Cir. Apr. 5, 2022), and information derived from "secondary sources," *Cholowsky v. Civiletti*, 69 A.D.3d 110, 115 (2d Dep't 2009), as well as "the release of background material with regard to the case," *Kesner*, 515 F. Supp. 3d at 172 (citation omitted). There is "no requirement that the publication

report the plaintiff's side of the controversy" to apply the privilege. *Cholowsky*, 69 A.D.3d at 115.

The fair-report privilege protects Nexstar from liability over Statements 1 and 2. The NewsNation host made clear her interview concerned Burgess's grand-jury testimony and subpoenaed materials.[21]  And the "effect on [the viewer]" of Statements 1 and 2 is no different than that of the underlying proceedings, including the federal indictment.[22]  *Friedman*, 884 F.3d at 93; *see also supra* § I.B.  That "grand jury proceedings are secret" (FAC ¶ 65) does not void the privilege, since it applies to "classified proceedings," *Friedman*, 2021 WL 1040531, at *6, and non-public investigations, *Freeze Right*, 101 A.D.2d at 182; *accord Gubarev*, 340 F. Supp. 3d at 1314.  Because Statements 1 and 2 are absolutely privileged, Plaintiff's claim based on these statements fails as a matter of law.

## III.    NEXSTAR IS ENTITLED TO FEES UNDER NEW YORK'S ANTI-SLAPP LAW

Because this matter arises from Nexstar's "exercise of the constitutional right of free speech in connection with an issue of public interest,"[23] N.Y. Civ. Rights Law § 76-a(1)(a), New York's Anti-SLAPP Law applies—and provides a mandatory award of attorney's fees should Nexstar prevail on this motion.  While the Second Circuit has not yet weighed in, Judge Oetken's thoughtful opinion in *Bobulinski* persuasively explains that the fee-shifting provision is a matter of New York substantive law, and that the statutory entitlement to fees is satisfied where a party

---

[21] *See, e.g.*, McNamara Decl. Ex. 2 at 4:24-28, Ex. 4 at 2 ("[M]y next guest just testified before the federal grand jury."); Ex. 2 at 4:52-5:01, Ex. 4 at 2 ("On those drives, *the witness says*, eight videos featured eight celebrities at Diddy freak offs or parties . . . ." (emphasis added)).

[22] Indictment ¶¶ 3, 12(a) (alleging, *inter alia*, that Combs engaged in "verbal, emotional, physical, and sexual" abuse and controlled women by "distributing narcotics to them"; that he "arranged, directed, masturbated during, and often electronically recorded" "elaborate and produced sex performances" called "Freak Offs"; that he "used force, threats of force, and coercion[] to cause victims to engage in" Freak Offs; that he "distributed a variety of controlled substances to victims, in part to keep the victims obedient and compliant"; and that he "kept videos he filmed of victims engaging in sex acts").

[23] The Challenged Reports are also "communication[s] in a place open to the public or a public forum in connection with an issue of public interest" under Section 76-a(1)(a).  *E.g., Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 332 (S.D.N.Y. 2021) (Anti-SLAPP Law applied to online publications).

prevails on a Rule 12(b)(6) motion.  758 F. Supp. 3d at 182-89.  Because Nexstar's success on this motion necessarily means Plaintiff's claim against Nexstar lacks a "substantial basis" in law, Nexstar is entitled to fees.  N.Y. Civ. Rights Law § 70-a(1).

## CONCLUSION

For these reasons, Nexstar respectfully requests dismissal of all claims against Nexstar with prejudice and an award of attorney's fees.

Dated: New York, New York
          September 19, 2025

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ Elizabeth A. McNamara*
Elizabeth A. McNamara
Alison Schary
Mary E. Goetz
1251 Avenue of the Americas, 21st Floor
New York, NY  10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax

*Counsel for Defendant Nexstar Media Inc.*

TO:    Erica Ashley Wolff
         Sher Tremonte LLP
         90 Broad Street
         New York, New York 10004
         212-202-2600
         Fax: 212-202-4156
         Email: ewolff@shertremonte.com

         Michael Tremonte
         Sher Tremonte LLP
         90 Broad Street
         New York, NY 10004
         212-202-2603
         Fax: 212-202-4156
         Email: mtremonte@shertremonte.com

         *Counsel for Plaintiff*

## <u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS</u>

I hereby certify that the word count of this memorandum of law complies with the word limits of Local Civil Rule 7.1(c). According to the word-processing system used to prepare this reply memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1(c) is 8,691 words.

I certify under penalty of perjury that the foregoing is true and correct.

Dated:   September 19, 2025          */s/ Elizabeth A. McNamara*
Elizabeth A. McNamara
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas
21st Floor
New York, New York 10020
Telephone:  (212) 489-8230
Facsimile:  (212) 489-8340
lizmcnamara@dwt.com

*Counsel for Defendant Nexstar Media Inc.*

## APPENDIX:  GLOSSARY OF CHALLENGED STATEMENTS

**Statement 1**:  "That there existed video recordings of Plaintiff sexually assaulting minors and celebrities. Defendants Burgess, Mitchell, and NewsNation published such  statements, as described more fully above, on or about October 31, 2024."  FAC ¶ 86(a).

**Statement 2**:  "That Plaintiff secretly recorded himself having sex with people who did not know they were being recorded. Defendants Mitchell and NewsNation published such statements, as described more fully above, on or about September 27, 2024 and October 31, 2024."  FAC ¶ 86(b).

**Statement 3**:  "That Plaintiff used secretly recorded videos of him having sex with people who did not know they were being recorded in order to threaten or extort sexual partners. Defendant Mitchell published such statements, as more fully described above, on January 14, 2025."  FAC ¶ 86(c).

**Statement 4**:  "That a police report existed that corroborated the outrageous allegations made by Mitchell's client that she was raped by Plaintiff in Northern California in March 2018. Defendants Mitchell and NewsNation published such statements, as described more fully above, on or about September 27, 2024."  FAC ¶ 86(c).

**Statement 5**:  "That Combs used drug-laced baby oil to incapacitate people. Such statements were published by Defendants Mitchell and NewsNation, as described more fully above, on or about October 7, 2024."  FAC ¶ 86(d).

**Statement 6**:  "That possessing the purported videos of Combs sexually assaulting minors and celebrities and possessing a tell-all memoir of the mother of Combs's children, put Burgess in danger for his life. Defendant Burgess published statements, as described more fully above, on or about October 31, 2024."  FAC ¶ 86(e).

**Statement 7**:  "That Plaintiff sexually assaulted and/or threatened, exploited, or secretly recorded in sex acts 'hundreds, maybe thousands of people.'  Defendant Mitchell published such statements, as described more fully above, on January 14, 2025."  FAC ¶ 86(f).