𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔆𝔬𝔲𝔯𝔱
𝔖𝔬𝔲𝔱𝔥𝔢𝔯𝔫 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔑𝔢𝔴 𝔜𝔬𝔯𝔨
--------------------------------------------------------X

SEAN COMBS,

                    *Plaintiff*,                    Civil Action No.
                                                    25-cv-00650 (JPC)


          - *against* -


COURTNEY BURGESS, ARIEL MITCHELL, and
NEXSTAR MEDIA INC.,

                    *Defendants*.
--------------------------------------------------------X


## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT MITCHELL'S
## <u>MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT</u>


STEVEN A. METCALF II, ESQ.
Metcalf & Metcalf, P.C.
99 Park Avenue, Suite 810
New York, NY 10016
(*Office*) 646.253.0514
(*Fax*) 646.219.2012

*Attorney for Defendant Ariel Mitchell*

Defendant Ariel Mitchell (hereinafter "Defendant Mitchell", "Ariel", or "Ms. Mitchell") respectfully submits this memorandum of law in support of her motion to dismiss, with prejudice, Plaintiff Sean Combs' First Amended Complaint ("FAC") against her. (*See* ECF Doc.#: 61).

## I.    <u>OVERVIEW</u>

Plaintiff is a public figure, and American businessman who has successfully rebranded himself countless times in the last three decades. Plaintiff – amongst ciaos – and despite countless civil lawsuits and a criminal federal indictment pending sued three parties consisting of two individuals, Courtney Burgess and Ariel Mitchell (collectively referred to as "individual Defendants"), and a news media corporation, NEXSTAR MEDIA, INC. (referred to a "corporation Defendant").

Overall, Plaintiff's defamation claim against Mitchell fails on various grounds to state a claim upon which relief can be sought. Additionally, Plaintiff's claims fail on independent grounds such as Mitchell's statements consisting of nonactionable opinions; Mitchell's statements being protected under qualified privilege, which Plaintiffs has not overcome by pleading actual malice. Even if plead, Mitchell's actions in not speaking on the alleged statements serves as the functional equivalent to negating malice. Plaintiff's First Amended Complaint ("FAC") attributes the last statement to Mitchell to have taken place on January 14, 2025. While a news journalist or broadcast station can issue a retraction, Mitchell as an individual

attorney is not in such a position – and in not continuing to speak on alleged defamatory utterances is a defense to curtail damages or negate malice. Simply put, Plaintiff's claims and FAC is facially defective, and the Court should dismiss Plaintiff's claim against Mitchell with prejudice.

## II.    BACKGROUND

### A.    INDIVIDUAL PARTIES

1.    Plaintiff Sean Combs is "Bad Boy" music icon, who has achieved unsurmountable stardom and wealth over the last 30 (thirty) years, which the entire world has seen play out through every form of media possibly known.

2.    In accumulating wealth worthy of Forbes recognition, Plaintiff is known for his business ventures in music, fashion, and sprits endless promotion of the alcohol brand Ciroc Vodka. Despite his success, for decades there have been rumors and conspiracy theories that Plaintiff engaged in questionable, or even criminal behavior.

3.    In November 2023 shocking allegations were spread about the details alleged in the complaint filed in the Southern District of New York ("SDNY") lawsuit by former girlfriend for more than a decade, Cassie Ventura. From there an influx of lawsuits at the end of 2023 and beginning of 2024, which has amounted to approximately 100 civil cases being filed against Plaintiff in less than a two-year period. Further, this summer, Plaintiff was subject to a criminal trial in the SDNY,

and was convicted on transportation for the purposes of prostitution, two counts – the less serious charges set forth in the indictment against Combs. Plaintiff is scheduled to be sentenced on October 3, 2025.

4.    Amidist this endless coverage, filled with some of the most heinous allegations being spread, Plaintiff sued Defendant Ariel Mitchell – a Miami based lawyer, who sued Plaintiff in the past.

5.    Relevant here, Mitchell was the attorney sitting next to Defendant Courtney Burgess – a guest of the NewsNation broadcast – spoke about a series of videos claiming to include Plaintiff.

6.    Plaintiff's FAC alleges that Defendant Courtney Burgess is "a one-time industry bit player" and "a fringe character" with questionable professional credentials in the music industry. (*See* FAC, ECF Doc. 61 at p. 5, ¶ 22). The FAC alleges despite his claims of longstanding involvement in music, "there exists no public record of any professional achievements" and he "left no detectable footprint on the industry prior to his recent campaign to malign Mr. Combs." (*Id.* at p. 6).

