```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
SEAN COMBS,                                                            :
                                                                       :
                                Plaintiff,                             :
                                                                       :
                -v-                                                    :     25 Civ. 650 (JPC)
                                                                       :
COURTNEY BURGESS, ARIEL MITCHELL, and                                  :     OPINION AND ORDER
NEXSTAR MEDIA INC.,                                                    :
                                                                       :
                                Defendants.                            :
                                                                       :
-----------------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

On January 22, 2025, Plaintiff Sean Combs initiated this case by filing a Complaint against Courtney Burgess, Ariel Mitchell, and Nexstar Media, Inc. Dkt. 1. Eighty-nine days later, on April 21, 2025, Combs moved for an extension of time to serve Burgess and Mitchell. Dkts. 29-33. The Court granted that motion on April 28, 2025, extending the deadline to serve those Defendants until July 28, 2025. Dkt. 34. On that deadline, Combs sought leave to file a motion to further extend the time to serve Burgess and to effectuate that service by alternative means. Dkt. 53. On July 29, 2025. the Court granted Combs leave to file his anticipated motion. Dkt. 54.

On August 19, 2025, Combs moved for an order (1) extending the time to serve Burgess by sixty days from entry of such order and (2) granting leave to serve Burgess by (a) certified mail at two residential addresses and one P.O. Box address, (b) email at five emails addresses,[1] (c) email through Mitchell's counsel, and/or (d) publication in the *Maryland Daily Record*, which circulates in Baltimore, Maryland; the *Star Ledger*, which circulates in Newark, New Jersey; and/or the *Morning*

---

[1] The potential residential, P.O. Box, and email addresses for Burgess are listed in Combs's Notice of Motion. *See* Dkt. 64 ("Motion") ¶¶ 1-2.

*News*, which circulates in Florence, South Carolina.  Dkts. 64-67.  For the reasons that follow, the Court grants Combs's extension request and grants his request to effect service by alternative means with certain modifications to his proposed methods explained below.

## I. Service by Alternative Means

"Federal Rule of Civil Procedure 4(e) provides, *inter alia*, that an individual may be served pursuant to the procedures allowed by state law in the state in which the district court is located." *Day v. Slothower*, No. 21 Civ. 1188 (PAE), 2021 WL 6427556, at *1 (S.D.N.Y. Apr. 27, 2021).  As relevant here, New York law authorizes service by the methods identified in New York Civil Practice Law and Rules ("N.Y. C.P.L.R.") Sections 308(1), (2), and (4), which allow service by "personal delivery, delivery and mailing, and nailing and mailing, respectively," *Parisi v. Fretta*, 542 N.Y.S.2d 713, 714 (2d Dep't 1989), and by other methods "in such manner as the court . . . directs, if service is impracticable under paragraphs one, two, and four," N.Y. C.P.L.R. § 308(5).  The "impracticability standard is not capable of easy definition," but "it does not require the applicant to . . . make a showing that actual prior attempts to serve a party under each and every method provided in the statute have been undertaken." *Astrologo v. Serra*, 659 N.Y.S.2d 481, 482 (2d Dep't 1997) (cleaned up).

Alternative service must comport with due process, and thus need be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).  Under this standard, "[t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315.  "The reasonableness and hence the constitutional validity of any chosen method" requires that the chosen method must either be "reasonably certain to inform those affected," or, if no method will attain reasonable certainty, the chosen method must be "not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Id.* (internal citations omitted); *see also In re Terrorist Attacks on Sept.*

2

*11, 2001*, 718 F. Supp. 2d 456, 491 (S.D.N.Y. 2010) ("Due process does not require the Court to consider all possible forms of alternative service available.").

Here, Combs has shown that it is impracticable to serve Burgess by the traditional methods of personal delivery, delivery and mailing, and nailing and mailing.[2] Combs has undertaken considerable efforts to determine where Burgess might be found. This included retaining Demosky Lawyer Service ("DLS"), a national process service company, and Herman Weisberg, a private investigator and Managing Director of Sage Intelligence Group. Wolff Decl. ¶¶ 3-4. Mr. Weisberg advised Erica Wolff, Combs's counsel and a partner at Sher Tremonte LLP, that he analyzed public records from multiple states and identified potential physical addresses for Burgess in Florence, South Carolina (the "Florence Address"); Maplewood, New Jersey (the "Maplewood Address"); West Orange, New Jersey (the "West Orange Address"); and Catonsville, Maryland (the "Catonsville Address"), as well as a P.O. Box in Catonsville (the "Catonsville P.O. Box"). *Id.* ¶ 5 ("I am further informed by Mr. Weisberg that, using online pedigree records, the investigator conducted skip tracing and identified and provided to Sher Tremonte LLP the following as potential address where Burgess might be located: [listing the Florence, Maplewood, West Orange, and Catonsville Addresses and the Catonsville P.O. Box]."). Mr. Weisberg received further information suggesting the reliability of some of these addresses in July 2025, when an individual purportedly familiar with Burgess told Mr. Weisberg that Burgess likely resides in Baltimore, Maryland, of which Catonsville is a suburb, and that Burgess also has residences in Newark, New Jersey, which is near West Orange, and in South Carolina. *Id.* ¶ 7.

