SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 35

----------------------------------------------------------------------------------X

SEAN COMBS,

                            Plaintiff,

                   - v -

NBCUNIVERSAL MEDIA, LLC, PEACOCK TV LLC, and
AMPLE, LLC

                            Defendants.

----------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 151935/2025 |
| **MOTION DATE** | 11/11/2025 |
| **MOTION SEQ. NO.** | 002 |

**DECISION + ORDER ON
MOTION**

HON. PHAEDRA F. PERRY-BOND:

The following e-filed documents, listed by NYSCEF document number (Motion 002) 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140

were read on this motion to/for                         DISMISS                .

**Appearances Of Counsel**

**Plaintiff:** Sher Tremonte LLP (Erica A. Wolff)
**Defendants:** Gibson Dunn & Crutcher LLP (Theodore J. Boutrous & Connor S. Sullivan)

**Opinion of the Court**

Upon consideration of the parties' filings, and after oral argument which took place on April 17, 2026, the Court grants Defendants' motion to dismiss Plaintiff's Amended Complaint.

### I.    Background

Plaintiff, a once famous music producer, record executive, entrepreneur, and rapper, is now a defendant in numerous ongoing civil lawsuits accusing him of sexual assault and extortion, the subject of numerous documentaries and news articles, and a convicted felon serving a 50-month prison sentence.

151935/2025  COMBS, SEAN vs. NBCUNIVERSAL MEDIA, LLC ET AL
Motion No. 002

Page 1 of 12

1 of 12

Case 1:25-cv-00650-JPC    Document 106-1    Filed 04/24/26    Page 2 of 12

Following Casandra Ventura's[1] civil lawsuit against Plaintiff filed in November of 2023, Plaintiff's criminal indictment on federal racketeering and sex trafficking charges in September of 2024, and leaked video footage of Plaintiff engaging in a brutal episode of domestic violence, Defendants produced and broadcasted a documentary titled "Diddy: The Making of a Bad Boy" (the "Documentary").

The Documentary, published on January 2, 2025, traces Plaintiff's meteoric rise and remarkable downfall. The Documentary touches on a wide array of subjects, including Plaintiff's childhood, his entry onto New York City's hip-hop scene, Plaintiff's alleged involvement in the tragic City College stampede, Plaintiff's romantic relationships, his success as a producer, alleged drug-fueled sex parties, domestic abuse, his criminal indictment, and the numerous other lawsuits filed against him. The Documentary includes various points of view, with perspectives from Plaintiff's childhood and college friends, Plaintiff's former employees, journalists, a psychologist, medical documents, archived video footage, alleged victims, and lawyers.

After the Documentary was published, Plaintiff was convicted and sentenced. At his widely publicized trial, damaging evidence and testimony concerning Plaintiff was presented. At Plaintiff's sentencing, he recognized the widely publicized video of him violently abusing Casandra Ventura was "disgusting" and "despicable" and "can trigger a lot of people all around the world." He further stated "[m]y actions were disgusting, shameful and sick." Now, Plaintiff sues Defendants for defamation, claiming the Documentary "caused substantial reputation and financial harm" to him.

Plaintiff alleges he was defamed by three groups of statements made in the Documentary. First, Plaintiff claims the Documentary endorses the false assertion that Plaintiff murdered

---

[1] Ms. Ventura is Plaintiff's ex-girlfriend.

Kimberly Porter, Christopher Wallace ("Biggie"), Andre Harrell, and Dwight Arrington Myers ("Heavy D"), and attempted to murder Albert Joseph Brown ("Al B. Sure!"). Second, Plaintiff claims he was defamed by an interviewee's allegation that Plaintiff had sex with and trafficked underage girls. Third, Plaintiff claims he was defamed by statements made by Courtney Burgess's lawyer's claim that Mr. Burgess was in possession of sex tapes secretly recorded by Plaintiff.