7.    The FAC provides a detailed account of Burgess's appearance on the "Attwood Unleashed" YouTube channel, which is described as a significant instance of him fueling the media spectacle. Specifically, the FAC alleges "In one such interview, broadcast October 31, 2024 on the 'Attwood Unleashed' YouTube

channel, Burgess elaborated on his false claim that he received these materials directly from Kim Porter." (*Id.* at p. 6, ¶ 24).

8.    Further alleged is that "[o]n the broadcast, Burgess falsely claimed that Ms. Porter enlisted the help of a music industry mutual acquaintance to put her files in Burgess's hands . . . Burgess went on to claim, again falsely, that . . . the first of several flash drives containing the memoir and videos that Ms. Porter supposedly intended for him to have." (*Id.* at p. 6, ¶ 25).

9.    More importantly, Burgess, Attwood, and Scoville discussed images presented to the audience as supposedly originating from these tapes. Burgess confirmed the authenticity: "Attwood asked, 'is this picture legit?' [where] Burgess responded, 'yes, yes, definitely." (*Id*. at p. 5, ¶ 20).

10.    Burgess continued with sensational and speculative commentary, including "comparing Mr. Combs to 'Lucifer', claiming that Mr. Combs, like Lucifer, 'destroyed bodies, he destroyed careers. He could get you where you want to be at, but you're going to give up the back end.'" (*Id*. at p. 5, ¶ 20).

11.    At all times relevant to this lawsuit, individual Defendant Burgess had attorney-client privilege with Mitchell. Nonetheless, the FAC contains conclusory statements such as "Burgess peddled his false and defamatory statements about Mr. Combs to promote himself on social media. Mitchell did the same. Both seek to

capitalize on the resulting publicity for financial gain." (*Id.* at p. 2, ¶ 5).

## B. CORPORATION DEFENDANT NEXSTAR, BETTER KNOWN AS NEWS NATION

12.    The FAC alleges a first broadcast, on or about September 27, 2024, where "NewsNation, upon information and belief, conducted no investigation before broadcasting the false allegations [of Mitchell], though it easily could have done so." (*Id.* at p. 12, ¶ 49). That same broadcast the FAC alleges contained an "interview with Mitchell without fact checking Mitchell's false and injurious accusations. NewsNation did not even reach out to Mr. Combs' representatives for comment." (*Id.* at p. 14, ¶ 57).

13.    The inference here is that September 2024 broadcast where Mitchell appeared where a video was described as a "catch and kill" – is linked to a "October 31, 2024" broadcast, where Burgess and Mitchell appeared on News Nation's Banfield show, after Burgess was subpoenaed to the grand jury presiding over Plaintiff's criminal matter in the SDNY. (*Id.* at p. 16, ¶ 63).

14.    The October broadcast consisted of "The host introduc[ing] the interview by announcing that Burgess 'just testified before a federal grand jury. He says he was in possession of a trove of digital evidence of Diddy's "freak offs" and parties.' " (*Id.*).

15.     The FAC claims the host stated "because the eight people in the videos, the eight celebrities in the videos were allegedly victims of sex crimes, we know who they are, but we will not be naming them, famous or not." (*Id.* at ¶ 64).

16.     "This statement was false and the NewsNation host knew it was false or, at a minimum, recklessly disregarded whether the statements were true or false because . . . [they had] notice that her sources, Burgess and Mitchell, were not credible." (*Id.* at ¶ 64).

17.     The common theme in the FAC, in a conclusory allegation was that News Nation profited from falsehoods, in that "NewsNation has likewise profited from repeating and amplifying Burgess's and Mitchell's lies, drawing viewers and promoting its programming based on wholly unsubstantiated lies that would have been revealed as false had NewsNation conducted even the most modest fact checking." (*Id.* at p. 14, ¶ 58).

## C. ATTORNEY ARIEL MITCHELL AND ALLEGED DEFAMATORY STATEMENTS

18.     Ariel Mitchell is a civil attorney based in Miami, Florida known for litigating high-profile sexual assault cases. The FAC mentions Mitchell, in 2021 filed a lawsuit against Trey Songs, and then in 2022 against rapper Chris Brown. (*Id.* at p. 10-11, ¶ 39).