Despite repeated efforts, Combs has been unable to serve Burgess at any of these potential addresses. A process server with DLS, Matthew Fortner, unsuccessfully attempted to serve Burgess

---

[2] The facts herein are taken from affidavits and declarations filed by Combs. *See* Dkts. 33 ("Hachenburg Decl."), 65 ("Wolff Decl."), 67 ("Luevanos Decl."). For purposes of this Opinion and Order, the Court assumes those facts to be true.

in-person at the Florence Address on April 2, April 4, and April 5, 2025. Wolff Decl., Exh. A ("Fortner Aff."). A paralegal at Sher Tremonte mailed a copy of the Summons and Complaint, a request to waive service of the Summons, and a pre-paid return envelope to the Florence Address on April 14, 2025. Hachenburg Decl. ¶ 4. Another DLS process server, Timothy Botti, unsuccessfully attempted to serve Burgess in-person at the Maplewood Address once on April 16, 2025, twice on April 17, 2025, and once more on April 18, 2025. Wolff Decl., Exh. C ("Botti Aff."). Another Sher Tremonte paralegal, Samantha Luevanos, mailed a copy of the Summons and Complaint, a request to waive service of the Summons, and a pre-paid return envelope to the Maplewood Address on April 15, 2025, but that mailing was returned to sender on April 24, 2025. Luevanos Decl. ¶ 3. Mr. Botti also unsuccessfully attempted to serve Burgess in-person at the West Orange Address on July 10 and 11, 2025. Wolff Decl., Exh. F ("Botti Suppl. Aff."). A third DLS process server attempted to serve Burgess in-person at the Catonsville Address on July 4, 2025, but the person living there stated that she had just moved in and had never heard of Burgess. Wolff Decl., Exh. E ("Getlan Aff."). On July 24, 2025, Ms. Luevanos mailed a request to waive service to the Catonsville P.O. Box. Luevanos Decl. ¶ 4. As of Ms. Luevanos's declaration of August 19, 2025, Sher Tremonte had not received an executed waiver of service of Summons from Burgess. *Id.* ¶ 5.

Ms. Wolff also reports that Mr. Weisberg identified five email addresses as potentially belonging to Burgess (the "Email Addresses"). Wolff Decl. ¶ 9 ("Using online pedigree records, the investigator also identified to Sher Tremonte LLP multiple email addresses as potentially belonging to Burgess, including: [listing the Email Addresses]."). On July 23, 2025, Ms. Wolff emailed a waiver of service request to four of the five Email Addresses. *Id.* ¶ 16; Wolff Decl., Exh. I.[3]

Combs's representatives made several other attempts to contact Burgess, but they too have

---

[3] Ms. Wolff's declaration does not explain why she did not mail the waiver of service request to the fifth Email Address. *See generally* Wolff Decl.

4

been without success.  For instance, Ms. Wolff attempted to secure Burgess's contact information from Steven Metcalf, counsel for co-defendant Mitchell, because according to Ms. Wolff, Mitchell previously was counsel for Burgess.  Wolff Decl. ¶ 11.  On April 24, 2025, Ms. Wolff emailed Mr. Metcalf asking if he knew who was representing Burgess, but she did not receive any information in response.  *Id.*; Wolff Decl., Exh. G.  On May 28 and July 16, 2025, Ms. Wolff again emailed Mr. Metcalf, requesting contact information for Burgess or his counsel.  Wolff Decl. ¶¶ 12, 14; Wolff Decl., Exh. H.  Further, according to Ms. Wolff, Mr. Metcalf told her during a telephone conversation on May 27, 2025, that Mitchell likely had contact information for Burgess and that he would check with Mitchell, but Mr. Metcalf did not get back to Ms. Wolff.  Wolff Decl. ¶ 13.