Defendants respond with a motion to dismiss pursuant to CPLR 3211(g). Defendants argue Plaintiff has failed to set forth a substantial basis for alleging that they acted with "gross irresponsibility" as required by Court of Appeals precedent. Defendants set forth numerous alternative grounds for dismissal, including Civil Rights Law § 74, that the alleged statements are "substantially true," and that other statements are non-actionable.

In opposition, Plaintiff does not dispute that the heightened burden under CPLR 3211(g) applies but argues he set forth a substantial basis for his claims. Plaintiff argues Defendants were grossly irresponsible in producing the Documentary because it was rushed, and Defendants failed to verify statements made by unreliable sources. Plaintiff further argues that the statements regarding sex tapes and underage minors are not protected by Civil Rights Law § 74 because the statements did not comment on a judicial proceeding. Plaintiff also argues the purported disclaimers debunking certain criminal allegations are insufficient. Plaintiff asserts, amongst other things, that none of the allegedly defamatory statements are true.

In reply, Defendants argue Plaintiff failed to meet his burden of demonstrating, under the substantial basis standard, that the Documentary endorsed the allegedly defamatory statements. Defendants argue that the Documentary rebuts the allegedly defamatory statements, reveals interviewees' biases, debunks rumors and conspiracy theories with facts, and presented Plaintiff's statements and denials to interviewees' accusations. Defendants further argue that by Plaintiff's

151935/2025   COMBS, SEAN vs. NBCUNIVERSAL MEDIA, LLC ET AL                    Page 3 of 12
Motion No. 002

3 of 12

Case 1:25-cv-00650-JPC    Document 106-1    Filed 04/24/26    Page 4 of 12

own admission, he destroyed his own reputation, and Defendants assert they should not be held liable for Plaintiff's self-inflicted harm.

## II.    Discussion

### A. Standard

A motion to dismiss under CPLR 3211(g) shall be granted when the movant shows the action targets speech involving public petition and participation, as defined in Civil Rights Law § 76-a, unless the opposing party shows the action has a substantial basis (*see Gillespie v Kling*, 217 AD3d 566, 567 [1st Dept 2023]). The "substantial basis" standard is a "heightened burden" compared to the pleading standard under CPLR 3211(a)(7) (*S.N. v Integral Yoga Institute, Inc.* 245 AD3d 536 [1st Dept 2026]). "Substantial basis" means "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (*see Black v Ganieva*, 236 AD3d 427 [1st Dept 2025]). The Court considers affidavits and other evidence to assess whether the pleading has a substantial basis (*see Sharp v Bar Fluid LLC*, 237 AD3d 628, 629 [1st Dept 2025]; *Reeves v Associated Newspapers, Ltd.*, 232 AD3d 10, 24 [1st Dept 2024]).

In assessing a CPLR 3211(g) motion, the Court is mindful of the intent behind the 2020 amendments to Civil Rights Law § 76-a, which was to "broaden the scope of the law and afford greater protections to citizens" (*Aristocrat Plastic Surgery, P.C. v Silva*, 206 AD3d 26, 28 [1st Dept 2022] quoting *Mable Assets, LLC v Rachmanov*, 192 AD3d 998, 1000 [2d Dept 2021], citing L 2020, ch 250).

On a motion to dismiss a defamation claim, context is key. "[T]he court must decide whether the statements, considered in the context of the entire publication, are 'reasonably susceptible of a defamatory connotation'" (*see Stepanov v Dow Jones & Co., Inc.*, 120 AD3d 28, 34 [1st Dept 2014]). The Court should not sift through a published work for the purpose of isolating

Case 1:25-cv-00650-JPC    Document 106-1    Filed 04/24/26    Page 5 of 12

and identifying assertions of fact but should instead consider the publication holistically and assess "whether the reasonable [viewer] would have believed that the challenged statements were conveying facts about the libel plaintiff" (*see Sandals Resorts Intern. Ltd. v Google, Inc.*, 86 AD3d 32, 42 [1st Dept 2011] quoting *Brian v Richardson*, 87 NY2d 46, 51 [1995]).