19.     Without fail and without referencing Florida court findings that the allegation was unsubstantiated, the FAC seeks to presume that Mitchell first tried to

bribe a witness in the Trey Songs matter. (*Id.* at p. 7-8, ¶ 25). Then the allegations conclude she "launched a media tour in which she repeatedly promoted herself. . . " after suing Plaintiff. (*Id.* at p. 8, ¶ 28).

20.    The FAC attempts to retroactively connect Mitchell to Burgess by citing her September 27, 2024 appearance on NewsNation, in which she discussed purported sex tapes being circulated in Hollywood. However, the FAC is devoid a single allegation that Mitchell had met or spoken with Burgess prior to that media appearance. The Plaintiff alleges only that "sometime in or around September 2024, Burgess contacted Mitchell seeking to team up with a lawyer", but provides no timeline or proof that they had any coordinated relationship at the time of her NewsNation statements. (*Id.* at p. 8, ¶ 23).

### i.    *September 2024 Broadcast Regarding California Lawsuit and Police Report Misstatement*

21.    The FAC alleges Mitchell previewed a lawsuit on NewsNation involving a different client – unrelated to Burgess – alleging an assault in Northern California. Specifically, she told the NewsNation host: "We also have a police report . . . that was made in 2018." (*Id.* at p. 10, ¶ 38). She also said: "Yes, as soon as I file my lawsuit in civil court, I will be attaching the criminal complaint that was made." (*Id.* at ¶ 39).

22.    The FAC alleges that two weeks later, when the lawsuit was filed, "the lawsuit did not attach any police report." (*Id.* at p. 10, ¶ 40). Further, the FAC then

alleges that a police report did "exist", but that such "thoroughly discredited [Mitchell's client's] accusations against Mr. Combs: it alleged that the client was tragically raped by two *white* men. . .". (*Id.* at ¶ 7).

23.    Overall, the September 27, 2024 is alleged to be defamatory because it was false that a police report existed that corroborated the outrageous allegations that her client was raped by Plaintiff in Northern California in March 2018. (hereafter referred to as the "September statement").

### ii.    *October 7, 2024 Appearance with NewsNation and October Show with Burgess.*

24.    On October 7, 2024, Mitchell appeared on NewsNation. On this broadcast, the FAC alleges that Mitchell made defamatory statements in substance that "Combs used drug-laced baby oil to incapacitate people." (*Id.* at ¶ 86(d))[1]. These independent media statements from Mitchell clearly concern an ongoing litigation, about which are wholly irrelevant to linking Mitchell to Burgess or for establishing the nature of statements were defamatory and made for purposes of defaming Plaintiff.

25.    Then three weeks after Mitchell's independent media statements, she appeared with Burgess on NewsNation's *Banfield* show on October 31, 2024. During that interview, the host stated that On Burgess "says he was in possession of

---

[1] The September 27, 2024 and October 7, 2024 are referred to collectively as "Mitchell's independent media statements".

a trove of digital evidence of Diddy's 'freak offs' and parties," and recounted that "eight videos featured eight celebrities." (*Id.* at p. 11, ¶ 44).

26.     Worthy of mention is that Mitchell herself does not appear to make or affirm these specifics on-air. Rather, Plaintiff stretches Mitchell's presence to imply endorsement.

   **iii.    *Summary: September and October 7, 2024 Appearances (Mitchell on NewsNation) then January 14, 2025 (Mitchell Independent) and October 31<u>st</u> (Burgess and Mitchell).***

27.     Overall, the rendition of the FAC defamatory statements consist of 7 statements in total, 5 that pertain to NewsNation, and 6 pertaining to Mitchell as follows:

   (1)    Burgess, Mitchell and NewsNation stated there were videos of Plaintiff's assaulting minors (October 31, 2024 show)(*Id.* at ¶ 86(a));

   (2)    Mitchell and NewsNation published that plaintiff secretly recorded himself having sex with others who did not know about the recording (September 27, 2024 and October 31, 2024 shows)(*Id.* at ¶ 86(b));

   (3)    Mitchell stated Plaintiff used secretly recorded videos to extort others (January 14, 2025)(*Id.* at ¶ 86(c));

   (4)    Mitchell and NewsNation published that police reports exists to corroborate Mitchells client's allegations that plaintiff raped her in Northern California (September 27, 2024 shows)(*Id.* at ¶ 86(c. . . c));