In addition, after attempting to serve Burgess at the Florence Address on April 4, 2025, Mr. Fortner spoke with a neighbor who provided phone numbers for Burgess (the "Burgess Phone Number") and his brother.  Fortner Aff.  That same day, Mr. Fortner called both numbers but no one answered either call.  *Id.*  The next day, however, Mr. Fortner "received a call back from Courtney Burgess,"[4] Mr. Fortner advised that he "had some important documents for [Burgess]," and the caller responded that "he would have to talk to his lawyer" and would call Mr. Fortner back.  *Id.*  But no return call was ever received, and there was no answer when a different DLS process server tried calling the Burgess Phone Number on June 6, June 12, and July 2, 2025.  Wolff Decl., Exh. D ("Chen Aff.").[5]

"Courts have found the impracticability standard met where, despite a diligent search, a plaintiff has demonstrated that her efforts to obtain information regarding the defendant's current

---

[4] Mr. Fortner's affidavit does not indicate the basis for his belief that the person he spoke with on the phone was in fact Burgess.  *See generally* Fortner Aff.

[5] Mr. Fortner reports that, on April 5, 2025, he received a return call from the phone number purportedly belonging to Burgess's brother, who said that he had not talked to Burgess in a while but believed Burgess was living in either Maryland or New Jersey.  Fortner Aff.

5

residence or place of abode through ordinary means had proven ineffectual." *Bozza v. Love*, No. 15 Civ. 3271 (LGS), 2015 WL 4039849, at *1 (S.D.N.Y. July 1, 2015) (cleaned up).  Such is the case here.  Despite months of extensive and diligent efforts to serve Burgess by traditional means, Combs has been unable to effect service.

Further, the information presented by Combs suggests that Burgess may be located at the Florence Address or the West Orange Address, and that Burgess may be using the Catonsville P.O. Box[6] and the Email Addresses.  The Court therefore finds that service by certified mail at those two residential addresses and the Catonsville P.O. Box and service by email to the Email Addresses are reasonably calculated to provide Burgess with notice of the pendency of this action and to afford him the opportunity to defend himself.  The Court further finds that service by publication in accordance with N.Y. C.P.L.R. Section 316—via the *Maryland Daily Record*, the *Star Ledger*, and the *Morning News*, which circulate in Baltimore, Maryland; Newark, New Jersey; and Florence, South Carolina, respectively—also is reasonably calculated to provide Burgess with notice of this litigation.  *See Mullane*, 339 U.S. at 316 ("[P]ublication traditionally has been acceptable as notification supplemental to other action which in itself may reasonably be expected to convey a warning."); *D.R.I., Inc. v. Dennis*, No. 03 Civ. 10026 (PKL), 2004 WL 1237511, at *1 (S.D.N.Y. June 3, 2004) ("Service by certified mail to a defendant's last known address and by publication have been permitted as alternate forms of service reasonably calculated to apprise a defendant of an action.").

In addition to these methods proposed by Combs, the Court finds that service of information regarding this litigation via text message to the Burgess Phone Number is reasonably calculated to

---

[6] As Combs acknowledges, service at the Maplewood and Catonsville Addresses would not be reasonably calculated to provide Burgess with notice because the waiver of service sent to Maplewood Address was returned to sender and the person currently living at the Catonsville Address stated that she had never heard of Burgess.  *See* Dkt. 66 at 15 n.5.  Combs thus does not seek leave to serve Burgess by certified mail to those addresses.  *Id.*

6

provided Burgess with notice. As noted, the Burgess Phone Number was provided to Mr. Fortner as a phone number for Burgess, and Mr. Fortner understood that he spoke with Burgess at that number. *See Marvici v. Roche Facilities Maint. LLC*, No. 21 Civ. 4259 (PAE) (JLC), 2021 WL 5323748, at *3 (S.D.N.Y. Oct. 6, 2021) (ordering alternative service "via text message to [a defendant's] personal cell phone number" and finding "good reasons to believe that doing so would actually apprise [the defendant] of the pending lawsuit" because the plaintiff "communicated with [the defendant] at the cell phone number in question").

To be sure, there is no guarantee that any one of these methods will put Burgess on notice of this litigation, but combined they are "piece[s] of a multi-prong approach" to provide Burgess with notice. *Id.* at *4; *accord Kumar v. Alhunaif*, No. 23 Civ. 321 (DEH), 2023 WL 8527671, at *5 (S.D.N.Y. Dec. 8, 2023) (ordering multiple methods of alternative service "for the sake of thoroughness").

Service by these methods also is "not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Mullane*, 339 U.S. at 315; *see Google LLC v. Starovikov*, No. 21 Civ. 10260 (DLC), 2022 WL 4592899, at *3 (S.D.N.Y. Sept. 30, 2022) (finding service via text message to twenty-six defendants satisfied due process and was "reasonably calculated to provide notice" even though "four of the twenty-six text messages sent failed to deliver" (internal quotation marks omitted)). In fact, based on the information in the record, it does not appear to the Court that any other method of service would be more effective in providing notice. *See Jones v. Flowers*, 547 U.S. 220, 234 (2006) ("[I]f there were no reasonable additional steps the government could have taken upon return of the unclaimed notice letter, it cannot be faulted for doing nothing."); *In re Terrorist Attacks*, 718 F. Supp. 2d at 491 ("Due process does not require the Court to consider all possible forms of alternative service available.").