## B. Gross Irresponsibility

Viewing the Documentary holistically, the Amended Complaint fails to establish Defendants were grossly irresponsible in publishing the Documentary. The "gross irresponsibility" standard, implemented by the Court of Appeals a half century ago to foster free speech and forestall the media's self-censorship, requires a private plaintiff[2] suing a media organization for defamation to show the publisher "acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties" (*see Chapadeau v Utica Observer-Dispatch*, 38 NY2d 196, 199 [1975]). "[T]he alleged falsity or defamatory meaning of certain statements is not probative of whether defendants acted with gross irresponsibility" (*see Griffith v Daily Beast*, 216 AD3d 510, 511 [1st Dept 2023] citing *Robart v Post-Standard,* 52 NY2d 843, 845 [1981]). Editorial judgments as to news content may not be second-guessed in a defamation action so long as they are sustainable under the "gross irresponsibility" standard (*see Gaeta v New York News*, 62 NY2d 340, 349 [1984]).

The gross irresponsibility standard does not require exhaustive research and painstaking judgments but simply requires that the story be based on a reliable source (*see Shuman v New York Magazine*, 211 AD3d 558, 559 [1st Dept 2022]). Even the failure to reach out to the subject of the publication for comment does not constitute grossly irresponsible behavior (*see Griffith v Daily Beast*, 216 AD3d 510, 512 [1st Dept 2023] citing *Rainbow v WPIX, Inc.*, 179 AD3d 561, 562-563

---

[2] Plaintiff is obviously not a private plaintiff. However, if Plaintiff fails to meet the "gross irresponsibility" standard, he *de facto* fails to meet the higher burden of alleging actual malice.

**151935/2025  COMBS, SEAN vs. NBCUNIVERSAL MEDIA, LLC ET AL**
**Motion No. 002**                                                    **Page 5 of 12**

5 of 12

[1st Dept 2020]). Likewise, reliance on biased sources where a publication presents those sources' subjective views and personal experiences does not constitute grossly irresponsible conduct (*Griffith,* at 512; *see also Isaly v Garde*, 216 AD3d 594, 595-596 [1st Dept 2023]).

In publishing the Documentary, Defendants employed far greater verification methods than the defendants in prior cases where the First Department found dismissal appropriate (*see Griffith* at 511-512 [failure to contact plaintiff, relying on only two sources, and contacting plaintiff's employer only 40 minutes prior to publishing article insufficient to establish gross irresponsibility]). Defendants reached out to Plaintiff for comment and included in the Documentary Plaintiff's attorneys' comments that Plaintiff "has never sexually assaulted anyone – adult or minor, man or woman." Defendants also informed viewers that in Plaintiff's criminal case, Plaintiff's attorneys "wrote that claim[s] of the existence of any videos of Mr. Combs involved in sexual assault of celebrities and minors is false."

In response to certain interviewees' allegations that Plaintiff was involved in the death of Kim Porter, Defendants disclosed the coroner's report which objectively found Ms. Porter died from lobar pneumonia and included another statement that "[m]edical professional have not found any evidence to indicate that Kim Porter's death was the result of unnatural causes." Defendants also disclosed that the Los Angeles Police Department "stated they had no suspicion of foul play and that there was no criminal involvement in Kim Porter's death." Defendants explicitly told viewers that Al B. Sure!'s allegations related to Kim Porter's death are unproven despite his call on law enforcement to investigate. Defendants even disclosed a statement from Kim Porter's children stating there was no foul play in Kim Porter's death and labelled those allegations "rumors" which were "false and hurtful."

151935/2025  COMBS, SEAN vs. NBCUNIVERSAL MEDIA, LLC ET AL          Page 6 of 12
Motion No.  002

6 of 12

Defendants disclosed that "[a]n autopsy revealed that Heavy D.'s death was caused by a pulmonary embolism" and that "[f]following years of medical issues, Andre Harrell died of heart failure." Defendants further advised viewers that authorities did not consider the death of Heavy D. or Andrew Harrell suspicious. Defendants disclosed to viewers that Plaintiff has always denied any involvement in the murder of Biggie, and informed viewers that the symptoms which Al B. Sure! believes stem from his attempted murder "have been known to be potential side effects of [his bariatric] surgery."