(5)    Mitchell and NewsNation published that plaintiff used drug-laced baby oil to incapacitate people (October 7, 2024 show)(*Id.* at ¶ 86(d)); and

(6)    Mitchell stated Plaintiff sexually assaulted, used secretly recorded videos to extort "hundreds, maybe thousands of people." (January 14, 2025))(*Id.* at ¶ 86(f)).[2]

28.    The defamation claims in the FAC against Mitchell are meritless on their face and should be dismissed. Moreover, because all of the Mitchell statements are not defamatory and instead are intended to link to statements made by Burgess, the claims facially fail for the same reason.

29.    In alleging such connection between statements and the Mitchell, the FAC fatally assumes that Mitchell had met Burgess before such statements were made on October 31, 2024. However, these claims cannot even be alleged in a light most favorable to Plaintiff, because the individual Defendants did not meet or speak until Burgess was subpoenaed to the grand jury. Thus, all of Mitchell's statements regarding sex tapes are not defamatory or in support of any of the statements made by Burgess.

30.    Therefore, the FAC also facially fails on Mitchell's individual statements because the four statements attributed to Mitchell are either statements of pure opinion, rhetorical hyperbole, or those that cannot be objectively proven true

---

[2] Four (4) statements are alleged to have been made by Mitchell, the September 27th, October 7th, and January 14th statements.

or false. First, there is context to the police reports in the California case. Without reciting the details on the complaint in that case, there are allegations that nobody – even the police believed the "victim". If she made a police report about white men that were involved, the argument is how would the police believe that a celebrity was also involved. Basically, the context of the statements regarding police reports could be that at least one was made and that the police did not believe this woman. The rest of the statements, such as others knowing whether they were being recorded, or that baby oil was being used to "incapacitate" people – especially at a time where dozens on top of dozens of lawsuits containing allegations of astronomical amounts of baby oil and videos being used and seized – all of Mitchell's statements are pure opinion, hyperbole and incapable of being true or false.

31.    The FAC fails to allege defamatory statements against Mitchell and must be dismissed because the statements are not reasonably susceptible of a defamatory meaning; and such statements are protected by a qualified privilege, which plaintiffs have not overcome by a pleading of malice. In addition to performing her role as an attorney for matters involving the preparation of litigation or for pending litigation, such vicarious attributions and independent statements do not rise to the level of actual malice.

### III.    <u>STANDARD OF REVIEW</u>

32.    It is well settled that a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face", to survive a motion to dismiss. *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

33.    Despite all reasonable inferences being construed in a light most favorable to the plaintiff, the Court is "not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *In re Facebook, Inc., Initial Pub. Offering Derivative Litig*., 797 F.3d 148, 159 (2d Cir. 2015); *See also Iqbal*, 556 U.S. at 678 (highlighting "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

34.    Defamation suits involving public figures and matters of public concern implicate core First Amendment values. The U.S. Supreme Court has emphasized that erroneous statements are inevitable in free debate and that the First Amendment requires "breathing space" to ensure robust public discourse. If the media or individuals could be punished for every error, a chilling effect would freeze speech on controversial subjects, undermining democratic debate. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 271–72 (1964); *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 340–41 (1974); *Time, Inc. v. Hill*, 385 U.S. 374, 389 (1967).

## IV.    <u>LAW AND ARGUMENT</u>

35.    A claim for defamation requires the plaintiff to establish: "(i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) 'of and concerning' the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting defamation per se, and (vii) not protected by privilege." *de Rothschild v. Serlin*, 2021 WL 860227, at *7, No. 19-cv-11439 (S.D.N.Y. Mar. 8, 2021).

36.    Again, the Court must accept as true all well-pleaded factual allegations in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (highlighting that a court is "not bound to accept as true a legal conclusion couched as a factual allegation") (*quoting Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

37.    Determining whether a statement is defamatory requires an analysis of whether the statements at issue are "reasonably susceptible to the defamatory meaning imputed to [them]," requiring an assessment of not only the meaning of the words but also their context. *See Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997).