The Court does not, however, authorize Combs's request to serve Burgess by emailing Mr.

7

Metcalf. Combs has pointed to no authority allowing alternative service through counsel for a co-defendant, nor has he even offered any argument for why such service would be appropriate. Absent Combs presenting developed argument with legal authority, Combs's request to serve via this method of alternative service is denied without prejudice.

Accordingly, Combs shall attempt to serve Burgess by: (1) certified mail at the Florence Address, the West Orange Address, and the Catonsville P.O. Box, *see* Motion ¶ 1; (2) email to the five Email Addresses, *see id.* ¶ 2; (3) publication in accordance with N.Y. C.P.L.R. Section 316 in the *Maryland Daily Record*, the *Star Ledger*, and the *Morning News*, *see id.* ¶ 4; and (4) text message with information concerning this litigation to the Burgess Phone Number.

## II. Extending Time to Serve

Under Federal Rule of Civil Procedure 4(m), a plaintiff generally must serve all defendants "within 90 days after the complaint is filed," but "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). "In determining whether a plaintiff has shown good cause, courts weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010). As a practical matter, weighing these two considerations means that, "[i]n order to establish good cause for failure to effect service in a timely manner, a plaintiff must demonstrate that despite diligent attempts, service could not be made due to exceptional circumstances beyond his or her control." *Spinale v. United States*, No. 03 Civ. 1704 (KMW) (JCF), 2005 WL 659150, at *3 (S.D.N.Y. Mar. 16, 2005).

Here, Combs has shown good cause for his failure to serve Burgess by the July 28, 2025 deadline set in the Court's April 28, 2025 Order. His extensive efforts to serve Burgess are described above. *See supra* I. Mr. Weisberg identified four potential residential addresses for Burgess in Florence, Maplewood, West Orange, and Catonsville, as well as a P.O. Box in Catonsville. Wolff

Decl. ¶ 5. Process servers with DLS attempted, without success, to serve Burgess at the residential addresses on numerous occasions in April 2025 and July 2025. *See* Fortner Aff; Botti Aff.; Botti Suppl. Aff.; Getlan Aff. Paralegals from Sher Tremonte mailed requests to waive service of the Summons to the Florence and Maplewood Addresses and to the Catonsville P.O. Box. Hachenburg Decl. ¶ 4; Luevanos Decl. ¶¶ 3-4. A waiver of service also was emailed to four of the Email Addresses that Mr. Weisberg identified as potentially belonging to Burgess. Wolff Decl. ¶¶ 9, 16. Ms. Wolff repeatedly tried to obtain Burgess's contact information from Mr. Metcalf, without success. *Id.* ¶¶ 11-14. And DLS process servers attempted to communicate on the telephone with Burgess. *See* Fortner Aff.; Chen Aff.

Courts in this Circuit have found good cause satisfied when a litigant repeatedly tries without avail to locate the party they are attempting to serve. *See, e.g.*, *Emerald Asset Advisors, LLC v. Schaffer*, 895 F. Supp. 2d 418, 428-29 (E.D.N.Y. 2012) (finding "good cause present" when the "[p]laintiff made extensive inquiries as to the[ defendants'] locations, including hiring a number of investigators to assist with the process," and collecting cases); *Coleman v. Cranberry Baye Rental Agency*, 202 F.R.D. 106, 109 (N.D.N.Y. 2001) (finding good cause where the plaintiff made "the extensive efforts required to locate [the defendant] for service," including working with a private investigator who undertook a nationwide database search and unsuccessfully attempting to serve the defendant at three different addresses). So too here. The Court thus extends Combs's deadline to serve Burgess until January 16, 2026, which allows sufficient time for Combs to serve Burgess through the alternative means approved above.

### III. Conclusion

Accordingly, the Court grants Combs's motion for alternative service and authorizes service by: (1) certified mail at the Florence Address, the West Orange Address, and the Catonsville P.O. Box, *see* Motion ¶ 1; (2) email to the five Email Addresses, *see id.* ¶ 2; (3) publication in accordance with

9

N.Y. C.P.L.R. Section 316 in the *Maryland Daily Record*, the *Star Ledger*, and the *Morning News*, *see id.* ¶ 4; and (4) text message with information about this litigation to the Burgess Phone Number, *see* Fortner Aff. (listing the Burgess Phone Number). The Court also grants Combs's motion to extend his deadline to serve Burgess, and extends that deadline to January 16, 2026. The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 64.

    SO ORDERED.

Dated: November 17, 2025
      New York, New York

                                      JOHN P. CRONAN
                                 United States District Judge