Defendants also published the biases of interviewees who accused Plaintiff of murder. The Documentary detailed how Kim Porter left Al B. Sure! to become romantically involved with Plaintiff, and how Plaintiff raised Al B. Sure!'s son, which a reasonable viewer would interpret to mean Al B. Sure! held a deep resentment towards Plaintiff. This intended interpretation is buttressed when the Documentary broadcasts Al B. Sure! stating there's a "rule, if you're my brother and you and your wife, something happens, she's off limits." The Documentary broadcasted that Christopher Deal, who stated Plaintiff asked Biggie to go to the house party where Biggie was killed, also held a grudge. Mr. Deal claimed he stopped working for Plaintiff "because me and his momma go into it…[Plaintiff's] mother tr[ied] to degrade me." Ariel Mitchell, a lawyer who joins in Al B. Sure!'s speculation and accuses Plaintiff of making non-consensual sex tapes, introduces herself on the Documentary as "a civil litigator who has filed several cases against Plaintiff for sexual assault" thereby informing viewers that Ms. Mitchell is a legal adversary with interests that run directly counter to Plaintiff.

Moreover, Defendants included statements from Sharon Lee Carpenter, a reputable journalist who has appeared on CNN, CBS, BET, and BBC, who definitively stated there was "[a]bsolutely no proof, no evidence, nothing of the sort" with respect to Plaintiff's involvement in

151935/2025  COMBS, SEAN vs. NBCUNIVERSAL MEDIA, LLC ET AL                    Page 7 of 12
Motion No.  002

7 of 12

Case 1:25-cv-00650-JPC  Document 106-1  Filed 04/24/26  Page 8 of 12

Kim Porter's death. Ms. Carpenter further states "[y]ou know, there are a lot of conspiracy theories out there, but no proof." After Al B. Sure! and known conspiracy theorist Jaguar Wright speculated on the deaths, a statement from Ms. Carpenter follows directly, stating "[t]hey're all people who speculate. And there have been so many conspiracy theories about [Plaintiff] potentially being involved". Defendants also included statements from Plaintiff's childhood friends that provided viewers an alternative perspective of Plaintiff. The Documentary included Rich Parker's statements that "I know some girls that he's dated, you know, that have called him a perfect gentleman." Lee Davis, another childhood friend, stated during the City College stampede he saw Plaintiff "running around trying to save people. I saw him trying to give mouth-to-mouth resuscitation to people." When showing the video of Plaintiff assaulting Ms. Ventura, the Documentary shows commentary from Ron Lawerence, Plaintiff's classmate stating "I've never seen [Plaintiff] fight anybody. I've never seen him hit a woman…."

Simply put, when viewing the publication holistically, and when the allegedly defamatory statements are placed in the proper context, the Documentary does not reflect "grossly irresponsible" journalism. Instead, the Documentary demonstrates a carefully curated and nuanced approach which discloses interviewees' biases and includes counterstatements to the allegedly defamatory statements, including statements from Plaintiff and his attorneys. The Documentary provides viewers with numerous viewpoints, coupled with objective information, from which the viewer may draw their own conclusions on numerous topics discussed. This was done despite "the pressures and deadlines of live news" (*see Gaeta v New York News, Inc.*, 62 NY2d 340, 351 [1984]). That Plaintiff claims some of the information published is not accurate or false, or may have a defamatory connotation, does not mean that Defendants were grossly irresponsible in publishing that information (*see Robart v Post-Standard*, 52 NY2d 843, 845 [1981]).

**151935/2025  COMBS, SEAN vs. NBCUNIVERSAL MEDIA, LLC ET AL**
**Motion No.  002**

Page 8 of 12

Case 1:25-cv-00650-JPC    Document 106-1    Filed 04/24/26    Page 9 of 12

Given the record conclusively establishes Defendants did not act in a grossly irresponsible manner, the Court will not entertain Plaintiff's second-guessing of editorial content. Because Plaintiff has failed to set forth a substantial basis for his allegations that Defendants acted in a grossly irresponsible manner, dismissal under CPLR 3211(g) is appropriate.