### A. POINT ONE: PLAINTIFF'S FAC FAILS TO STATE A CAUSE OF ACTION FOR A DEFAMATORY STATEMENT OF FACT

38.    Furthermore, only statements that are objectively verifiable as false are actionable; statements of pure opinion, rhetorical hyperbole, or those that cannot be objectively proven true or false should not meet the threshold for defamation liability. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19–20 (1990); *Gross v. New York Times Co.*, 82 N.Y.2d 146, 152–53 (1993); *Chau v. Lewis*, 771 F.3d 118, 128 (2d Cir. 2014).

39.    Here, as an initial matter, the allegations in the FAC fail as a matter of law to establish false statements of fact that are actionable under the defamation laws. The failure or non-attachment of a police report to a lawsuit compiled of hundreds of paragraphs of allegations fails to meet this burden. An attached of an exhibit is a supporting document by nature, where the FAC fails to state that the allegations in the complaint that the police report supported (encompassing the entire incident) are defamatory. Second, the mention of others shopping around a sex tape in Hollywood fails to allege facts, easily available to be confirmed or denied.

40.    In the dichotomy of "opinion" verse "fact" in a defamation context, all statements attributed to Mitchell are, as a matter of law, non-actionable "pure opinion" because, as a textual analysis confirms, they are "statement[s] of opinion which [are] accompanied by a recitation of the facts upon which [they are] based."

*Steinhilber v. Alphonse*, 68 N.Y.2d 283, 289, 508 N.Y.S.2d 901, 903 (1986); *See also Ansorian v. Zimmerman*, 215 A.D.2d 614, 627 N.Y.S.2d 706, 707 (2d Dept. 1995) (explaining written statements of parents and student seeking teacher's replacement because she was essentially "incompetent" were "not reasonably susceptible of a defamatory meaning, and constituted personal opinion and rhetorical hyperbole rather than objective fact" and therefore warranted constitutional protection).

41.    In this case, all three examples of statements attributed to Mitchell can only follow statements by others, and thus incapable of being proven false. The first consists of details involved in a California lawsuit, where the Plaintiff had to have sworn that the police were contacted at a minimum, otherwise a police report would not have been claimed to have been made surrounding the incident. The second regarding tapes being sold, also was based on statements of others claiming to have been selling a tape to a high bidder, and thus is not capable of being proven false.

42.    Lastly, the only allegations that connect Mitchell to Burgess, are statements made by Burgess. Mitchell is alleged to have sat next to Burgess after he showed the world pictures of what he claimed were taken from videos. The allegations consist of Burgess statements, and his property was shortly thereafter seized as part of a grand jury investigation conducted by the SDNY. Mitchell was representing a client, who was the one who made such statements.

43.     Logically, it follows that only statements "alleging facts can properly be the subject of a defamation action." *Rosner v. Amazon.com*, 18 N.Y.S.3d 155, 157 (2d Dept. 2015).  As a result, the statements were "not defamatory as a matter of law."

## B.   POINT TWO: PLAINTIFF'S FAC IS FACIALLY INSUFFICIENT BECAUSE THE FAC FAILES TO ADEQUATELY ALLEGE INJURIES OR SPECIAL DAMAGES

44.     Moreover, Plaintiff cannot adequately plead damages or injuries especially in light of the all the negative publicity he has received since at least November of 2023. The crux of a claim for defamation is an injury to the plaintiff's reputation. *Pisani v. Westchester County Health Care Corp.*, 424 F. Supp. 2d 710, 715 (S.D.N.Y. 2006) (*quoting Celle v. Filipino Reporter Enters. Inc*., 209 F.3d 163, 177 (2d Cir. 2000)).

45.     Here, Plaintiff cannot fairly plead, other than stating mere conclusory paragraphs, that Mitchell not attaching a report to a complaint, repeating that other want to sell sex tapes, and sitting next to Burgess as his lawyer, denied him his rights to a fair criminal trial, or that his trade was affected. *Cf. Sterling Doubleday Enters. L.P. v. Marro*, 238 A.D.2d 502, 503, 656 N.Y.S.2d 676, 678 (2d Dept. 1997).

46.     As mentioned above, the civil allegations levied against Plaintiff since September 2023, and the Southern District of New York's investigation, indictment, and superseding indictments filed against Plaintiff did more damage to plaintiff's reputation that anything alleged herein against Mitchell.  What's more, the evidence

elicited at trial was extreme to the point where any living person's reputation would be affected from such. Notwithstanding the same, Plaintiff did successfully defend against, and secured a not guilty verdict after trial on his RICO and Sex Trafficking charges against Ventura and Doe.