### C. Incremental Harm/Libel Proof Plaintiff Doctrines

Although the Court need not address Defendant's alternative grounds for dismissal, as Plaintiff's failure to show a substantial basis for his claim that the Documentary was published with gross irresponsibility (*see Crucey v Jackall*, 275 AD2d 258, 259 [1st Dept 2000]), for the sake of completeness the Court assesses the merits of Defendant's argument under the libel proof plaintiff doctrine. Contrary to Plaintiff's argument, the incremental harm and libel-proof plaintiff doctrines have been recognized by New York Courts (*see 161 Ludlow Food, LLC v L.E.S. Dwellers, Inc.*, 176 AD3d 434, 434-435 [1st Dept 2019] [CPLR 3211(g) motion appropriately granted where Plaintiff failed to set forth substantial basis for allegations that statement at issue harmed its reputation]; *see also Jones v Plaza Hotel*, 249 AD2d 31, 31 [1st Dept 1998]). Although Plaintiff argues he need not allege damage to his reputation in a case of defamation *per se*, even "in a case of defamation *per se*, there must be something that addresses the element of injury to reputation" (*see Sandals Resorts Intern. Ltd. v Google, Inc.*, 86 AD3d 32, 39 [1st Dept 2011]).

There is no dispute that at his sentencing for his conviction on prostitution related charges, Plaintiff admitted he viewed his own publicized actions, specifically the widespread video of him abusing Casandra Ventura, as "disgusting, shameful and sick." He admitted that the widely publicized video "can trigger a lot of people all around the world." Moreover, there is no dispute that prior to the Documentary being published, there were numerous lawsuits, including one from

151935/2025  COMBS, SEAN vs. NBCUNIVERSAL MEDIA, LLC ET AL                    Page 9 of 12
Motion No.  002

Ms. Ventura, alleging that Plaintiff was allegedly in possession of sex tapes which he used to threaten and coerce Ms. Ventura to remain silent.

On these undisputed facts, Plaintiff fails to establish a substantial basis regarding reputational harm. It is inconceivable as to how the Documentary created additional damage to Plaintiff's reputation, which was already tarnished by the numerous lawsuits, domestic violence video, press coverage, and a criminal indictment prior to the Documentary's publication (*see also Guccione v Hustler Magazine, Inc.* 800 F2d 298 [2d Cir. 1986]; *Cerasani v Sony Corp.*, 991 F. Supp. 343, 352-353 [SDNY 1998] [even though acquitted on some counts, plaintiff's reputation with respect to certain violent acts, and his reputation as criminal and Mafia associate, created a reputation so tarnished that he could be considered an exceptional libel-proof plaintiff]).[3]

## D. Civil Rights Law § 74

Dismissal of the claims regarding non-consensual sexual videos, extortion, and sex with minors is also warranted under Civil Rights Law § 74. Pursuant to Civil Rights Law § 74, "[a] civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding...". When assessing if a publication contains a 'fair and true' report of a proceeding, "the language used should not be dissected and analyzed with a lexicographer's precision" and all that is required is that the publication provide "substantially accurate reporting" (*see Alf v Buffalo News, Inc.*, 21 NY3d 988, 990 [2013]). Allegedly defamatory statements that summarize or restate allegations of a complaint are protected by Civil Rights Law § 74 (*see Napoli v New York Post*, 175 AD3d 433, 434 [1st Dept 2019] citing *McRedmond v Sutton Place Restaurant and Bar, Inc.*,

---

[3] Plaintiff proffers an unworkable argument that the Court, and eventually a jury, should somehow compartmentalize Plaintiff's already damaged reputation with respect to some crimes and assess damage to his reputation based on additional crimes he is accused of in the Documentary.