47.    However, the relevant facts here are that there are countless of other individuals with actual sexual allegations against Plaintiff, where any statement Mitchell made is pale in comparison and is merely a drop in the bucket, and thus legally insufficient to plead damages in this case. Furthermore, Plaintiff was convicted of two counts of transportation for the purposes of prostitution.

## C. POINT THREE: MITCHELL'S ACTIONS ARE PROTECTED BY QUALIFIED PRIVILEGE AND THUS NON-ACTIONABLE

48.    Mitchell's challenged statements constitute privileged communications made in connection with judicial and quasi-judicial proceedings and are therefore immune from defamation liability under both federal and New York law. The absolute litigation privilege "protects statements during judicial proceedings, including allegations in a complaint and statements in court," and extends to communications "preliminary to a proposed judicial proceeding." RESTATEMENT (SECOND) OF TORTS § 586. This privilege serves "the administration of justice" by ensuring that attorneys can "speak freely to zealously represent their clients without fear of reprisal or financial hazard."

49.     Even if Plaintiff can meet the Defamation requirements (which are certainly not satisfied here) – alleged defamatory statements are not actionable where they are protected by a qualified privilege. New York courts generally recognize that a qualified privilege arises "where a person makes a bona fide communication upon a subject in which he has an interest and the communication is made to a person having a corresponding interest." *Sterling Interiors Group, Inc. v. Haworth, Inc.*, 1996 U.S. Dist. LEXIS 10756, at *75, No. 94-Civ-9216 (S.D.N.Y. July 29, 1996).

50.     Under New York law, "statements made by counsel are protected by a qualified privilege if they are pertinent to anticipated litigation undertaken in good faith." *Front, Inc. v. Khalil*, 24 N.Y.3d 713, 715 (2015). Then when potential litigation commences, then statements made during actual litigation proceedings or in direct connection with pending litigation, they receive the heightened protection of absolute privilege. *See Lewis v. Pierce Bainbridge Beck Price Hecht LLP*, 189 A.D.3d 490 (1st Dept. 2020).

51.     The Federal Rules of Evidence and federal common law similarly recognize that attorney communications made "in anticipation of litigation" are protected from disclosure and subsequent liability. FED. R. EVID. 502; *Hickman v. Taylor*, 329 U.S. 495, 511 (1947). The Supreme Court has emphasized that this

protection exists "to allow attorneys to develop theories in connection with litigation without fear that the opponent might someday discover them." *Id.*

52.     All of Mitchell's challenged statements fall squarely within the scope of absolute litigation privilege. First, Mitchell's September 27, 2024 statements regarding the California lawsuit and police report were made in direct connection with pending litigation she was actively preparing and filing. These communications concerned litigation strategy, documentary evidence, and procedural matters directly related to her client representation in anticipated federal court proceedings.

53.     Second, Mitchell's statements about individuals shopping tapes around Hollywood were made in her capacity as counsel representing multiple clients with claims against Plaintiff, including her representation of Burgess in connection with federal grand jury proceedings. These statements constitute protected attorney work product and litigation communications made in anticipation of and during ongoing judicial proceedings.

54.     Third, Mitchell's October 31, 2024 statements were made immediately following Burgess's grand jury testimony, in her capacity as his counsel in that federal criminal proceeding. Grand jury proceedings constitute "judicial proceedings" within the scope of absolute privilege protection. *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958); FED. R. CRIM. P. 6(e).

55.    The privilege extends beyond the courthouse steps to include "conferences and other communications preliminary to litigation" and post-proceeding communications that relate to the judicial process. *Lewis v. Pierce Bainbridge Beck Price Hecht LLP*, 189 A.D.3d at 495. Mitchell's media statements were made in her professional capacity as counsel, directly following her client's federal grand jury appearance, and concerned matters directly related to that proceeding.

56.    Importantly, the privilege applies even when statements are made outside the formal courtroom setting, as long as they bear a reasonable relationship to judicial proceedings. The basis for such protection is basic in the principle to allow everyone access to the courts, and when those speak up, especially on behalf of others – they should be able to do so without the fear of being sued. The litigation-related requirements must be applied broadly, and extend to statements outside of the courtroom, thus extra-judicial statements are also protected.