**151935/2025 COMBS, SEAN vs. NBCUNIVERSAL MEDIA, LLC ET AL**      **Page 10 of 12**
**Motion No. 002**

48 AD3d 258, 259 [1st Dept 2008]). If a publication accurately summarizing the allegations of a complaint contains allegedly defamatory statements drawn from the complaint or legal proceeding, the publication is still protected under Civil Rights Law § 74 so long as the reporting on the legal proceeding is substantially accurate (*McRedmond, supra*; *see also Panghat v New York State Div. of Human Rights*, 89 AD3d 597, 597 [1st Dept 2011] [privilege under § 74 is absolute and applies even in the face of allegations of malice or bad faith, and is not altered by subsequent appeals or dismissals]).

The Documentary reported extensively on Court proceedings, including numerous Complaints filed against Plaintiff alleging that Plaintiff sexually assaulted and extorted others. Two specific cases mentioned included Rodney Jones and Casandra Ventura, which accused Plaintiff of retaining sex tapes without authorization, using those sex tapes to extort or control others, and in the case of Rodney Jones, alleging that Plaintiff had sex with minors. While Plaintiff disputes the veracity of those allegations, he proffers no argument that the Documentary's reporting of the substance of the allegations was somehow inaccurate. Moreover, Plaintiff's lawyers' statements were frequently included, showing that Plaintiff denied the allegations related to sexual assault, extortion, sex with minors, and non-consensual recording. Therefore, the Documentary's reporting of the allegations and Plaintiff's was "substantially accurate."

### E.  3211(g)(3)

Plaintiff's request for discovery under CPLR 3211(g)(3) is denied. Plaintiff requests discovery into whether Defendants were grossly irresponsible in publishing the Documentary. But as explained, the nuance and breadth of views presented in the Documentary in and of itself forecloses any finding that the publication of the Documentary was grossly irresponsible.

151935/2025   COMBS, SEAN vs. NBCUNIVERSAL MEDIA, LLC ET AL
Motion No.  002

Page 11 of 12

Discovery would not change the form and substance of the Documentary, which in and of itself establishes that Defendants were not grossly irresponsible.

The request for discovery is also defective in that a CPLR 3211(g)(3) application requires a nonmovant to state under oath that "it cannot present facts essential to justify its opposition" (*see Carey v Carey*, 220 AD3d 477, 478 [1st Dept 2023]). Plaintiff did not provide a sworn statement regarding discovery needed.[4] All that was submitted was an affirmation from Plaintiff's attorney, which is hearsay and devoid of any evidentiary or probative value (*see, e.g. Gruppo v London*, 25 AD3d 486, 487 [1st Dept 2006]). Thus, Plaintiff failed to meet his heightened burden under CPLR 3211(g)(3) (*see, e.g. S.N. v Integral Yoga Institute, Inc.*, 245 AD3d 536, 538 [1st Dept 2026]). The Court has considered the remainder of Plaintiff's contentions and finds them unavailing.

Accordingly, it is hereby,

ORDERED that Defendants' motion to dismiss Plaintiffs' Amended Complaint pursuant to CPLR 3211(g) is granted, and the Amended Complaint is hereby dismissed; and it is further

ORDERED that within thirty days of entry, Defendants shall file their fee application pursuant to Civil Rights Law § 70-a; and it is further

ORDERED that within ten days of entry, counsel for Defendants shall serve a copy of this Decision and Order, with notice of entry, on all parties via NYSCEF.

This constitutes the Decision and Order of the Court.

| 4/20/26 | | HON. PHAEDRA F. PERRY-BOND, J.S.C. |
|---|---|---|
| DATE | | |

| CHECK ONE: | | x | CASE DISPOSED | | | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | x | GRANTED | | DENIED | | GRANTED IN PART | OTHER |
| APPLICATION: | | | SETTLE ORDER | | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | REFERENCE |

---

[4] Plaintiff provided an affidavit but not related to discovery. The affidavit only contains conclusory denials of the substance of the allegedly defamatory statements.

151935/2025  COMBS, SEAN vs. NBCUNIVERSAL MEDIA, LLC ET AL
Motion No.  002

Page 12 of 12