57.    Mitchell's alleged statements on January 14, 2025 – which could be alleged repeated Burgess's statements share the same characteristics. In sum, Mitchell's statements were made in anticipation of litigation, or during the course of pending litigation. Because Mitchell's statements were made in her capacity as counsel in connection with ongoing and anticipated judicial proceedings, Mitchell is entitled to absolute privilege protection. Therefore, Plaintiff cannot form the basis

of actionable defamation claim against Defendant Mitchell, and the defamation cause of action must be dismissed.

### D.  POINT FOUR: MITCHELL'S STATEMENTS ARE ALSO PROTECTED BY THE FAIR REPORTING PRIVILEGE

58.    Under New York Civil Rights Law § 74, "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding." N.Y. CIV. RIGHTS LAW § 74. The privilege is accorded broad application and is intended to foster public dissemination of judicial proceedings, official government actions, and matters of public importance. *See Holy Spirit Ass'n for Unification of World Christianity v. N.Y. Times Co.*, 49 N.Y.2d 63, 67–69 (1979); *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 93 (2d Cir. 2017).

59.    A report is deemed "fair and true" if it is "substantially accurate," such that "the published account would not produce a different effect on the mind of a reader than would the actual truth." *Friedman*, 884 F.3d at 93; *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 180 (2d Cir. 2021). The privilege applies to reports of both ongoing and completed investigations or proceedings, and attaches even if some of the information is obtained from sources other than the official proceeding. *See Freeze Right Refrigeration & Air Conditioning Servs., Inc. v. City of N.Y.*, 101 A.D.2d 175, 182 (1st Dept. 1984).

60.    Here, much of the reporting and commentary referenced in Plaintiff's FAC concerns pending civil and criminal proceedings as well as grand jury testimony—all of which are "official proceedings" under § 74. *See Gubarev v. Buzzfeed, Inc.*, 340 F. Supp. 3d 1304, 1314 (S.D. Fla. 2018) (applying § 74 privilege); *Daleiden v. Planned Parenthood Fed'n of Am.*, 2022 WL 1013982, at *2 (2d Cir. Apr. 5, 2022). Even where a challenged statement is not a verbatim recitation, courts shield accounts so long as the "gist" is accurate. *Cholowsky v. Civiletti*, 69 A.D.3d 110, 115 (2d Dept. 2009); *Beary v. W. Publ'g Co.*, 763 F.2d 66, 68 (2d Cir. 1985).

61.    Thus, to the extent that the statements concern or repeat allegations made in court filings, grand jury proceedings, or official indictments—as Plaintiff's own pleadings document—the privilege fully applies and precludes liability. Any challenge to Mitchell's statements on this ground fails as a matter of law.

## E.  POINT FIVE: PLAINTIFF'S CLAIMS OF ACTUAL MALICE ARE INSUFFICIENT AND CONCLUSORY, AND THEREFORE MUST BE DISMISSED

62.    Public figures such as Mr. Combs must prove "actual malice" – that the defendant made the allegedly defamatory statement with knowledge of its falsity or with reckless disregard for the truth. *N.Y. Times Co. v. Sullivan,* 376 U.S. at 279–80; *Biro v. Condé Nast,* 807 F.3d 541, 544 (2d Cir. 2015); *Chandok v. Klessig*, 632 F.3d 803, 814 (2d Cir. 2011). Courts have consistently held that liability cannot be imposed solely for errors, failures to investigate, or for not seeking comment from

the subject prior to publication. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989); *Dongguk Univ. v. Yale Univ.*, 734 F.3d 113, 124–26 (2d Cir. 2013); *Davis v. Costa-Gavras*, 654 F. Supp. 653, 657 (S.D.N.Y. 1987). It is well established that plaintiff has the burden to establish falsity, a stringent principle in cases involving public figures or matters of public concern. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986); *Biro v. Condé Nast*, 807 F.3d 541, 544 (2d Cir. 2015).

63.    Most importantly, the plaintiff must also demonstrate that the false and defamatory statement caused actual injury, which may include reputational harm or special damages such as lost income. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349–50 (1974); *Celle v. Filipino Reporter Enterprises Inc.*, 209 F.3d 163, 179 (2d Cir. 2000); *DiBella v. Hopkins,* 403 F.3d 102, 116 (2d Cir. 2005). The law also distinguishes between public figures and private individuals, where the rationale is that public officials and public figures have greater access to the media to counteract defamatory statements and, by virtue of their status, assume the risk of greater public scrutiny. *Gertz*, 418 U.S. at 344; *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510–11 (1991); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 164 (1967); and *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1292 (D.C. Cir. 1980); *Lerman v. Flynt Distributing Co.*, 745 F.2d 123, 136 (2d Cir. 1984).

64.    Consequently, in this case Plaintiff as a public figure fails to adequately plea the higher standard of actual malice – that is, that Defendant Mitchell knew the statement was false or acted with reckless disregard for the truth. Primarily the allegations regarding Defendant Burgess in the Amended Complaint reference statements to be made Burgess himself. Specifically, Defendant Burgess is alleged to have flashed around photos and videos during independent interviews he conducted without Mitchell's presence. Nonetheless, Burgess' public showing of photos and videos establishes, in-and-of itself that Mitchell having received such public statements could not have acted in a manner that legally constitutes reckless disregard of the truth.

65.    Rather the incorrect link in the FAC is the allegations trying to establish a plan or pattern of Mitchell, where Plaintiff falsely made the leap Plaintiff in stating Mitchell on September 27, 2024 "falsely stated that 'there already have been tapes leaking around Hollywood, being shopped around to individuals in Hollywood'" had some sort of connection to Defendant Burgess. (*See* ECF Doc. 16 at p. 8-9, ¶ 31). On such date, Mitchell did not even know Burgess or "his affiliates",[3] and more importantly, the allegations rather establish that through Burgess's actions, any statement Mitchell made does not rise to the level of actual malice – especially a reckless disregard for the truth.

---

[3] *See* ECF Doc. 16 at p. 9, ¶ 32.

66.     Further, regarding Burgess it is alleged that he was served with a federal grand jury subpoena, where Burgess' property was confiscated or seized as a result. Defendant Mitchell cannot be said to have acted with reckless disregard for the truth. Photos and videos were produced leading to a federal subpoena for this specific material. Then the government or members of the Southern District acted in manner to take possession of said materials, and thus the government essentially vouched for its existence of said materials. *Cf. Gertz*, 418 U.S. at 347.

67.     Overall, Plaintiff erroneously attempts to establish a narrative pattern by linking Mitchell's September 27, 2024 NewsNation claims – namely that "'there already have been tapes leaking around Hollywood, being shopped around to individuals in Hollywood'" – to Burgess, despite explicitly stating that her words referenced an unnamed third party, not Burgess or his affiliates. (*Id.* at p. 9, ¶ 31). The quoted FAC passage itself reveals that Mitchell described "one particular person" contacting her about a video and a possible "catch and kill," but never named Burgess, because she had yet to meet him at such time. (*Id.*). The lack of contemporaneous knowledge of Burgess by Mitchell undercuts actual malice or knowing falsehood.

68.     In light of all these reasons and more, the defamatory claims against Mitchell should be dismissed.

## V.   <u>CONCLUSION</u>

𝔚herefore, for the foregoing reasons, Mitchell respectfully requests that this Court grant this motion to dismiss in its entirety, dismiss Plaintiff's claims against Mitchell with prejudice, and award Mitchell her reasonable attorney fees and costs incurred herein, due to insufficient pleading.

Dated:  New York, New York
       September 30, 2025         Respectfully Submitted,

                                  /s/ Steven Alan Metcalf II
                                 _____
                                 STEVEN A. METCALF II, ESQ.
                                 *Attorney for Mitchell*
                                 Metcalf & Metcalf, P.C.
                                 99 Park Avenue, Suite 810
                                 New York, NY 10016
                                 (*Office*) 646.253.0514
                                 (*Fax*) 646.219.2012

TO:   Erica Ashley Wolff, Esq.
        Sher Tremonte LLP
        *Counsel for Plaintiff*
        (via email and ECF)

## <u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT LIMITATIONS</u>

I hereby certify that the word count of this memorandum of law complies

with the word limits of Local Civil Rule 7.1(c). According to the word-processing

system used to prepare this reply memorandum of law, the total word count for all

printed text exclusive of the material omitted under Local Civil Rule 7.1(c) is

5,880 words.

I certify under penalty of perjury that the foregoing is true and correct.


Dated: September 30, 2025              Respectfully Submitted,

                                       /s/ Steven Alan Metcalf II
                                       _____
                                       STEVEN A. METCALF II, ESQ.
                                       *Attorney for Defendant Mitchell*